```
1              IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF DELAWARE

3      _____
       LEADER TECHNOLOGIES,       )
4      INC., a Delaware           )
       corporation,               )
5                                 )
              PLAINTIFF,           )
6                                 )
         v.                       ) C.A. No. 08-862
7                                 )
       FACEBOOK, INC., a          )
8      Delaware corporation,      )
                                  )
9             DEFENDANT.          )
       _____
10
                        Tuesday, March 3, 2009
11                      2:00 p.m.
                        Courtroom 4B
12
                        844 King Street
13                      Wilmington, Delaware

14     BEFORE:  THE HONORABLE JOSEPH J. FARNAN, JR.
                United States District Court Judge
15

16     APPEARANCES:

17             POTTER ANDERSON & CORROON, LLP
               BY:  PHILIP ROVNER, ESQ.
18
               KING & SPALDING LLP
19             BY:  PAUL ANDRE, ESQ.

20                      Counsel for Plaintiff

21             BLANK & ROME, LLP
               BY:  STEVEN L. CAPONI, ESQ.
22
               WHITE & CASE
23             BY:  HEIDI L. KEEFE, ESQ.

24                      Counsel for Defendant
```

1     THE COURT:  Good afternoon.  Do

2  you want to announce your appearances?

3     MR. ROVNER:  Good afternoon, Your

4  Honor.  Phil Rovner from Potter Anderson for

5  plaintiff Leader Technologies.  With me is Paul

6  Andre from King and Spalding.

7     MR. CAPONI:  Good afternoon, Your

8  Honor.  Steven Caponi from Blank and Rome.  With

9  me is the brains of the operation, Heidi Keefe

10  from White and Case in Palo Alto, California.

11     MS. KEEFE:  Good afternoon, Your

12  Honor.

13     THE COURT:  Okay.  We're here to

14  do some scheduling, and we have a disagreement.

15  Pretty large, actually.  So start with

16  plaintiff.

17     MR. ANDRE:  Thank you, Your Honor.

18     Plaintiff's schedule is based on

19  an eighteen- to twenty-month trial schedule from

20  the date of filing.  What we did, we looked at

21  twenty months out from the day we filed the case

22  and traveled backwards based on the Court's

23  scheduling order and imposed the dates.

24     The first disagreement,

1    significant disagreement, is when the written

2    discovery should be completed.  There's about a

3    four-month gap there.  Our schedule is

4    aggressive, but I think written discovery can be

5    done in that time period just because parties

6    tend to waste a lot of resources with written

7    discovery by trying to extend it out and go

8    further and further.

9              The biggest difference, scheduling

10   difference, I see is in the Markman hearing.

11   Defendants propose to do it in March 2010,

12   whereas we put it in August 2009.  That big

13   difference, I think, accounts for a lot of the

14   discrepancy here.  Our position is that Markman

15   is based on an intrinsic record.  You don't need

16   a year-and-a-half of discovery before the

17   Markman process.  I think that's a major

18   difference.

19              With respect to some of the

20   opening expert reports, Your Honor's order had

21   thirty days after the issuance of Markman.  They

22   had suggested adjusting it to forty-five days.

23   I don't see a need for that.

24              And then with case dispositive

1    motions, we had provided a specific date of

2    January 2010, and the defendants have put a date

3    based on Markman, saying ninety days after the

4    Markman decision.

5              First of all, I'm not sure case

6    dispositive motions are a good idea in a patent

7    case.  I think there are always issues of fact

8    that can be raised to preclude it, but that's my

9    personal opinion.  Nonetheless, I think having a

10   definite date on the calendar for parties to

11   file that motion will advance the case at a

12   proportional rate that makes it reasonable to

13   get to trial in a timely manner.

14             The other dates that there are

15   disagreements on, amendment pleading and joining

16   new parties, I'm not sure why the defendants

17   want to push it out so far.  There is a big

18   difference.  Those issuances -- I'll let them

19   address why they want to push it out further.  I

20   don't understand why it would take ten months or

21   a year or two for amendment pleadings.

22             Thank you.

23             THE COURT:  All right.  Thank you.

24             MS. KEEFE:  Thank you, Your Honor.

1              I think one of the places that we

2    have our largest disagreement has to do with

3    what this case is even about, so I'll back up

4    one step.

5              One of the reasons that we have

6    proposed the schedule that we have is that we've

7    attempted to make sure that we're not constantly

8    coming back to Your Honor and constantly coming

9    back and saying, "It didn't quite work out.  We

10   just need a little bit more time.  We weren't

11   sure about that.  We need to come back again."

12             Since the very, very beginning of

13   this case, we've actually been relatively --

14   aggressive is the wrong word, but let's just say

15   there have been a number of phone calls to

16   plaintiffs trying to really ask what they're

17   accusing in this case.  And through a series of

18   conversations -- sure, I'll let you know.  Not

19   really letting us know -- we finally got

20   discovery served on us, as well as one answer in

21   an e-mail that indicated they're contemplating

22   accusing the entire Facebook website of

23   infringement.

24             That would entail almost every

1    single document that Facebook has ever created

2    since its inception.  It could potentially

3    entail the inclusion of numerous third parties.

4                There's over 500,000 applications

5    that run on Facebook, and given the definition

6    they've currently given us of what they consider

7    to be the case, those applications could be

8    included, and we could be talking about

9    involving third parties in the case.  Therefore,

10   we extended the time to amend pleadings and to

11   add parties based on trying to find out what

12   aspects of our business are actually involved in

13   this case.  So needing to see at least one or

14   two rounds of written discovery in order to try

15   to understand the scope and breadth of what

16   we're dealing with here.

17                We have no problem with coming

18   back to Your Honor if they come with a narrowing

19   of the case to try to put it on a shorter

20   schedule.  That's not what we're worried about.

21   We're worried about coming back to Your Honor to

22   try to lengthen things because now we've

23   realized that they really are accusing the whole

24   site, and, therefore, we're going to have to go

1   to third parties, potentially outside the United

2   States, et cetera, et cetera.

3            As far as the other things with

4   Markman and with dispositive motions, I'm not

5   sure that a dispositive motion would have much

6   value in a patent case without the claim

7   construction.  So we've posited that the

8   dispositive motions be filed after we have the

9   ruling on claim construction.  If the claim

10  construction hearing is earlier, the dispositive

11  motions cut-off date would be earlier.

12           Similarly, I think Your Honor has

13  dealt with the need, or lack thereof, with

14  dispositive motions with your standing orders,

15  which would indicate if there, in fact, is a

16  factual issue, the briefing doesn't go forward.

17  And if there is not, then the dispositive motion

18  actually can be extremely helpful.

19           We anticipate at least hoping to

20  file early summary judgment motions, if

21  possible, especially if we find that the case is

22  narrower and narrower and we can actually go for

23  an invalidity charge.  That's what's really

24  behind our schedule.

1          THE COURT:  Okay.  Do you

2     understand in some general way today what your

3     infringing activity is, generally?

4          MS. KEEFE:  To be completely

5     honest, Your Honor, I don't.  I've taken the

6     patent and read it I don't know how many times,

7     and each time I've read it, I come up with a

8     different thought process about what it might be

9     that they might be accusing.  That's why we sent

10    some early e-mails and letters asking, can you

11    please identify for us, either to help us narrow

12    our litigation hold -- which we have a very

13    broad one in place now -- or to help us with

14    Rule 26 disclosures.  Give us something.

15          And what we got back was, "The

16    website Facebook.com infringes."  And there are

17    ways I could read the claim that potentially

18    could encompass every single thing on Facebook,

19    although I think that would be an invalid

20    patent.  There's certainly ways to read it

21    overly broadly.

22          So in all earnest honestness --

23    that's not a word -- I can't figure out what

24    they're accusing, and that's the first time I've

1    said that in a case.

2                THE COURT:  Mr. Andre, they don't

3    know what they're doing wrong, maybe.

4                MS. KEEFE:  I'd be happy to hear

5    from plaintiffs because that might help us

6    resolve some of these dates, and that's why we

7    served discovery the first day we could, asking

8    them to identify what the infringing product

9    was, how, and why.

10               MR. ANDRE:  And Your Honor, even

11   before discovery began, we made a good faith

12   effort to identify the information.  It wasn't

13   just the Facebook web page.  We gave a very long

14   description of the infringing activity of

15   Facebook, so this was before discovery and

16   without obligation.

17               THE COURT:  What do you think your

18   patent covers?

19               MR. ANDRE:  It is the platform

20   which their website operates on.  It's a way

21   that -- we have two different contexts, and how

22   you do tracking on it, and how you do the

23   various aspects the patent lays out.  It is a

24   method of operating that type of peer-to-peer,

1  mini-to-mini network.

2        The claims are very clear.  You

3  can read the claims, and this is not -- it's not

4  written in a lot of computer software language

5  that makes it incomprehensible.  The language is

6  very clear, even though it's a very complex

7  technology.  The claims themselves are drafted

8  in a way that do spell out what type of activity

9  will be infringing.

10        I don't think Facebook has any

11  ignorance of how their website works.  I think

12  they understand how it works.  If they read it,

13  I think they can see what is implied there.

14        Another reason for us to want to

15  conclude written discovery early, including

16  contention interrogatories, is so that we can

17  have this information out to them.  They can ask

18  specific interrogatories.  We'll tell them

19  exactly what they ask for.  There's no reason to

20  expand this for months upon months.

21        Same with the claim construction.

22  Claim construction will obviously help both

23  parties.  Pushing this out for two years after

24  filing is a delay tactic.  That's what this is

1     about.

2              Claim construction is not based on

3     their activity.  It's based on intrinsic record

4     of our patent.  If they get the claim

5     construction early, as we propose, get our

6     contention interrogatories early, as we propose,

7     there's no reason why they can't, at that time,

8     make their motions they think are appropriate or

9     get a fair understanding as to where they think

10    their case is.

11             What we're proposing is exactly

12    the solution to what they're claiming now is the

13    problem.  They say from the very first day they

14    have a problem understanding what our claims

15    are, so we told them.  We didn't have to.  We

16    did it voluntarily.  We didn't do it as part of

17    discovery or part of our initial disclosures,

18    which we're exchanging today.  We told them in a

19    letter, and we also put forward in our discovery

20    request which we propound on them, as well, what

21    we believe is the relevant information with

22    definitions and such.  So I don't think there's

23    any big mystery here as to what's being accused.

24             As far as their 5,000

1   applications, we're not accusing third parties,

2   those applications, of infringing at this time.

3   That's not part of this case.  I think that's

4   just a red herring, to hold out potentially

5   thousands and thousands of defendants.

6            THE COURT:  In a layman's

7   understanding, what you're saying is that the

8   patent covers the way their platform functions?

9   Its foundational functionality?

10           MR. ANDRE:  That's correct, Your

11  Honor.  You can set up these type of networks

12  in, obviously, different ways.  There are ways

13  that make it very efficient, make it very user

14  friendly.  And there are ways that make it

15  non-efficient and non-user friendly.

16           And in this particular case, our

17  patent covers a foundation of how you can set up

18  these type of networks that make it very

19  efficient and user friendly and easy to navigate

20  through the web site.  And it's -- those claims

21  are laid out in an element-by-element basis.

22           And, like I said, it's not as

23  defense counsel mentioned.  You can read the

24  claims and see how.  You can read on their

1    actual website itself.

2                    As far as the dates regarding the

3    motion to amend the pleadings and join

4    additional parties, I think that there is a

5    logistic disagreement as to time frame.  I think

6    it's unnecessary to hold those dates open.

7                    But that being said, I don't think

8    there will be any amendment to the pleadings.  I

9    don't think additional parties will be added.  I

10   think it may be somewhat of a philosophical

11   difference more than a practical difference

12   between the parties.

13                   The only date I see that is really

14   of major significance is the Markman hearing

15   itself.  To me, that has nothing to do with

16   whether or not they understand their own

17   technology.  What we are accusing of infringing,

18   I think that's outside that.

19                   THE COURT:  All right.  Sure.

20                   MS. KEEFE:  I was just going to

21   add, Your Honor, but I'm sorry, but that

22   actually didn't completely help me understand

23   how it applies to what we do because our network

24   is inextricably linked to multiple applications,

1    how it functions.

2              And if it's that easy to

3    understand, what it is we're doing that's

4    infringing, I'd love it if they just told us.

5              And that's what we've asked for.

6    There's thirty-five claims at issue in this

7    patent, and so far there's still thirty-five

8    claims.  The information that they told Your

9    Honor, told us exactly what they were accusing

10   -- you know, the e-mail says that they're

11   "accusing the Facebook website and all

12   functionality programs and modules, both

13   software and hardware, currently and formerly

14   built, used, or made available by Facebook, but

15   is not limited to all components on the

16   website."  So that didn't really help us

17   understand.

18             As far as claim construction goes,

19   I think the first thing you have to understand

20   is which claims are in the case and which claims

21   are going to be involved, and that's done

22   through discovery, through figuring out which

23   are actually infringed, what you are going to be

24   accusing, so that the parties don't waste time

1    trying to go down the rat hole of claims that

2    really aren't involved because you haven't had a

3    chance to narrow the case yet and figure it all

4    out.

5              So I still think that this case,

6    at least until we see the initial interrogatory

7    responses, could potentially be unwieldy, and,

8    therefore, it does require a little bit more

9    time to figure out what's really going on.

10             Thank you.

11             MR. ANDRE:  Your Honor, as far as

12   which claims are being served, Counsel has asked

13   us, essentially, complete discovery before the

14   scheduling conference.  That's not our

15   obligation to do so.  We are identifying the

16   claims.  We're going to be asserting, based on

17   their first set of interrogatories -- they're

18   due in twenty-some-odd, fifteen days.  We'll

19   identify them.  They'll know them.

20             So they're going to want claims.

21   They're going to have all the intrinsic records

22   in front of them by March.  So why they need

23   until March of next year to schedule a Markman

24   hearing is -- I don't understand that.

1          THE COURT:  Well, this case

2    actually has the potential to become part of the

3    stimulus package.  If I can get you to bill

4    enough against each other, what we'll put into

5    the economy, I could turn the whole thing

6    around.

7          But let me ask on a serious note.

8    I have a sense now of what the problem is.

9    First thing is going to be summary judgment.  My

10   alter ego in Tennessee, Bill, who keeps

11   statistics, says that I'm one of the lowest

12   summary judgment judges or something.  Compare

13   me to Judge Ward.  I don't have anything to do

14   with summary judgment.  The case does.  There's

15   either summary judgment or there's not.

16          We do get you to trial here.  I

17   understand some districts don't have the time or

18   the energy for trial.  We'll get you to trial.

19   They only give us twenty percent.  That's not

20   me.  I do summary judgment.  I entertain

21   motions.

22          My procedure I put in place a

23   little bit ago, when I heard the preliminary

24   talks -- I was on a panel somewhere.  Someone on

1       the panel was working on Rule 56.  I listen to

2       what they say.  I look at my procedure.  It's,

3       kind of, the bare bones of what they're

4       proposing.  They have a lot more detail now that

5       they flushed out what they want to do, but it's

6       all designed to make it work.  But there is a

7       dispute of fact.  I can't do anything about

8       that.  I give you a trial.

9                   So I heard what both of you have

10      to say, and I think there's a way to proceed

11      that will allow us to accommodate both interests

12      here.  What I'm going do in the first instance

13      is take summary judgment because I agree with

14      you, and Mr. Andre, you agree.  I really can't

15      do that.  Some judges do it in the context of

16      claim construction, but I'm going to take that

17      out of the case for now.  But that's not saying

18      I won't entertain a motion.

19                  Ultimately, what I'm going to do

20      is focus, given what's been told to me, on

21      getting fact discovery completed in as efficient

22      a way as possible, which means that in a manner

23      that more comports to what the plaintiffs are

24      asking for.  And then get us to a Markman

1    hearing.

2                Now, in that context, if this

3    starts to become what you think it might, I'm

4    not going to be reluctant, and I know that

5    Mr. Caponi will remind me of this by presenting

6    this transcript, to give you an extension.

7                MS. KEEFE:  Would Your Honor also

8    be amenable, if it turns out to be one of those

9    cases that looks like it will grow crazily, to

10   possibly appointing a special master?  I don't

11   want one now.  I'm just asking if that might be

12   something that you'd be amenable to.

13               THE COURT:  Sure, but first I want

14   to get it to the status of a stimulus

15   contributor, which we'll see how that goes.  But

16   on application, I will appoint a special master.

17               Now, having said that, one thing

18   that is a little bit of a concern, as it is in

19   all of these cases -- I don't know if Mr. Andre

20   was at that seminar or Mr. Rovner was -- some

21   judges think you don't have the right to tell

22   folks that I'm not going to allow you to assert

23   all thirty-five claims for claim construction

24   purposes.  They think you're entitled to that.

1          I take the view, and I think this

2    district does, that we can limit the claims to

3    representative claims in order to get the case

4    moving and to get it to a claim construction

5    hearing.

6          I'm not going to ask you to limit

7    those claims now, but if that becomes part of

8    the issue, I think you ought to be thinking

9    about the need to get us to a representative set

10   of claims that will allow us to get the case

11   efficiently through discovery.  But at this

12   point, we have thirty-five claims, and we'll see

13   how it goes.

14          So what is the time for discovery

15   in this case?  Do you know when this case was

16   filed.

17          MS. KEEFE:  End of November, Your

18   Honor.

19          THE COURT:  November 19th.  And

20   I'm going to say that you're going get down here

21   and discuss getting your fact discovery

22   completed sometime between the end of June and

23   the end of July of '09, contemplating getting

24   your claim construction experts lined up in

1     August for a September or October Markman

2     hearing.

3                 And once we get that far and add

4     the claim construction, then we'll set the meter

5     for the finishing-up of patent issue experts and

6     also any summary judgment applications.

7                 Now, as we get through this, as I

8     said, it becomes apparent that that's not going

9     to work because of -- we have trouble with the

10    contentions on the interrogatories on the issues

11    or we have problems with the document

12    production, then you'll come back, and I

13    hopefully will reconsider an extension time.  So

14    you're not foreclosed on that.  If everybody

15    works together, you ought to be able to get

16    through that.

17                 I'll look at the special master

18    once I see what kind of disputes you're having.

19    Some cases I just keep myself because they're

20    actually an education forum, and others I find

21    that it's more contention and volume, and

22    they're the kind of cases that go to special

23    master so you can get more frequent and

24    immediate attention than you can with me with

1       the motion days that I have.

2                So you think you can sit down and

3       agree on that time?  I don't want to dictate the

4       schedule.  I've given you, basically, where you

5       ought to finish up.  Can you sit down and

6       negotiate that and submit an order?

7                MS. KEEFE:  I would certainly be

8       happy to try.  I know that I'm going to ask on

9       the lower end -- longer end of it, but I think

10      we could work on that.

11               MR. ANDRE:  That's fine, Your

12      Honor.

13               THE COURT:  What I would like to

14      do is schedule, in addition to what you're going

15      to propose, kind of, like, a ninety-day window,

16      assuming that that first portion holds, for a

17      trial just so we can all have that date we're

18      working to.  So if I give an extension, ninety

19      days, you know the trial is going out another

20      ninety days.  In other words, push it out.

21               But we should start to think about

22      that trial date, which is good in a patent case

23      because it, kind of, holds all our focus.  So

24      what do you think?

1    MR. ANDRE:  That's fine.

2    THE COURT:  I don't know your

3    availability.

4    MS. KEEFE:  It's a little dicy in

5    the very beginning of 2010.  I've got another

6    trial set in Texas in January, and I've got one

7    in March.

8    But if we had claim construction

9    sometime in October, and give Your Honor a

10   couple months to rule, we could probably be at

11   trial within six months after that.  Six to

12   seven months.

13   THE COURT:  So we're look at early

14   2010, or early in the first six months?

15   MS. KEEFE:  I was going to say May

16   because of my other trials.  Early May would

17   work for me maybe, now.

18   MR. ANDRE:  April, May.  That's

19   fine.

20   THE COURT:  This will become more

21   of a firm trial date because I'm going to build

22   in.

23   MS. KEEFE:  Mr. Caponi was just

24   reminding me to make sure I have enough time to

1    do all the experts, which means maybe June or

2    July.  I'm not trying to push things out.  I'm

3    just trying to make sure that there's time to

4    get on people's schedules and make sure we have

5    enough time after Your Honor rules, so --

6                    THE COURT:  This is a jury trial.

7                    MS. KEEFE:  Yes.

8                    THE COURT:  I have this other

9    little case --

10                   MS. KEEFE:  A small one, Your

11   Honor.

12                   THE COURT:  -- that I promised

13   them I would try.  It's in April of 2010, and I

14   told them it had to go to trial then for a whole

15   lot of reasons.  So April 2010.

16                   This is going to become your firm

17   date, pretty much.  So I don't know.  I don't

18   have any exact time frame of that trial, but I'm

19   going to leave open April, May, and a little bit

20   of June.  That's the Intel.  Of course, they

21   could settle.

22                   MS. KEEFE:  Anything is possible,

23   Your Honor.

24                   THE COURT:  Anything is possible.

1              MR. ANDRE:  Curse of the economy,

2    Your Honor.  I don't think Intel will settle.

3              MS. KEEFE:  There's your stimulus

4    package.

5              THE COURT:  I want to be exact on

6    this, so we don't have to -- your date will be

7    June 7th of 2010.  And we'll work both of your

8    tech files.  And are you okay with that day?

9              MR. ANDRE:  That's fine.

10             THE COURT:  You really ought to

11    focus on that.  Anything that you do ought to be

12    with the view that June 7th is the trial date in

13    this case, of 2010.  So we'll set aside ten

14    trial days for now.  That doesn't mean you're

15    going to get ten trial days.

16             Okay.  I think with that

17    information, that kind of gets us scheduled up.

18    I'm going to ask you to have that order here

19    with your negotiated dates, agreed upon dates,

20    let's say in two weeks.  So that would be, let's

21    say, by March 19th.  You have that order here so

22    I can get it in the scheduling order.

23             MS. KEEFE:  Your Honor, that's

24    absolutely possible.  The only thing I might ask

1      is that you extend that by one week.  We would

2      both have each other's initial responses to the

3      very first discovery in this case, and we might

4      know if this is going to be a problem.

5                    We might be able to come back to

6      Your Honor and say, "This is the problem we're

7      having and this is why it's going to be fine."

8      Sorry.  There's no problems.  It's fine, and

9      this is the problem, and here's what we think.

10     So that might accommodate that.

11                   THE COURT:  So let's make it March

12     25th.  I don't think that's a problem, and

13     you'll have a better idea.

14                   MS. KEEFE:  I appreciate that,

15     Your Honor.

16                   THE COURT:  The order will be here

17     by March 25th.

18                   My parting words will be:  Don't

19     lose sight of June 7th, 2010.  It's an important

20     date for you.

21                   Anything else that the plaintiff

22     wants to pick up?

23                   MR. ANDRE:  No, thank you, Your

24     Honor.

1              MS. KEEFE:  Thank you very much,

2    Your Honor.

3              THE COURT:   Thank you.  We'll be

4    in recess.

5              (Proceeding ended at 2:35 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
 1              C E R T I F I C A T I O N
 2              I, DEANNA WARNER, Professional
 3    Reporter, certify that the foregoing is a true and
 4    accurate transcript of the foregoing proceeding.
 5              I further certify that I am neither
 6    attorney nor counsel for, nor related to nor employed
 7    by any of the parties to the action in which this
 8    proceeding was taken; further, that I am not a
 9    relative or employee of any attorney or counsel
10    employed in this case, nor am I financially
11    interested in this action.
12
13
14
15              _____
16              DEANNA WARNER
17              Professional Reporter and Notary Public
18
19
20
21
22
23
24
```