# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LEADER TECHNOLOGIES, INC., a Delaware corporation, )<br><br>Plaintiff-Counterdefendant, )<br><br>v. )<br><br>FACEBOOK, INC., a Delaware corporation, )<br><br>Defendant-Counterclaimant. ) | Civil Action No. 08-862-JJF |

## LEADER TECHNOLOGIES, INC.'S MOTION TO COMPEL FACEBOOK, INC. TO RESPOND TO LEADER'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS AND LEADER'S FIRST SET OF INTERROGATORIES

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
KING & SPALDING LLP
333 Twin Dolphin Drive
Suite 400
Redwood Shores, CA 94065
(650) 590-0700

Dated: April 30, 2009

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

*Attorneys for Plaintiff*
*Leader Technologies, Inc.*

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I.   NATURE AND STAGE OF PROCEEDINGS ................................................. 1

II.  SUMMARY OF ARGUMENT ............................................................ 1

III. STATEMENT OF FACTS ............................................................... 2

    A.    LEADER'S DISCOVERY REQUESTS SEEK INFORMATION RELEVEANT TO THE CLAIMS IN THIS CASE ................................. 2

    B.    FACEBOOK REFUSES TO PROVIDE ANY INFORMATION ........................ 3

    C.    LEADER PROVIDED FACEBOOK DETAILED INFRINGEMENT CONTENTIONS AND DEFINED THE ACCUSED PRODUCT WITH PARTICULARITY ................................................................. 4

    D.    LEADER MET AND CONFERRED IN GOOD FAITH ........................... 5

IV.  ARGUMENT ....................................................................... 6

    A.    LEADER'S DETAILED INFRINGEMENT CONTENTIONS AND DEFINITION OF THE ACCUSED PRODUCT ARE SUFFICIENT AT THIS STAGE OF THE CASE .................................................... 6

        1.    Leader's infringement contentions describe Facebook's infringement with detail, including identification of screen shots and API calls. ...................................................... 6

        2.    Leader identified the Facebook Website with particularity ................ 9

    B.    LEADER'S REQUEST NOS. 4-12 AND 64-65 SEEK INFORMATION RELEVANT TO FACEBOOK'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSES .......................................................... 10

    C.    FACEBOOK'S CLAIM THAT LEADER MUST PRODUCE DISCOVERY FIRST BEFORE IT WILL PROVIDE DISCOVERY RELATED TO ITS AFFIRMATIVE DEFENSE OF INVALIDITY IS IMPROPER ....................................................................... 11

    D.    LEADER'S REQUEST NOS. 23-31 AND INTERROGATORY NOS. 1 AND 2 SEEK INFORMATION REGARDING THE TECHNOLOGY OF THE FACEBOOK WEBSITE ......................................................... 12

        1.    Leader's Requests for Production Nos. 23-31 ........................... 12

        2.    Leader's Interrogatory Nos. 1 and 2 ................................. 13

E.     LEADER'S REQUEST NOS. 33-43, 45, AND 54-59 SEEK
INFORMATION RELEVANT TO LEADER'S CLAIM FOR
INFRINGEMENT AND DAMAGES ................................................................14

F.     LEADER'S REQUEST NO. 18 SEEKS INFORMATION RELEVANT
TO LEADER'S INFRINGEMENT AND WILLFUL INFRINGEMENT
CLAIM..........................................................................................................16

V.    CONCLUSION.............................................................................................. 17

# TABLE OF AUTHORITIES

**CASES**

*3Com Corp. v. D-Link Sys., Inc.,*
2007 WL 949596 (N.D. Cal. Mar. 27, 2007)...................................................8

*American Video Graphics, L.P. v. Electronic Arts, Inc.,*
359 F. Supp. 2d 558 (E.D. Tex. 2005) ........................................... 7-8, 10

*CIF Licensing, LLC v. Agere Sys., Inc.,*
2008 WL 2019492 (D. Del. May 9, 2008).........................................6

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,*
318 F. Supp. 1116 (S.D.N.Y. 1970).........................................15

*Network Caching Tech., LLC v. Novell, Inc.,*
2003 WL 21699799 (N.D.Cal. 2003) .........................................8

*Novartis Pharm. Corp. v. Abbott Lab.,*
203 F.R.D. 159 (D. Del. 2001) .........................................10

*Orion IP, LLC v. Staples, Inc.,*
407 F. Supp.2d 815 (E.D. Tex. 2006) .........................................7-8

*Pacitti v. Macy's,*
193 F.3d 766 (3d Cir. 1999).........................................10

**STATUTES**

35 U.S.C. §§ 101.........................................11

35 U.S.C. §§ 102.........................................11

35 U.S.C. §§ 103.........................................11

35 U.S.C. §§ 112.........................................11

**RULES**

Fed. R. Civ. P. 11.........................................2, 12

Fed. R. Civ. P. 16(b).........................................1, 5

Fed. R. Civ. P. 26(b).........................................10

Fed. R. Civ. P. 37(a).........................................10

# I. NATURE AND STAGE OF PROCEEDINGS

On November 19, 2008, Leader Technologies, Inc. ("Leader") commenced this patent infringement action against Facebook, Inc. ("Facebook") for infringement of Leader's U.S. Patent No. 7,139,761 ("the '761 Patent"). D.I. 1. After the parties served their responsive pleadings and the Court scheduled a Rule 16(b) scheduling conference, the parties served their first sets of written discovery. D.I. 15, 18, 21. The same day that Leader served its first set of discovery requests, the parties attended a Rule 16(b) scheduling conference where the Court set trial for June 7, 2010. Because the parties could not agree upon a joint proposed scheduling order, the Court ordered the parties to appear for a second scheduling conference on March 31, 2009 where the Court ordered discovery completed by November and set the trial date for June 28, 2010. A joint proposed scheduling order was filed by the parties on April 6, 2009. D.I. 30.

# II. SUMMARY OF ARGUMENT

Leader respectfully requests that the Court compel Facebook to provide responses to Leader's Request for Production Nos. 4-12, 18, 23-31, 33-43, 45, 54-59, 64-65, and Leader's Interrogatory Nos. 1 and 2 (collectively, "Leader's Discovery Requests"). The basis for this motion, as discussed in greater detail below, is as follows:

1. Facebook improperly refuses to provide responses to Leader's Discovery Requests based on its disapproval of Leader's identification of the accused product and Leader's preliminary infringement contentions. These Discovery Requests seek information related to Facebook's counterclaims and affirmative defenses, the technology of the Facebook Website, and Facebook's operation of its business, which are directly relevant to Leader's claims of infringement, willful infringement and damages. Facebook's objections and refusal to provide discovery are meritless because Leader has provided Facebook with detailed infringement contentions and identified the accused product with sufficient particularity.

2.    Facebook improperly refuses to provide a response to Leader's Request for Production No. 65 which seeks documents supporting the basis for Facebook's invalidity defense until Leader provides discovery. Facebook's response cannot be contingent upon Leader first providing discovery because Facebook needed a basis under Rule 11 of the Federal Rules of Civil Procedure for pleading this defense.

3.    Facebook improperly refuses to provide a response to Leader's Request for Production No. 18 which requests deposition testimony of key Facebook employees and the Facebook documents produced in other litigation matters involving the underlying technology of the accused product in this case, the "Facebook Website." This request is directly relevant to Leader's claims for infringement and willful infringement and is narrowly tailored to seek only relevant information.

## III.    STATEMENT OF FACTS

### A.    LEADER'S DISCOVERY REQUESTS SEEK INFORMATION RELEVANT TO THE CLAIMS IN THIS CASE

On February 20, 2009, Leader served its First Set of Interrogatories and First Set of Requests for Production on Facebook. D.I. 21. In its response served on March 23, 2009, Facebook refused to respond to more than half of Leader's First Set of Requests for Production ("Requests") and Interrogatory Nos. 1 and 2 because it did not agree with the identification of the accused product and the detailed infringement contentions Leader provided in response to an interrogatory. Declaration of Lisa Kobialka in Support of Leader Technologies, Inc.'s Motion to Compel Facebook, Inc. to Respond to Leader's Requests and First Set of Interrogatories ("Kobialka Decl."), Exs. 1-2.

Leader's Request Nos. 4-12, 18, 23-31, 33-43, 45, 54-59, 64-65 seek discovery from Facebook regarding: (1) Facebook's counterclaims and affirmative defenses, (2) the technology of the accused product, the Facebook Website, and how Facebook created the Facebook Website, (3) Facebook's sales and marketing information and (4) Facebook's licensing information. This

information is directly relevant to Leader's claims of infringement, willfulness and damages, as well as Facebook's affirmative defenses and counterclaims. *See id.*, Ex. 2.

Leader's Interrogatory Nos. 1 and 2 seek discovery into the development of and the details of the technology of the accused product. Specifically, Leader's Interrogatory No. 1 requests that Facebook identify "each component, module, and functionality" incorporated in the Facebook Website, the date they were incorporated in the Facebook Website, the persons responsible for creation and development, and the factual details of the creation and development. *See id.*, Ex. 1. Leader's Interrogatory No. 2 requests that Facebook identify and describe in detail any launch or relaunch of any new or updated version of the components, modules, or functionalities identified in response to Interrogatory No. 1. *Id.* These interrogatories are directly relevant to Leader's claims of infringement and willful infringement. The parties met and conferred twice on the phone and have exchanged nine e-mails and letters during the past month regarding Facebook's refusal to provide discovery responses to Leader's Discovery Requests.[1] *See id.*, ¶¶ 6-15, Exs. 5-13.

## B.    FACEBOOK REFUSES TO PROVIDE ANY INFORMATION

Facebook refuses to provide any information in response to Leader's Discovery Requests. In response to Leader's Request Nos. 4-8, 18, 23-31, 33-43, 45, 54-59 and 64-65, Facebook objected that Leader had not identified the specific functions, aspects and/or technologies of the Facebook Website Leader is accusing of infringement. *See* Kobialka Decl., Ex. 2. It also responded to certain Discovery Requests that it would not produce any information until after Leader identified its basis for infringement. *See id.*, Ex. 2 at Facebook's Reponses to Request

---

[1] Facebook agreed on April 21, 2009 to supplement their responses to Leader's Request Nos. 46-53 and Leader's Interrogatory Nos. 3, 4, 6, 10, and 11, but has not yet done so. *See* Kobialka Decl., Exs. 10, 12-13. Despite Leader's request that Facebook identify when such responses would be provided, it has failed to do so. Facebook has stated it will produce supplemental responses on a rolling basis. Leader remains hopeful that Facebook will provide sufficient responses despite Facebook's past pattern of evading discovery and reserves the right to address the supplemental responses.

Nos. 4-12, 23, 26-27, 30-31, 33-40, 42-43, 45, 54-59; *see also id.,* Ex. 1 at Facebook's Responses to Interrogatory Nos. 1 and 2.

In response to Leader's Request Nos. 64 and 65 that seeks documents supporting the basis for Facebook's affirmative defenses of non-infringement and invalidity, Facebook responded that it would produce documents "after Plaintiff has identified its infringement and claim construction contention," and "after Plaintiff provides appropriate discovery." *Id.,* Ex. 2.

For certain Discovery Requests, Facebook only objected and did not state that it would produce any information. *See* Kobialka Decl., Ex. 2 at Request No. 18 (seeking documents produced in other litigation matters involving the technology of the Facebook Website and deposition testimony of key Facebook employees), Request No. 24 (seeking documents relating to Facebook's ownership of any patent or pending patent application for technology incorporated in the Facebook Website), Request No. 25 (seeking documents relating to assertions made by Facebook of ownership of proprietary technology and information incorporated in the Facebook Website), and Request No. 41 (seeking documents relating to current, former, perceived or potential competitors). Leader has made every attempt to reasonably address Facebook's concerns, but to no avail.

## C. LEADER PROVIDED FACEBOOK DETAILED INFRINGEMENT CONTENTIONS AND DEFINED THE ACCUSED PRODUCT WITH PARTICULARITY

Leader provided Facebook with detailed preliminary infringement contentions and an identification of the accused product. On March 20, 2009, in response to Facebook's interrogatory requesting infringement contentions, Leader gave Facebook a detailed claim chart that identified how the Facebook Website infringed each element of the asserted claims of Leader's '761 Patent. *Id.,* Ex. 3. The claim chart included citations to hundreds of pages of screen shots of the Facebook Website, examples of specific API calls that demonstrate the website functions as claimed, and a narrative that explains how Facebook's Website infringes each element of the asserted claims of the '761 Patent. *Id.,* Ex. 5. After Facebook contended that this chart was inadequate, Leader provided Facebook with a narrative explanation of how

Facebook infringed certain representative terms found in the asserted claims and mapped specific screenshots of the Facebook Website and API calls to specific claim terms. *Id.,* ¶¶ 7-8; Ex. 6. The '761 Patent is related to management and storage of electronic information. Facebook's source code and other technical documentation is necessary in order to fully understand the operation of the Facebook Website and provide more detail as to how it infringes the '761 Patent. Though Leader has provided Facebook with detailed, publicly available information regarding how Facebook infringes the '761 Patent, Facebook still refuses to respond to Leader's Discovery Requests.

Pursuant to a request by Facebook, Leader identified the accused product prior to commencement of discovery and the initial Rule 16(b) conference with the Court. *See id.,* Ex. 14. Leader's identification included a definition of the accused product which is referred to herein as the "Facebook Website." *Id.* When Facebook asserted that this definition of the Facebook Website included hundreds of thousands of third party applications, Leader informed Facebook that it was explicitly excluding all third party applications to address its concern. *Id.,* Ex. 4 (March 3, 2009 Scheduling Conference Transcript ("Tr.") at 12:1-5); *see also id.,* ¶ 7 and Ex. 9. Furthermore, at Facebook's request, Leader made every effort to ensure that the features listed in its definition of the Facebook Website were created by Facebook and not by third parties. *Id.,* Exs. 6, 9. After Leader expended substantial time and effort in good faith to address Facebook's concerns and identify the accused product with as much particularity as possible at this early stage in the case, Facebook still refuses to respond to Leader's Discovery Requests.

### D.     LEADER MET AND CONFERRED IN GOOD FAITH

Leader made numerous attempts to resolve this dispute with Facebook.. *Id.,* Ex. 11. For example, Leader informed Facebook that it could respond to Interrogatory No. 1 by producing source code and the documents related to the creation and development of source code, and by identifying the key people involved in the creation and development of source code for the Facebook Website. *Id.* For Interrogatory No. 2, Leader requested that Facebook identify when it launched new versions of the Facebook Website since its creation and the names of key persons

5

involved in the process. *Id.* Though the Court signed the parties' stipulated protective order, which includes provisions safeguarding the confidentiality of source code and other confidential information, Facebook still refuses to provide any responsive information to Leader's Discovery Requests. *Id.*, Exs. 12-13; D.I. 35.

## IV.    ARGUMENT

### A.    LEADER'S DETAILED INFRINGEMENT CONTENTIONS AND DEFINITION OF THE ACCUSED PRODUCT ARE SUFFICIENT AT THIS STAGE OF THE CASE

Facebook is attempting to delay this case from moving forward by refusing to provide responses to thirty-nine of Leader's Requests and two of Leader's Interrogatories. The primary basis for Facebook's refusal to provide discovery is that it does not agree with Leader's definition of the accused product and the detailed preliminary infringement contentions. Facebook's gamesmanship is apparent, as Leader has provided more than adequate information regarding its preliminary infringement contentions and description of the accused product. *See e.g. CIF Licensing, LLC v. Agere Sys., Inc.,* No. 07-170-JJF, 2008 WL 2019492, at *1 (D. Del. May 9, 2008) (granting Plaintiff's motion to compel defendant to respond to relevant discovery requests relating to infringement, damages, and defenses when Defendant was "hiding the ball"). Leader has taken every possible reasonable measure to address Facebook's concerns, but Facebook still refuses to produce any information in response to the Discovery Requests.

### 1.    Leader's infringement contentions describe Facebook's infringement with detail, including identification of screen shots and API calls.

Contrary to Facebook's objections to Leader's Discovery Requests, Leader provided detailed infringement contentions in response to Facebook's Interrogatory No. 1 on March 20, 2009. These contentions are based on information publicly available about the Facebook Website and provide Facebook with more than fair notice of Leader's infringement case against Facebook. Facebook's source code and other technical documentation is necessary to fully

understand the operation of the Facebook Website and provide more detail as to how it infringes the '761 Patent.

Facebook still refuses to produce any source code or technical information which Leader needs to supplement its infringement contentions, even though the Court has entered a protective order. *See* Kobialka Decl., Ex. 12; *see also American Video Graphics, L.P. v. Electronic Arts, Inc.,* 359 F. Supp. 2d 558, 560-61 (E.D. Tex. 2005) (plaintiff is not obligated to supplement its preliminary infringement contentions until it has access to defendants' source code). Leader does not have any non-public, technical information to provide the level of detail in its infringement contentions that Facebook unreasonably demands.

While preliminary infringement contentions are not required in this district, other courts require patentees to provide "representative examples of the alleged infringement so as to give defendants fair notice of infringement" with preliminary infringement contentions to "provid[e] fair notice to defendants without requiring unrealistic, overly factual contentions...." *Orion IP, LLC v. Staples, Inc.,* 407 F. Supp.2d 815, 817-18 (E.D. Tex. 2006). This "burden of notice [however] ...is intended to be a shield for defendants, not a sword." *Id.* at 818. Leader's preliminary infringement contentions included a claim chart which identified numerous, non-limiting examples demonstrating how the Facebook Website infringes specific claims of the '761 Patent. Kobialka Decl., Exs. 3, 5. The proof of infringement that Leader cited includes hundreds of pages of screen shots from the Facebook Website, examples of specific API calls that demonstrate the website includes the ability to perform the functions as claimed, and a narrative describing how Facebook's Website infringes each element of the asserted claims of the '761 Patent.[2] *Id.*

---

[2] As Leader has informed Facebook on several occasions, if Facebook is willing to inform Leader how it maintains its documents, what documents it has and an outline of its back-end underlying technology for the Facebook Website, Leader would be able to narrow the scope of its discovery requests. *See* Kobialka Decl., ¶ 9, Exs. 11, 13. Leader has informed Facebook that once it obtains non-public technical information from Facebook such as its source code, it will supplement its preliminary infringement contentions. However, Facebook has been unwilling to provide Leader with any information. *See*, generally, Kobialka Decl. Facebook continues to insist that Leader provide details regarding its infringement that necessarily require identification

After meeting and conferring with Facebook, Leader also identified how specific representative claim terms were practiced by the Facebook Website and mapped specific pages of screenshots that had been produced to Facebook to each of those claim elements. *Id.*, ¶ 8, Ex. 6. Despite these efforts, Facebook still refuses to provide Leader with discovery. *Id.*, Exs. 12-13. Given the nature of the accused product in this case, Leader's preliminary infringement contentions are sufficient and Facebook should not be permitted to use their meritless objections to delay the case. Leader has gone above and beyond its obligation to provide Facebook with "fair notice of infringement" at this early stage in the case. It is unrealistic to expect Leader to provide screen shots of every possible manifestation of Facebook's infringement.[3]

Facebook, represented by the same counsel, has played similar games in at least one other patent case. In *Cross Atlantic Capital Partners, Inc. v. Facebook, Inc.*, No. 07-cv-02768 (E.D. Pa.), the patentee was forced to compel Facebook to produce source code and respond to numerous discovery requests. In that case it had provided Facebook with infringement contentions based on publicly available information, but Facebook attempted to evade discovery by claiming the infringement contentions were insufficient. *Id.* The Court rejected Facebook's objections and compelled Facebook to produce source code and provide complete responses to the discovery requests.[4] *See* Kobialka Decl., Ex. 15; *see also 3Com Corp. v. D-Link Sys., Inc.*,

---

of Facebook's confidential, technical information which Leader does not possess and to which it does not have any access.

[3] *See Orion IP, LLC.*, 407 F. Supp.2d 817 ("[I]n dealing with something like a website, it would be unrealistic to expect plaintiffs to provide screen shots for every possible manifestation of the alleged infringement" in infringement contentions at an early stage in the case); *see also American Video Graphics, L.P.*, 359 F. Supp.2d at 560 ("[s]oftware cases present unique challenges . . . because, prior to discovery, plaintiffs usually only have access to the manifestation of the defendants' allegedly infringing source code and not the code itself"); *see also Network Caching Tech., LLC v. Novell, Inc.*, 2003 WL 21699799 at *5 (N.D.Cal. 2003) (holding that reliance on publicly available product documentation is sufficient for preliminary infringement contentions).

[4] Notably, Facebook produced its source code in the case entitled *ConnectU, Inc. v. Facebook, Inc.*, No. 07-10593-DPW (D. Mass), a case involving a claim for trade secret misappropriation. Kobialka Decl., Ex. 16.

No. C 03-2177 VRW, 2007 WL 949596, at *2 (N.D. Cal. Mar. 27, 2007) (holding that defendant must produce all versions of source code that it maintains in response to plaintiff's discovery request). Similarly, the Court here should not tolerate Facebook's practice of evading discovery. Leader respectfully requests that the Court order Facebook to provide substantive responses and documents in 10 calendar days to Leader's Request Nos. 4-12, 18, 23-31, 33-43, 45, 54-59, 64-65, and Leader's Interrogatory Nos. 1 and 2.[5]

## 2. Leader identified the Facebook Website with particularity.

Leader, in response to a request by Facebook, provided a specific definition of the Facebook Website to Facebook before discovery even commenced. Kobialka Decl., Ex. 14. Leader repeatedly stated since the outset of this case that it does not want discovery of third party applications. Nonetheless, Facebook has continued to use this as a "red herring" to delay the case. *Id.,* ¶ 7; Ex. 4, Tr. at 6:4-9 and 12:1-5.

Leader reviewed its definition of the Facebook Website, and removed third party applications it was able to identify. *See id.,* Exs. 6, 9. It also added the language in its definition to resolve Facebook's concerns. *Id.,* Ex. 9. The current definition of the accused product that Leader has provided Facebook is as follows:

> The term "Facebook Website" shall mean the Facebook services and network currently located at www.facebook.com and formerly located at www.thefacebook.com (including any directly associated current or former domains), and all functionalities, components, programs, and modules (both software and hardware) currently or formerly built and used by Facebook. "Facebook Website" includes all components and information necessary to build and use features and applications created by Facebook including but not limited to: Facebook Flyers (now called Facebook Advertising); Facebook Platform; Facebook Platform Applications (including, but not limited to Facebook Video, Facebook Notes, Facebook Mobile, Facebook Posted Items (now called Facebook Links), Facebook Photos, Facebook Events, Facebook Gifts, Facebook Groups, Discussion Boards (part of Facebook Groups), Discography (Part of Facebook Pages), Music Player (part of Facebook Pages), Translations, Wall, Facebook Exporter for iPhoto and Facebook Toolbar for Firefox); Facebook Mobile Services; Facebook Connect; Facebook Pages; Share Service; Share Link; Facebook Ads; Facebook Beacon; Social Ads; News Feed; Mini-Feed; and any other tools which facilitate Site Content or User Content. For

---

[5] These Discovery Requests are discussed in detail below.

purposes of clarification and not limitation, these terms shall have at least the same meaning as used in Facebook's Privacy Policy located at www.facebook.com/policy.php (effective as of November 26, 2008), Terms of Use located at www.facebook.com/terms.php (revised on September 23, 2008), and Product Overview FAQ located at www.facebook.com/press/faq.php (accessed on December 17, 2008). For the purposes of this definition, "Facebook Website" does not include applications created by third parties.

*Id.* By identifying the accused product and defining it to narrow what that term means, Leader has sufficiently provided Facebook with notice of the infringing product in this case. *See American Video Graphics, L.P.*, 359 F. Supp.2d at 560 (identifying accused product as the underlying software platform of video games). Facebook is not permitted to withhold discovery because it disapproves of the definition of the accused product that Leader has provided. Despite Leader's good faith efforts to directly address Facebook's concerns, Facebook refuses to provide discovery. The Court should not tolerate such gamesmanship and order Facebook to produce substantive responses and documents within 10 calendar days to Leader's Request Nos. 4-12, 18, 23-31, 33-43, 45, 54-59, 64-65, and Leader's Interrogatories Nos. 1 and 2.

**B.    LEADER'S REQUEST NOS. 4-12 AND 64-65 SEEK INFORMATION RELEVANT TO FACEBOOK'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSES**

As a matter of law, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Rule 26(b)(1) permits a broad scope of discovery." *Novartis Pharm. Corp. v. Abbott Lab.,* 203 F.R.D. 159, 164 (D. Del. 2001); *Pacitti v. Macy's,* 193 F.3d 766, 777 (3d Cir. 1999) ("[i]t is well recognized that the federal rules allow broad and liberal discovery"). Because Facebook has failed to answer an interrogatory or produce documents in response to a relevant discovery request, compelling production is necessary. Fed. R. Civ. P. 37(a).

Leader's Request Nos. 4-12 and 64-65 seek discovery relating to the parties' claims and defenses in this case. Specifically, they seek information regarding:

- alleged non-infringing alternatives to the claims of the '761 Patent (Request No. 4);
- any efforts by Facebook or contemplated by Facebook to avoid infringement of the '761 Patent (Request No. 5);

- any opinions or analyses regarding the scope, infringement, alleged non-infringement, validity, alleged invalidity, enforceability and/or alleged unenforceability of the '761 Patent (Request No. 6);
- scope of the '761 Patent (Request No. 7);
- infringement or any alleged non-infringement of the '761 Patent (Request No. 8);
- validity or alleged invalidity of the '761 Patent (Request No. 9);
- prior art or potential prior art to the '761 Patent (Request No. 10);
- prior art searches or investigations conducted by Facebook concerning the '761 Patent (Request No. 11);
- potential prior art received from any third party regarding the '761 Patent (Request No. 12);
- Facebook's First Affirmative Defense that it "is not infringing and has not infringed any claim of the '761 Patent, either literally or under the doctrine of equivalents" (Request No. 64);
- Facebook's Second Affirmative Defense that "each claim of the '761 Patent is invalid for failure to meet one or more of the contentions of patentability specified in 35 U.S.C. §§ 101-103 and/or 112" (Request No. 65).

*See* Kobialka Decl., Ex. 2.

These requests are directly relevant to Leader's claim of infringement of the '761 Patent, and Facebook's counterclaims/affirmative defenses of non-infringement and invalidity. D.I. 12. For example, they seek documents such as alleged prior art, documents regarding the scope of the '761 Patent, and documents related to Facebook's non-infringement claims. There can be no reasonable dispute that this information is relevant and is information that Facebook needs to use in the case. Facebook has improperly withheld discovery based on its objections to Leader's definition of the accused product and preliminary infringement contentions. However, as discussed above, it has no proper basis for these objections. Leader respectfully requests the Court order Facebook to provide substantive responses and documents within 10 calendar days to Leader's Nos. 4-12 and 64-65.

## C. FACEBOOK'S CLAIM THAT LEADER MUST PRODUCE DISCOVERY FIRST BEFORE IT WILL PROVIDE DISCOVERY RELATED TO ITS AFFIRMATIVE DEFENSE OF INVALIDITY IS IMPROPER

Facebook, in addition to its meritless objections discussed above, also refuses to produce any responsive documents to Leader's Request No. 65 until "after Plaintiff provides appropriate discovery." Kobialka Decl., Ex. 2. This request seeks documents relating to Facebook's invalidity defense. This refusal is improper because Facebook must have had a basis pursuant to

Rule 11 of the Federal Rules of Civil Procedure before asserting this affirmative defense in its Answer to Leader's Complaint. D.I. 12. That basis does not turn on whether Facebook receives discovery from Leader. Thus, Facebook has no valid objection for withholding discovery to Leader's Request for Production No. 65.

### D. LEADER'S REQUEST NOS. 23-31 AND INTERROGATORY NOS. 1 AND 2 SEEK INFORMATION REGARDING THE TECHNOLOGY OF THE FACEBOOK WEBSITE

#### 1. Leader's Requests for Production Nos. 23-31.

Facebook refuses to provide responses to Leader's Request Nos. 23-31 which specifically seek documents relating to:

- the initial idea for the Facebook Website (Request No. 23);
- ownership of any patent or pending patent application for any technology incorporated in the Facebook Website (Request No. 24);
- ownership of proprietary technology and information incorporated in the Facebook Website (Request No. 25);
- research, programming, and development of the technology of the Facebook Website (Request No. 26);
- source code including all past and present releases, revisions, versions, updates, and upgrades (Request No. 27);
- teaching an end-user or advertiser how to use the Facebook Website (Request Nos. 28 and 29);
- drawings, sketches, descriptions, disclosures that describe the technology of the Facebook Website (Request No. 30);
- applications, programs, features, components, functionalities, or modules incorporated in the Facebook Website (Request No. 31).

*See* Kobialka Decl., Ex. 2. These requests seek documents from Facebook regarding the technology of the accused product and the development of the accused product in this case. For example, documents related to the initial idea for the Facebook Website reveal how Facebook came up with the technology for the Facebook Website, a story that presumably Facebook intends to tell at trial. These documents are also relevant to Leader's claims of infringement and willfulness. Also, documents related to the technology of the accused product are directly relevant to Leader's claim that the Facebook Website infringes the '761 Patent. Therefore, Request Nos. 23-31 are relevant to Leader's claim of infringement and willfulness and potentially relevant to any defenses that Facebook may raise in connection with its invalidity

claims. Facebook has withheld responses to these requests based on the same objections to the accused product and infringement contentions. *See id.*, Ex. 12. As discussed above, Facebook's objections have no basis because Leader has identified and provided a definition of the accused product and provided Facebook with detailed infringement contentions. Thus, Leader respectfully requests the Court order Facebook to provide substantive responses and documents within 10 calendar days to these requests.

### 2. Leader's Interrogatory Nos. 1 and 2.

Facebook refuses to provide any response to Interrogatory Nos. 1 and 2. Interrogatory No. 1 requests that Facebook identify "each component, module, and functionality" incorporated in the Facebook Website, the date they were incorporated in the Facebook Website, the persons responsible for creation and development, and the factual details of the creation and development. *Id.*, Ex. 1. Interrogatory No. 2 requests that Facebook identify and describe in detail any launch or relaunch of any new or updated version of the identified component, module, or functionality from Interrogatory No. 1. *Id.* These interrogatories relate to the technology and the development of the accused product, similar to the document requests discussed above. Therefore, they are directly relevant to Leader's claim of infringement and willfulness and potentially relevant to any defenses that Facebook may raise in connection with its invalidity claims. Facebook's refusal to provide responses to these interrogatories due to its disapproval of Leader's infringement contentions and definition of the accused product, as discussed above, is meritless. *Id.*

Leader attempted to resolve the parties' dispute with respect to these interrogatories to no avail. *Id.*, Ex. 11. Because Facebook claimed that responding to these interrogatories would be overly burdensome, Leader made the following suggestions. In response to Interrogatory No. 1, Leader informed Facebook that it could produce "source code and the documents related to the creation and development of source code (e.g. design documents, charts, flow charts, presentations, etc.) for the platform technology of the Facebook Website," and identify "the key people involved in the creation and development of source code for the Facebook Website." *Id.*

For Interrogatory No. 2, Leader informed Facebook that it "just needs to identify when it launched new versions of the Facebook Website since its creation, and the names of key persons involved in this process." *Id.* Letter 4-22.fdlfds Facebook, however, still refuses to respond to these interrogatories even though the parties' stipulated Protective Order has been entered in the case. *Id.*, Ex. 12. Based on Facebook's continued refusal to provide Leader with a response to these relevant interrogatories, Leader requests that the Court order Facebook to produce substantive responses to Leader's Interrogatories Nos. 1 and 2 within 10 calendar days.

E.  **LEADER'S REQUEST NOS. 33-43, 45, AND 54-59 SEEK INFORMATION RELEVANT TO LEADER'S CLAIM FOR INFRINGEMENT AND DAMAGES**

Facebook refuses to produce information responsive to Leader's Request Nos. 33-43, 45, and 54-59. These requests seek documents related to:

- promotion and marketing of the Facebook Website to potential and current end-users and advertisers (Request Nos. 33 and 34);
- Facebook Beacon, a Facebook application related to marketing third party products (Request No. 35);
- Facebook Ads, a Facebook application related to selling advertisements on the Facebook website (Request No. 36);
- business or marketing plans relating to the Facebook website (Request No. 37);
- commercial success of the Facebook Website (Request No. 38);
- third-party market research reports addressing the markets in which the Facebook Website competes (Request No. 39);
- tracking sale of advertising for the Facebook Website (Request No. 40);
- current, former, perceived, or potential competitors of Facebook (Request No. 41);
- products or services that currently, formerly, or potentially compete with the Facebook Website (Request No. 42);
- public relations or strategic planning in connection with the Facebook Website (Request No. 43);
- valuation of Facebook, the Facebook Website, and any proprietary information owned by Facebook (Request No. 45)[6];
- assignments, licenses, or other agreements regarding technology owned by Facebook or a third party and incorporated into the Facebook Website (Request Nos. 54 and 55);

---

[6] Facebook has stated in response to Request No. 45 that it "will produce non-privileged documents sufficient to show its **current** valuation." Kobialka Decl., Ex. 2 (emphasis added). However, this fails to be a complete response to Request No. 45 which specifically seeks "all documents and things" relating to "**any** valuation, appraisal or estimate of value of Facebook, any of Facebook's subparts, the Facebook Website or any proprietary information owned by Facebook." *Id.* (emphasis added).

- royalties paid under any licenses, assignments, or other agreements involving technology incorporated into the Facebook Website (Request Nos. 56 and 57);
- licensing of technology incorporated into the Facebook Website (Request Nos. 58 and 59).

*See id.*, Ex. 2. Request Nos. 33, 34 and 37, which seek information regarding promotional and marketing materials for the Facebook Website, are relevant to damages and infringement because they are statements that Facebook has made about the accused product and the market for that accused product. Request Nos. 35, 36, 40 and 45 are relevant to damages, as they seek discovery regarding Facebook's generation of revenue and valuation. Such information is necessary to determine Leader's damages due to Facebook's infringement. Request Nos. 38, 41-43 and 45 seek information regarding Facebook's commercial success and are relevant to secondary considerations of non-obviousness, which relate to Facebook's invalidity claims. Commercial success is also a specific factor considered for determining a reasonable royalty for past infringement. *Georgia-Pacific Corp. v. U.S. Plywood Corp.,* 318 F. Supp. 1116 (S.D.N.Y. 1970). Request Nos. 39, 41 and 42 seek information regarding Facebook's market and competitors, which is relevant to determining a reasonable royalty for Facebook's infringement of the patented invention in this case. Finally, Request Nos. 54-59 seek documents related to any licensing and royalties paid or contemplated for the technology incorporated into the Facebook Website. They are also relevant to Leader's claim for damages and a specific Georgia-Pacific factor considered in determining a reasonable royalty. *Id.*

Again, Facebook refuses to produce relevant documents responsive to these requests based on the same meritless objections regarding the accused product and infringement contentions. For the reasons discussed above, these objections are not a proper basis for refusing to provide discovery. Thus, Leader respectfully requests this Court compel Facebook to provide substantive responses and documents to Request Nos. 33-34, 37-43, 45, and 54-59 within 10 calendar days.

**F.  LEADER'S REQUEST NO. 18 SEEKS INFORMATION RELEVANT TO
      LEADER'S INFRINGEMENT AND WILLFUL INFRINGEMENT CLAIM**

Leader's Request No. 18 seeks documents produced by Facebook in district court

litigation involving ConnectU LLC and other patent litigation involving the technology of the

Facebook Website, and the testimony of key Facebook employees in those other matters.

Kobialka Decl., Exs. 2, 11.  Any discovery regarding the technology of the Facebook Website,

particularly in previous or pending litigation, is likely to include statements and possibly

admissions that are relevant to Leader's infringement and willfulness claims.

Facebook was involved in a highly publicized dispute with ConnectU LLC involving the

conception, design, implementation, and ownership of the technology of the Facebook Website.

Consequently, information from the ConnectU litigation is directly relevant to Leader's claims

for infringement and willful infringement.  Leader is also aware of another patent infringement

litigation involving the Facebook Website technology.  Documents from *Cross Atlantic Capital*

*Partners, Inc. v. Facebook, Inc. and TheFacebook, LLC*, No. 07-cv-02768-JP (E.D. Pa.) are

related to the technology of the Facebook Website, and are relevant to Leader's infringement

claims.[7]  Facebook's refusal to provide Leader with information responsive to these requests due

to Leader's definition of the Facebook Website is meritless, for the reasons discussed above.

Kobialka Decl., Ex. 12.

Request No. 18 seeks information that Facebook is likely to use at trial, such as the story

of how Facebook was founded.  Leader should be allowed discovery into subject matters that

will likely be at issue at trial.  Otherwise Facebook should be precluded in this case from

presenting or using such subject matter and any other subject matter that Facebook refuses to

provide discovery on in this case.  For the foregoing reasons, Leader requests an order

---

[7] Facebook contends that Protective Orders entered by other courts prevent it from disclosing
documents that Facebook has produced in other litigation matters.  Kobialka Decl., Ex. 12.
However, Leader only seeks information provided by Facebook in other litigation matters related
to the technology of the Facebook Website.  Facebook has provided no explanation why any
third party information would be present in Facebook's information.

compelling Facebook to provide substantive responses and documents within 10 calendar days to Leader's Request for Production No. 18.

## V. CONCLUSION

Leader respectfully requests that this Court order Facebook to provide substantive responses and information to Leader's Request Nos. 4-12, 18, 23-31, 33-43, 45, 54-59, 64-65, and Leader's Interrogatories Nos. 1 and 2 within 10 calendar days.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
KING & SPALDING LLP
333 Twin Dolphin Drive
Suite 400
Redwood Shores, CA 94065
(650) 590-0700

By: /s/ Philip A. Rovner
    Philip A. Rovner (#3215)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899
    (302) 984-6000
    provner@potteranderson.com

Dated: April 30, 2009
914108

*Attorneys for Plaintiff*
*Leader Technologies, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on April 30, 2009, the within document

was filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as indicated;

and that the document is available for viewing and downloading from CM/ECF.

### BY CM-ECF, E-MAIL AND FIRST CLASS MAIL

Thomas P. Preston, Esq.
Steven L. Caponi, Esq.
Blank Rome LLP
1201 Market Street
Wilmington, DE 19801
Preston-T@blankrome.com
caponi@blankrome.com

I hereby certify that on April 30, 2009 I have sent by E-mail and first class mail

the foregoing document to the following non-registered participants:

Heidi L. Keefe, Esq.
Mark R. Weinstein, Esq.
Craig W. Clark, Esq.
Melissa H. Keyes, Esq.
White & Case LLP
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, CA 94306
hkeefe@whitecase.com; mweinstein@whitecase.com
cclark@whitecase.com; mkeyes@whitecase.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com