## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LEADER TECHNOLOGIES, INC., a Delaware corporation, <br><br> Plaintiff and Counterdefendant, <br><br> v. <br><br> FACEBOOK, INC., a Delaware corporation, <br><br> Defendant and Counterclaimant. | Civil Action No. 1:08-cv-00862-JJF |

### DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS MOTION COMPELLING PLAINTIFF'S RESPONSE TO DEFENDANT'S INTERROGATORY NO. 1

Steven L. Caponi (DE Bar #3484)
BLANK ROME LLP
1201 N. Market Street
Wilmington, DE 19801
302-425-6400
Fax: 302-425-6464

*Attorneys for Defendant and Counterclaimant Facebook, Inc.*

OF COUNSEL:

Heidi L. Keefe (*pro hac vice*)
Mark R. Weinstein (*pro hac vice*)
Craig W. Clark (*pro hac vice*)
Melissa H. Keyes (*pro hac vice*)
**WHITE & CASE LLP**
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, CA 94306

Dated: May 1, 2009

# TABLE OF CONTENTS

I. STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ................................. 1

II. SUMMARY OF ARGUMENT ........................................................................... 1

III. STATEMENT OF FACTS .................................................................................. 2

    A. Facebook Informally Requests an Identification of Accused Features ................... 2

    B. Facebook Serves Interrogatory No. 1. ................................................................ 2

    C. LTI Assures the Court that it Will Properly Respond To Interrogatory No. 1 ....... 3

    D. LTI's Deficient Response to Interrogatory No. 1 ................................................ 3

    E. LTI's Refusal to Supplement its Response to Interrogatory No. 1 ....................... 5

IV. ARGUMENT ...................................................................................................... 6

V. CONCLUSION .................................................................................................... 8

128605.00602/40180791v.1

# TABLE OF AUTHORITIES

## Cases

*Antonious v. Spalding & Evenflo Companies, Inc.*,
   275 F.3d 1066, 1075 (Fed. Cir. 2002) ............................................................................... 6

*Connectel, LLC v. Cisco Sys., Inc.*,
   391 F.Supp.2d 526, 528 (E.D. Tex. 2005) ......................................................................... 7

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
   208 F.3d 981, 986 (Fed. Cir. 2000) ................................................................................... 6

## Rules

Fed. R. Civ. P. 37(a)(3) .......................................................................................................... 7

# I. STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

Pursuant to Local Rule 7.1.2, Facebook, Inc. ("Facebook") respectfully requests an order compelling Leader Technologies, Inc. ("LTI") to provide detailed infringement contentions.

LTI filed its Complaint alleging patent infringement on November 19, 2008. Discovery opened on February 17, 2009. Written fact discovery is set to close in November 2009, *Markman* is set for January 20, 2010 and trial is set for June 28, 2010. (D.I. 30.)

# II. SUMMARY OF ARGUMENT

Before this case can go forward, LTI must be compelled to provide a detailed answer to the basic question of how it believes Facebook infringes its patent. In order to even file this action, the law required LTI to have conducted an analysis that led it to believe it had a reasonable chance of proving infringement. Proof of infringement requires that each and every claim limitation be present in the accused device.

Accordingly, Facebook served Interrogatory No. 1 seeking a clear and straightforward statement of LTI's infringement allegations on a limitation-by-limitation basis. LTI has yet to directly identify even a single claim limitation in a single Facebook offering. Instead, LTI has hidden behind parroted claim language and non-specific references to unannotated web pages. LTI's response, that it is Facebook's obligation to produce millions of lines of irrelevant source code so LTI can perform the analysis it should have completed pre-filing, should be rejected. Facebook respectfully requests that its motion to compel be granted and that LTI be ordered to provide a complete, non-evasive response to Interrogatory No. 1.

## III. STATEMENT OF FACTS

Facebook operates the leading social networking website on the Internet located at www.facebook.com. The website provides users with a myriad of features and functionalities, as well as more than 500,000 applications, for connecting people over the Internet. LTI, an Ohio-based corporation, accuses Facebook of infringing U.S. Patent No. 7,139,761 (the "'761 patent."), which contains 35 claims purporting, per its title, to cover the "dynamic association of electronically stored information with iterative workflow changes." (D.I. 1.)

### A. Facebook Informally Requests an Identification of Accused Features

Facebook has been attempting to understand the basis for LTI's accusations of infringement since service of the Complaint. (*See* Clark Decl., ¶ 2; Ex. B.)[1] While LTI initially promised to provide the information, none was forthcoming. (*Id.* ¶¶ 3-4; Ex. C.) LTI ultimately responded with an unsupportably broad definition of the accused "Facebook Website" that incorporated all features, functionality and 500,000-plus current applications, as well as all legacy applications, features and functionalities that ever existed – even those existing years before the '761 patent issued at the end of 2006. (*Id.*, Ex. D.)

### B. Facebook Serves Interrogatory No. 1.

As soon as discovery opened, Facebook served its Interrogatory No. 1 seeking LTI's specific infringement contentions. (D.I. 17.) Facebook Interrogatory No. 1 requires LTI to identify accused instrumentalities and supply a chart providing a claim-by-claim, limitation-by-limitation explanation of how LTI contends any accused instrumentalities practice the invention. (Clark Decl, Ex. A at 6.) There is nothing remarkable about Facebook Interrogatory No. 1. It simply asks for basic information that LTI must have had before filing this lawsuit.

---

[1] Citations to "Clark Decl. __" refer to the Declaration of Craig Clark in Support of Defendant's Motion for Order Compelling Response to Defendant's Interrogatory No. 1 filed contemporaneously herewith.

2

### C. LTI Assures the Court that it Will Properly Respond To Interrogatory No. 1

During the March 3, 2009 scheduling conference, Facebook explained that LTI's refusal to articulate its infringement allegations could expand the scope of this litigation to a massive level. (D.I. 23 at 8:4-9:1; 13:20-15:10.) LTI assured all present at the conference that its response to Facebook's pending interrogatories would provide its specific, defined infringement theories. (D.I. 23 at 10:14-20.) The Court deferred entry of a case scheduling order until after service of LTI's responses. (D.I. 23 at 24:23-25:13.)

### D. LTI's Deficient Response to Interrogatory No. 1

Despite its promises, what LTI served on March 20, 2009 was woefully deficient. LTI's response to Interrogatory No. 1 asserts 24 of the 35 claims of the '761 patent and continues to maintain that the entire "Facebook Website" infringes:

> Plaintiff asserts that the Facebook Website (as defined in its [sic] Plaintiffs First Set of Requests for Documents and Things) literally infringes, or in the alternative, infringes under the doctrine of equivalents Claims 1-2, 4-5, 7-16, 21, 23-26, 29, 31-34 of the '761 Patent.

(Clark Decl., Ex. A at 6.) LTI's response continues by setting forth a claim chart that does little more than parrot the claim language of the 24 asserted claims and refer generally to groupings of unlabeled documents consisting largely of screen captures. (*Id.* at 6-23). An excerpt reads:

| '761 Patent | Facebook Website |
|---|---|
| The phrase "Facebook Website" as used below shall be afforded the definition set forth in Leader's First Set of Requests for Documents and Things to Facebook. The statements and documents cited below are solely provided by way of example and based on information available to Leader at the time this chart was created, and not to be used by way of limitation or for purposes of construing the claim terms. Leader reserves its right to supplement this chart as additional information becomes known to it. | |
| 1. A computer-implemented network-based system that facilitates management of data, comprising: | The Facebook Website meets the recited claim language because it operates on a computer connected to a network and facilitates the management of data. |
| a computer-implemented context component of the network-based system for capturing context | The Facebook Website meets the recited claim language because it uses a context component to capture context |

128605.00602/40180791v.1

| information associated with user-defined data created by user interaction of a user in a first context of the network-based system, the context component dynamically storing the context information in metadata associated with the user-defined data, the user-defined data and metadata stored on a storage component of the network-based system; and a computer-implemented tracking component of the network-based system for tracking a change of the user from the first context to a second context of the network-based system and dynamically updating the stored metadata based on the change, wherein the user accesses the data from the second context. | information associated with user-defined data in a first context of the Facebook Website. The Facebook Website stores the context information in metadata, and the user-defined data and metadata are stored on a storage component. The Facebook Website uses a tracking component for tracking a change of the user from the first context to a second context and dynamically updates the stored metadata based on the change where the user accesses the data from the second context.<br><br>By way of example, and not limitation, when a user of the Facebook Website logs on, the user is placed in an initial context. From this initial context, the user is given the ability to enter or upload data. When a user enters or uploads data to the Facebook Website, certain information concerning the data entry is collected by Facebook and automatically associated with the user's data. At least some of this information is retrievable from the storage component using API calls, including, but not limited to, Users.setStatus and Users.getInfo. The Facebook Website uses a tracking component that uses individual "sessions" to track users as they move from context to context through the Facebook Website. The Facebook Website also tracks the actions of the user in each of the contexts. When a user accesses data that was entered or uploaded in a different context, certain information concerning those actions are collected by Facebook and associated with the accessed data. At least some of the tracking information is retrievable using API calls, including, but not limited to Auth.getSession. The ability to access data from a different context is shown by screen-shots of the Facebook Website, including but not limited to LTI000781 to LTI000912. Additional information regarding the information maintained by Facebook may be found in LTI00037 to LTI000039, LTI000696 to LTI000697, LTI000363 to LTI000365, and LTI000696 to LTI000702. It should be noted that the citation to API calls in response to this interrogatory is to illustrate that this information is maintained by the Facebook Website. Once Leader has received Facebook's document production and source code, Leader will supplement its response to this interrogatory to identify the components which facilitate these processes |

(*Id.* at 6-8) Despite the fact that there are at least ten separate limitations in claim 1, LTI lumped them together into a single block of text. Worse, in the right-hand column, where one would expect detailed reference to specific attributes of Facebook's website tied to exact claim language, LTI merely parrots claim language and vaguely narrates a non-limiting "example" not tied or linked to any claim limitations.

For example, the second paragraph states that when a user logs onto the Facebook Website, "the user is placed in an initial context." LTI provides no explanation as to what the

claimed "initial context" might be, let alone the later-required "second context." Is LTI referring to a specific a web page? A group of web pages? All web pages? Is it the Facebook login page or the page the user is taken to after logging on? No answers are provided. LTI's response continues by asserting that "certain information concerning the data entry is collected by Facebook and automatically associated with the user's data," apparently in reference to the "metadata" elements of claim 1. But LTI provides no explanation what this "certain information" is.

Claim 1 recites a "first context" that *the user* accesses, a "second context" to which *the user* moves, and "user-defined data" that is provided by the *user*. Nothing prevents LTI from identifying these elements, as the claims themselves make clear that they must be plainly available to users of an infringing system. And, because LTI does not identify the "user-defined data," one cannot even hazard a guess as to what the associated "metadata" in the claims could possibly be. Where do these items purportedly exist on Facebook's vast website? LTI again fails to provide any answers to these threshold questions. Its reference to 151 pages of unlabeled documents, which consist largely of illegible and generic screen captures of someone using the Facebook website, and its recitation of API calls[2] do not relate to any claim limitations. (*See* Declaration of Stephen Gray in Support of Defendant's Motion for Order Compelling Response to Defendant's Interrogatory No. 1 ("Gray Decl."), ¶¶ 4-9.)

### E. LTI's Refusal to Supplement its Response to Interrogatory No. 1

On March 25, 2009, Facebook requested a conference with LTI to specifically address its deficient responses. (Clark Decl., Ex. E.) Lead trial counsel conferred on April 2, 2009. (*Id.* ¶ 8; Ex. F.) Facebook suggested that LTI attempt to convey its infringement contentions by

---

[2] LTI's reference to API calls is a distraction. The Application Program Interface calls refer to the means by which third-party developers obtain information about users accessing any number of available third-party applications. They do not identify any particular user-facing elements, components or functionalities. Moreover, they are used in the development of third-party applications. (Gray Decl. ¶ 9.) Ironically, the only potentially unequivocal statement LTI has made about its case is that *it is not accusing any third-party applications.* (Clark Decl., Ex I.)

annotating the referenced screen captures to illustrate what LTI contends corresponds to the claim limitations. Facebook offered that once LTI identified the accused functionality, it would be willing to produce the responsive source code. The call ended with LTI agreeing to consider supplementing its response. (*Id.*) On April 6, 2009, LTI wrote in an attempt to further explain its response to Interrogatory No. 1. (*Id.*, Ex. G.) The April 6 letter added some information, but after further conferences and correspondence <u>LTI disavowed the information in that letter by refusing to supplement its response to incorporate that information.</u> (*Id.*, ¶ 10; Ex. H at 2; Ex. I.)

## IV. ARGUMENT

Federal Circuit law imposes on patent holders a duty to fully investigate their infringement claims before filing suit. "In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement." *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000). Moreover, a plaintiff must be able to make this showing as to <u>every</u> claim it asserts. "Each claim takes up the time of the legal system and the opposing side. A single claim may occasion the expenditure of hundreds or thousands of hours, as opposing counsel try to verify or refute the allegations and theories." *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1075 (Fed. Cir. 2002) (citation, quotation marks omitted). Perfunctory, evasive and claim-parroting responses to infringement contention interrogatories fail to meet this burden. *See, e.g., Connectel, LLC v. Cisco Sys., Inc.*, 391 F.Supp.2d 526, 528 (E.D. Tex. 2005).

The information Facebook seeks through Interrogatory No. 1 is basic information that LTI had to possess when the lawsuit was filed. In response, LTI provided exactly the type of incomplete, claim-parroting response rejected in *Connectel*. The response fails to provide LTI's

basis for this lawsuit, if any, and LTI has refused to supplement. Under Rule 37(a), "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3).

LTI was required to have infringement theory fleshed out prior to filing. If it actually has a theory, nothing prevents it from providing a step-by-step description of how user actions on the Facebook website satisfy the claim elements, especially since all user-facing elements remain available at facebook.com.[3]

Facebook has spent considerable time studying LTI's infringement contentions. Despite that time and LTI's claims that its patent is "simple" and that Facebook must somehow intuitively know what LTI is accusing, Facebook remains at a loss. Facebook is not alone. Stephen Gray is a computer scientist with 30 years of experience who is familiar with Facebook's website, and has performed many patent infringement analyses. Mr. Gray has reviewed the patent and LTI's contentions, and was unable to reach any conclusion on the threshold issues of which components, modules, or functionalities, LTI is accusing, let alone how that alleged infringement purportedly occurs. (*See* Gray Decl., ¶¶ 4-9.)

Without an order compelling a further response, LTI will not provide any meaningful infringement contentions. It will continue to hide the ball in an attempt to force Facebook to provide broad discovery – at Facebook's significant expense – hoping to luck into some conceivable infringement theory. This is exactly what the law is designed to avoid. Without the complete response to which it is entitled, Facebook remains unable to prepare its defenses, to meaningfully respond to LTI's discovery or to propose meaningful claim constructions.

---

[3] LTI has claimed that it requires access to Facebook source code in order to identify its infringement theory. This argument – aside from admitting that LTI had no basis to bring this lawsuit – ignores the continuous availability of the Facebook website. LTI's service of vapid infringement contentions does not entitle it to sail through Facebook's source code on a fishing expedition for infringement theories. *See, e.g. Connectel*, 391 F.Supp.2d at 528 (defendant need not provide source code until patentee provides sufficient infringement contentions).

## V. CONCLUSION

For the foregoing reasons, Facebook respectfully requests that the Court enter an Order compelling LTI to provide a complete, non-evasive response to Facebook Interrogatory No. 1.

BLANK ROME LLP

By: _____
Steven L. Caponi (DE Bar #3484)
1201 N. Market Street
Wilmington, DE 19801
302-425-6400
Fax: 302-425-6464

OF COUNSEL:

Heidi L. Keefe (*pro hac vice*)
Mark R. Weinstein (*pro hac vice*)
Craig W. Clark (*pro hac vice*)
Melissa H. Keyes (*pro hac vice*)
WHITE & CASE LLP
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, CA 94306

*Attorneys for Defendant and Counterclaimant Facebook, Inc.*

Dated: May 1, 2009