# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LEADER TECHNOLOGIES, INC., a Delaware corporation, | )<br>)<br>) |
| Plaintiff-Counterdefendant, | ) Civil Action No. 08-862-JJF |
| v. | )<br>)<br>) |
| FACEBOOK, INC., a Delaware corporation, | )<br>) |
| Defendant-Counterclaimant. | ) |

### LEADER TECHNOLOGIES, INC.'S ANSWERING BRIEF IN OPPOSITION TO FACEBOOK'S MOTION COMPELLING LEADER'S RESPONSE TO FACEBOOK'S INTERROGATORY NO. 1

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
KING & SPALDING LLP
333 Twin Dolphin Drive
Suite 400
Redwood Shores, CA 94065
(650) 590-0700

Dated: May 18, 2009

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

*Attorneys for Plaintiff*
*Leader Technologies, Inc.*

# TABLE OF CONTENTS

I. NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

II. SUMMARY OF ARGUMENT ......................................................................................... 1

III. STATEMENT OF FACTS ................................................................................................ 2

    A. The Nature of the Invention of the '761 Patent ........................................................2

    B. Leader Identified the Accused Product and Provided Facebook with Detailed Preliminary Infringement Contentions ......................................................3

IV. ARGUMENT ..................................................................................................................... 4

    A. Leader Provided A Substantive Response to Facebook's Interrogatory No. 1 ........................................................................................................4

        1. The Asserted Claims of the '761 Patent Cover the Activity of Behind-The-Scenes Computer-Implemented Components. .........................5

        2. Leader Provided Facebook With Detailed Infringement Contentions, Including Citation to Specific Screenshots and API Calls ............................................................................................................6

        3. Mr. Gray's Declaration Provides No Support For Facebook's Arguments .......................................................................................................8

        4. *ConnecTel* is Not Persuasive ..................................................................9

    B. Facebook Refuses to Provide Leader with The Information It Needs to Supplement Its Response to Interrogatory No. 1 ..................................................10

    C. Facebook is Misusing Discovery .............................................................................11

    D. Leader Conducted A Diligent Pre-Filing Investigation Prior to Bring Suit Against Facebook......................................................................................................11

V. CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

**CASES**

*American Video Graphics, L.P. v. Electronic Arts, Inc.,*
   359 F. Supp. 2d 558 (E.D. Tex. 2005) ............................................................................. 6,10

*Antonious v. Spalding & Evenflo Cos.,*
   275 F.3d 1066 (Fed. Cir. 2002) ........................................................................................ 12

*Cambridge Prods., Ltd. v. Penn Nutrients, Inc.,*
   962 F.2d 1048 (Fed. Cir. 1992) ........................................................................................ 12

*ConnecTel, LLC. v. Cisco Sys., Inc.,*
   391 F. Supp. 2d 526 (E.D. Tex. 2005) ........................................................................... 9-10

*Forbes v. Eagleson,*
   228 F.3d 471 (3d Cir. 2000) ............................................................................................. 11

*FusionArc, Inc. v. Solidus Networks, Inc.,*
   No. C 06-06760 RMW, 2007 WL 1052900 (N.D. Cal. April 5, 2007) ............................. 11

*Network Caching Tech., LLC v. Novell, Inc.,*
   No. C-01-2079 VRW, 2003 WL 21699799 (N.D. Cal. Mar. 21, 2003) ........................... 11

*Renesas Tech. Corp. v. Nanya Tech. Corp.,*
   No C03-05709JFHRL, 2004 WL 2600466 (N.D. Cal. Nov. 10, 2004) ............................ 11

*Rohm & Haas Co. v. Brotech Corp.,*
   127 F.3d 1089 (Fed. Cir. 1997) ........................................................................................ 11

*STMicroelectronics, Inc. v. Motorola, Inc.,*
   308 F. Supp. 2d 754 (E.D. Tex. 2004) ............................................................................. 10

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.,*
   208 F.3d 981 (Fed. Cir. 2000) .......................................................................................... 12

## I. NATURE AND STAGE OF PROCEEDINGS

On November 19, 2008, Leader Technologies, Inc. ("Leader") filed a Complaint against Facebook, Inc ("Facebook") for infringement of Leader's U.S. Patent No. 7,139,761 ("the '761 Patent"). D.I. 1. Discovery commenced in February 2009, and is scheduled to close in November 2009. D.I. 30. Trial is set for June 28, 2010. *Id.*

## II. SUMMARY OF ARGUMENT

Leader opposes Facebook's Motion Compelling Leader's Response to Facebook's Interrogatory No. 1 ("Motion") because Leader provided a substantive response to this request seeking Leader's infringement contentions. In Leader's Motion to Compel Facebook to Respond to Leader's First Set of Requests for Production of Documents and Things and Leader's First Set of Interrogatories ("Leader's Motion to Compel"), which covers the same subject matter as this Motion, Leader described the sufficiency of its interrogatory response. D.I. 36. Now, by mischaracterizing the language of the asserted claims by asserting that all the steps of the claims require action by a user, Facebook argues that Leader should be compelled to supplement its discovery response. The asserted claims, however, are not based solely on the user's actions. Rather, the focus of the claims of the '761 Patent is the computer-implemented components of a network-based system and their functionality.

The infringement of computer components, such as the "context component" and "tracking component," are best identified by reference to Facebook's source code and technical documents about Facebook's website, information that Facebook refuses to provide to Leader. Some of the functionality of the components of Facebook's Website can be inferred or is apparent from screen shots and application programming interface (API) calls that Facebook publishes, but the details necessary for supplementing this interrogatory more completely will be based upon the source code and Facebook's confidential technical documents. Facebook's Motion has no merit and is intended to delay discovery in this case.

## III. STATEMENT OF FACTS

### A. The Nature of the Invention of the '761 Patent

The '761 Patent covers the management and storage of electronic information. *See* Declaration of Lisa Kobialka in Support of Leader's Answering Brief in Opposition to Facebook's Motion Compelling Leader's Response to Facebook's Interrogatory No. 1 ("Kobialka Decl."), Ex. 1 ('761 Patent). Leader's innovative patent requires the use of both computer hardware and software in a network-based system. *Id.* For example, Claim 1 of the '761 Patent recites two major components:

1. A computer-implemented network-based system that facilitates management of data, comprising:

    a ***computer-implemented context component*** of the network-based system for capturing context information associated with user-defined data created by user interaction of a user in a first context of the network-based system, the context component dynamically storing the context information in metadata associated with the user-defined data, the user-defined data and metadata stored on a storage component of the network-based system; and

    a ***computer-implemented tracking component*** of the network-based system for tracking a change of the user from the first context to a second context of the network-based system and dynamically updating the stored metadata based on the change, wherein the user accesses the data from the second context.

Kobialka Decl., Ex. 1 at Col. 20, l. 63 to Col. 21, l.12 (emphasis added). As can be seen from the plain language of Claim 1, it is essentially comprised of two elements: one element directed to a "context component" of the network-based system and the other element directed to a "tracking component" of the network-based system. *Id.* These computer-implemented components have the ability to capture and track information which has to do with actions of a user of the system. Thus, while it is apparent that information is being captured based on a user's activity on a network-system, the details of exactly how, for example, the computer-implemented tracking component has the ability to track a change is not available publicly and not visible based on a user's public view of the Facebook website. Elements found in the other asserted claims of the '761 Patent such as "creating data," "dynamically associating metadata

with the data," and "indexing the data" also rely upon the practice of back-end system processes that are not visible to the user. *See, e.g.*, Kobialka Decl., Ex. 1, '761 Patent at Claims 9 and 21, Col. 21-22.

### B. Leader Identified the Accused Product and Provided Facebook with Detailed Preliminary Infringement Contentions

Nearly four months ago and in response to a request by Facebook, Leader provided a definition of the accused product well before discovery commenced. *See* Leader's Motion to Compel (D.I. 36) at 5; *see also* Declaration of Lisa Kobialka in Support of Leader's Motion to Compel (D.I. 37), Ex. 14. Subsequently, Leader provided a detailed response to Facebook's Interrogatory No. 1, specifying how the Facebook Website infringes each element of the 24 asserted claims of the '761 Patent. D.I. 37, Ex. 3.

During the parties' meet and confer efforts, Leader attempted to address Facebook's concerns regarding its response to Interrogatory No. 1.[1] In fact, lead counsel for Leader discussed the invention of the '761 Patent with Facebook's counsel. He explained that Claim 1 of the '761 Patent was directed to essentially two elements, a "context component" and a "tracking component." Declaration of Paul Andre in Support of Leader's Answering Brief in Opposition to Facebook's Motion Compelling Leader's Response to Facebook's Interrogatory No. 1 ("Andre Decl."), ¶ 2. He also discussed why further details of Facebook's infringement required access to Facebook's confidential technical information about Facebook's Website. *Id.* After the meet-and-confer, Leader provided Facebook in writing with a further narrative explanation describing how operation of the Facebook Website infringes certain representative claim elements of Claim 1 of the '761 Patent. D.I. 37, Ex. 6; Andre Decl., ¶ 3. This explanation mapped elements of Claim 1 to specific screenshots of the Facebook Website and specific API calls that evidenced infringement.[2] *Id.*

---

[1] To avoid repeating the same information, Leader refers the Court to Leader's Motion to Compel for details regarding Leader's extensive meet and confer efforts to resolve this dispute. *See* D.I. 36 at 4-6.

[2] Leader also provided Facebook with a chart supporting how each of the named applications in the definition of the "Facebook Website" were created by Facebook. D.I. 37, Ex. 6.

3

On multiple occasions, Leader has informed Facebook that it is willing to supplement its interrogatory response. Facebook knows that once Leader has "access to Facebook's document production and relevant source code, [Leader] will supplement [its] interrogatory response to identify the specific components that provide the functionality illustrated in the above-identified screenshots." *Id.*, Ex. 6; Andre Decl., ¶ 3; *see also* D.I. 37, ¶ 9, Exs. 11, 13. Leader has been seeking Facebook's source code and back-end technical information because elements of the asserted claims are directed to back-end processes, which is the information that will be used to supplement Leader's interrogatory response. *Id.* Facebook, however, refuses to provide Leader with this technical information.[3] D.I. 37, ¶¶ 6-7, Ex. 5.

## IV.   ARGUMENT

### A.   Leader Provided A Substantive Response to Facebook's Interrogatory No. 1

Facebook cannot feign ignorance as to what Leader is accusing of infringement. As a preliminary matter, it should be well aware of the technology of its own website. Even before Leader provided its response to Interrogatory No. 1, Facebook's lead counsel admitted that she could see how Facebook's Website infringed Leader's patent claims. D.I. 23 (March 3, 2009 Hearing Transcript at 8:16-18 ("there are ways [she] could read [Leader's] claim that potentially could encompass every single thing on Facebook")). Furthermore, Leader provided Facebook with infringement contentions at the outset of this case in response to Interrogatory No. 1 based on public information. Now Leader is forced to compel technical information regarding the accused product because Facebook is refusing to produce it, even though this is the very

---

[3] On several occasions, Leader requested Facebook to provide basic information regarding how it maintains its technical information, so it could identify using Facebook's terminology the specific technical information it needs for discovery. For example, Leader asked Facebook to provide such information as identification of its modules, how its technical information is categorized, a description of the back-end of the Facebook Website. Facebook has refused to even provide this information. Kobialka Decl., ¶ 6.

4

information Leader has identified it needs to provide a more detailed response to Interrogatory No. 1.[4] D.I. 36.

Facebook mischaracterizes the invention of the '761 Patent as solely being practiced by the actions of a user. The invention of the '761 Patent, however, is practiced by the actions of components in a computer system. Facebook's Motion should be denied because Leader has provided more than fair notice to Facebook regarding its infringement of the asserted claims of the '761 Patent.

### 1. The Asserted Claims of the '761 Patent Cover Computer-Implemented Components

Contrary to Facebook's representation, highly detailed proof of infringement of the '761 Patent cannot be evidenced solely by actions taken by a user. Rather, such detailed proof of infringement requires back-end technical information such as Facebook's source code and technical documents related to the technology of the Facebook Website. This is due to the fact that the asserted claims of the '761 Patent are directed to the activity of components in a computer-implemented network-based system such as the "context component" and "tracking component." *See, e.g.*, Kobialka Decl., Ex. 1 at Col. 20, l. 63 to Col. 24, l. 44. These components of the asserted claims of the '761 Patent operate behind-the-scenes of the Facebook Website. To provide further detail, Leader needs access to Facebook's confidential technical information.

Facebook knows that its request that Leader somehow "circle" or annotate infringement elements of the asserted claims on screenshots of the Facebook Website is ridiculous. *See* Declaration of Craig Clark in Support of Defendant's Motion for Order Compelling Response to Defendant's Interrogatory No. 1 ("Clark Decl."), ¶ 8, Ex. H. As Facebook is well aware, elements of the asserted claims, including those involving a "context component," "storage

---

[4] After business hours on Friday, May 15, 2009, one business day before this brief is due, Leader's counsel received a letter indicating that Facebook would be producing documents. Leader received a set of documents from Facebook on the day of this brief being filed, but has not yet reviewed the documents. Leader understands from its previous meet-and-confer efforts that Facebook is refusing to provide confidential technical information regarding the Facebook Website.

5

component," and "tracking component," are back-end processes that are not visible to the user. Given the nature of technology at issue, Leader provided as much information it could in response to Facebook's first discovery requests served in the case based on what a user can see and do on the website. *See American Video Graphics, L.P. v. Electronic Arts, Inc.*, 359 F.Supp.2d 558, 560-61 (E.D. Tex. 2005) (noting that cases involving software present "unique challenges" because "plaintiffs usually only have access to the manifestation of the defendants' allegedly infringing source code and not the code itself").

### 2. Leader Provided Facebook With Detailed Infringement Contentions, Including Citation to Specific Screenshots and API Calls

In response to Facebook's Interrogatory No. 1, Leader provided Facebook with detailed infringement contentions based on the publicly available information of Facebook's infringement. Clark Decl., Ex. A. The detailed claim chart includes citations to screenshots of the Facebook Website and API calls that demonstrate Facebook's infringement. *Id.* The chart also included a detailed description of how the Facebook Website practices each limitation of the 24 asserted claims. *Id.* Rather than merely "parrot claim language" as Facebook suggests, the chart specifically points out Facebook's infringement of each element of the asserted claims. For example, in the claim chart, Leader specifically provided Facebook with the following example of infringement of Claim 1:

> By way of example, and not limitation, when a user of the Facebook Website logs on, the user is placed in an initial context. From this initial context, the user is given the ability to enter or upload data. When a user enters or uploads data to the Facebook Website, certain information concerning the data entry is collected by Facebook and automatically associated with the user's data. At least some of this information is retrievable from the storage component using API calls, including, but not limited to, Users.setStatus and Users.getInfo. The Facebook Website uses a tracking component that uses individual "sessions" to track users as they move from context to context through the Facebook Website. The Facebook Website also tracks the actions of the user in each of the contexts. When a user accesses data that was entered or uploaded in a different context, certain information concerning those actions are collected by Facebook and associated with the accessed data. At least some of the tracking information is retrievable using API calls, including, but not limited to Auth.getSession. The ability to access data from a different context is shown by screen-shots of the Facebook Website…"

6

*Id.* As shown above, Leader provided a step-by-step analysis of how Facebook infringes. For example, Leader showed how Facebook infringes a claim element directed to a "tracking component" by stating: "The Facebook Website uses a tracking component that uses individual 'sessions' to track users as they move from context to context through the Facebook Website." *Id.*

Leader also cited to specific screenshots that demonstrate Facebook's infringement of particular representative elements of the asserted claims. For example, Leader cited 18 exemplary screenshots of Facebook's infringement of the "tracking component" of the Facebook Website. D.I. 37, Ex. 6; Andre Decl., ¶ 3. Other identified screenshots show that a "context component" and "storage component" of the Facebook Website infringes the asserted claims. For example, provided screenshots show Facebook's infringement of Claim 1 by operation of an application called "Gifts." In one particular screenshot, it is evident that a "context component" of the Facebook Website captures context information associated with user-defined data when a user selects a "gift." *See* Kobialka Decl., Ex. 2 at LTI000868-69. As shown in the provided screenshots, a user who selects a gift is automatically associated with the "gift" in different areas of the website. *See id.* at LTI000869, LTI000873.

Leader also cited specific API calls which show Facebook's infringement because portions of the Facebook API evidence Facebook's back end processes.[5] Clark Decl., Ex. A; D.I. 37, Ex. 6; Andre Decl., ¶ 3. For example, Claim 1 recites several computer-implemented components, such as a "tracking component," a "storage component," and a "context component" that are not visible to a user of the Facebook Website. Kobialka Decl., Ex. 1 at Col. 20, l. 63 to Col.21, l. 12. Nonetheless, aspects of these components are made visible through

---

[5] Leader cites to application programming interface (API) calls because they evidence the underlying operation of the Facebook Website and because Facebook has refused to make other technical information such as source code available to Leader for review. Facebook's API is a limited set of software tools that Facebook makes available to third party software developers. Facebook's API provides some information as to how Facebook infringes. Though Facebook attempts to confuse the Court by equating API calls with third party applications, Leader does not accuse third party applications of infringement at this time. *See* D.I. 36 at 5, 9-10.

7

function calls that are part of the Facebook API. One example of a Facebook API call that provides evidence of Facebook's infringement is the "Users.setStatus" call that is used to update a Facebook user's "status" with a short message. Kobialka Decl., Ex. 3 at LTI 000696-97. "Users.setStatus" uploads a user-generated message to Facebook's servers from where it can be later retrieved. *Id.* The ability of a user to upload and later retrieve a status message provides evidence that the Facebook Website practices the storage component portion of Claim 1. *Id.* The "Users.setStatus" call also provides context information, such as the application being used by the user to update their status, the user's user id, and a sequence number, to Facebook's servers in addition to the status message itself. *Id.* This additional information likely becomes part of the context information stored by Facebook in association with the user-generated status message, satisfying the context component element of Claim 1.

Another Facebook API call, "Auth.getSession," returns a unique identifier that is used to track a user as they navigate the Facebook web site. Kobialka Decl., Ex. 4 at LTI 000037-39. Auth.getSession provides evidence that the Facebook Website includes the tracking component recited by Claim 1. This information, as well as numerous other examples of API calls evidencing Facebook's infringement, were provided to Facebook in Leader's interrogatory response. *See* Clark Decl., Ex. A. Given the technology at issue, Leader has provided Facebook with more than fair notice of its infringement. For these reasons, Leader respectfully requests that the Court deny Facebook's Motion.

### 3. Mr. Gray's Declaration Provides No Support For Facebook's Arguments

Facebook relies upon the questionable declaration of Mr. Gray, a consultant who does not have a degree in computer science. His declaration is based on generalized statements and makes numerous conclusory statements that fly in the face of the plain language of the asserted claims of the '761 Patent. He states that the claims require that "all of the steps of [Claim 1] depend on certain actions taken by a <u>user</u> of the claimed system." Declaration of Stephen Gray in Support of Defendant's Motion for Order Compelling Response to Defendant's Interrogatory

No. 1 ("Gray Decl."), ¶ 5. This statement is irrelevant and misleading because Claim 1 primarily describes a context component and a tracking component, both of which are not visible to the ordinary user of the Facebook Website. In addition, other limitations in the asserted claims, such as "dynamically associating metadata with the data," "tracking movement of the user," and "indexing the data" do not involve a user. *See, e.g.*, Kobialka Decl., Ex. 1, '761 Patent at Claims 9, 21, Col.21-22. Mr. Gray simply does not address these elements.

Mr. Gray also conveniently glosses over other limitations of the asserted claims. For example, he states: "*[a]fter storage of the context information*, the claim further requires *tracking*...." Gray Decl., ¶ 5 (emphasis added). He presumably does not address the emphasized words in this statement because they involve the activities of a "context component," "storage component," and "tracking component," all of which involve the back-end of Facebook's Website. As noted above, these limitations are performed by a computer system. *Id.* Mr. Gray fails to provide any support Facebook's Motion because he ignores the very elements of the asserted claims that can only be identified with further detail once Leader has access to Facebook's back-end technical information.

In fact, Mr. Gray inadvertently admits that elements of the asserted claims require back-end technical information for proof of infringement. For example, he states that in Claim 1, "the system captur[es] context information." *Id.* Thus, even according to Facebook's consultant, the computer "system" of the claimed invention necessarily must capture context information.

### 4. *ConnecTel* Is Not Persuasive

Facebook erroneously compares this case to *ConnecTel, LLC v. Cisco Sys., Inc.*, 391 F.Supp.2d 526 (E.D. Tex. 2005). The plaintiff in *ConnecTel* alleged that more than a hundred different products "infringe[d] the 120 claims contained in the four patents-at-issue." *Id.* at 527. It provided four charts for the hundreds of products rather than a separate chart for each product, and provided absolutely no explanation of how the accused products infringe the patents-in-suit. *Id.* Unlike the plaintiff in *ConnecTel*, Leader specifically identified the accused product as the

9

Facebook Website. D.I. 37, Exs. 9, 14. As described above, Leader provided a detailed claim chart and explanations of Facebook's infringement of the '761 Patent. Clark Decl., Ex. A; D.I. 37, Ex. 6; Andre Decl., ¶ 3.

Furthermore, *ConnecTel's* procedural posture actually supports Leader's position that Facebook needs to make its source code available for review. The Court in *ConnecTel* noted that the plaintiff was receiving source code and could, therefore, supplement its infringement contentions. 391 F. Supp. 2d at 528-59. This is exactly what Leader seeks in its Motion to Compel. *See STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F.Supp.2d 754, 755-56 (E.D. Tex. 2004) (holding that preliminary infringement contentions can be later supplemented after technical information is produced during discovery).

### B. Facebook Refuses to Provide Leader with The Information It Needs to Supplement Its Response to Interrogatory No. 1

Contrary to Facebook's claim, Leader stated it will supplement its response to Interrogatory No. 1 once it has received technical information from Facebook. D.I. 37, ¶ 9, Exs. 6, 11, 13. Facebook refuses to provide this discovery and misstates Leader's position on supplementation. In numerous cases, courts have held that source code and technical information is necessary to provide further detail to preliminary infringement contentions. *See American Video Graphics*, 359 F.Supp.2d at 560-61 (holding plaintiffs in cases involving software are typically unable to give highly specified infringement contentions until they have access to defendants' source code); *see also ConnecTel*, 391 F. Supp. 2d at 528 (citing to *American Video Graphics* where "source code was necessary to fill the gaps expected when one alleges infringement of software products without access to confidential information"). The bottom line is that Leader is willing to supplement Interrogatory No. 1. Once it receives the discovery it is seeking in its Motion to Compel, such as Facebook's source code and back-end technical information, Leader will supplement its discovery response. D.I. 37, Ex. 6; Andre Decl., ¶ 3.

10

## C. Facebook is Misusing Discovery

Preliminary infringement contentions "are not meant to provide a forum for litigation of the substantive issues; they are merely designed to streamline the discovery process." *Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-2079 VRW, 2003 WL 21699799, at *5 (N.D. Cal. Mar. 21, 2003); *see also FusionArc, Inc. v. Solidus Networks, Inc.*, No. C 06-06760 RMW, 2007 WL 1052900, at *2 (N.D. Cal. April 5, 2007) (purpose of preliminary infringement contentions is "to hasten resolution on the merits, they are *not*…a mechanism for resolving the *merits* of the parties' dispute") (emphasis in original). Here, Facebook is seeking complete infringement contentions in the very first set of discovery responses served in the case before Facebook has provided any meaningful discovery. Contrary to what Facebook would suggest, preliminary infringement contentions do not require "evidence of infringement" or "ironclad and irrefutable claim constructions." *Network Caching*, 2003 WL 21699799, at *4. Based on Facebook's motion, it appears that Facebook believes it is entitled at this stage of the case to obtain all claim construction positions, along with the final set of Leader's infringement positions. Leader has satisfied its requirement in responding to Interrogatory No. 1 at this stage of the case. *See Renesas Tech. Corp. v. Nanya Tech. Corp.*, No C03-05709JFHRL, 2004 WL 2600466, at *5 (N.D. Cal. Nov. 10, 2004) (holding that preliminary infringement contentions need not "be perfect"). Because Leader provided Facebook with substantive preliminary infringement contentions at this stage of the case, Leader respectfully requests that the Court deny Facebook's Motion.

## D. Leader Conducted A Diligent Pre-Filing Investigation Prior to Bring Suit Against Facebook

Facebook's suggestion that Leader did not have a proper basis for bringing suit is simply false. "Rule 11 imposes a duty of reasonable inquiry as to the facts set forth in a pleading," but "it is not necessary that [a pre-filing] investigation into the facts be carried to the point of absolute certainty." *Forbes v. Eagleson*, 228 F.3d 471, 488 (3d Cir. 2000) (citation and quotation omitted); *see also Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1093 (Fed. Cir.

1997) (holding this Court did not abuse its discretion in denying Rule 11 sanctions "in light of the available information at the time of filing"). Simply because Leader does not have access to Facebook's confidential information to supplement its infringement contentions does not mean that there was no Rule 11 basis for bringing this action. Leader conducted a diligent pre-filing investigation regarding Facebook's infringement of the '761 Patent. The detailed technical evidence of infringement that Facebook seeks is not "practicably obtainable" until Facebook provides Leader with discovery of its technical information including its source code for the Facebook Website. *See Cambridge Prods., Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048, 1050 (Fed. Cir. 1992) (holding that plaintiff engaged in a reasonable pre-filing inquiry because "[w]ithout the aid of discovery, any further information [in the pre-filing investigation] was not practicably obtainable")

Moreover, Facebook does not cite to any persuasive case law in support of its contention. Neither *View Eng'g* nor *Antonious* apply the law of the Third Circuit. *See Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) (holding the law of regional circuit is applied in context of a Rule 11 analysis); *see also View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981 (Fed. Cir. 2000) (applying law of the Ninth Circuit to Rule 11 analysis). The defendant in *View Eng'g* initially pled but later dismissed dozens of counterclaims and "admit[ted] that [they] had no factual basis." 208 F.3d at 984. That is not the case here. Furthermore, in *Antonious,* the patentee had the ability and opportunity to physically open the accused golf clubs to determine whether they infringed. 275 F.3d at 1075-77. In this case, Leader cannot conduct such an analysis because it cannot "open up" the source code and technical information of the Facebook Website since such information is in Facebook's sole possession and not readily available to Leader.

## V. CONCLUSION

For the reasons articulated above, Leader respectfully requests the Court deny Facebook's Motion Compelling Plaintiff's Response to Defendant's Interrogatory No. 1.

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
KING & SPALDING LLP
333 Twin Dolphin Drive
Suite 400
Redwood Shores, CA 94065
(650) 590-0700

Dated: May 18, 2009
916788

POTTER ANDERSON & CORROON LLP

By: /s/ Philip A. Rovner
Philip A. Rovner (#3215)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

*Attorneys for Plaintiff*
*Leader Technologies, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on May 18, 2009, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

### BY CM-ECF, E-MAIL AND FIRST CLASS MAIL

> Thomas P. Preston, Esq.
> Steven L. Caponi, Esq.
> Blank Rome LLP
> 1201 Market Street
> Wilmington, DE 19801
> Preston-T@blankrome.com
> caponi@blankrome.com

I hereby certify that on May 18, 2009 I have sent by E-mail and first class mail the foregoing document to the following non-registered participants:

> Heidi L. Keefe, Esq.
> Mark R. Weinstein, Esq.
> Craig W. Clark, Esq.
> Melissa H. Keyes, Esq.
> White & Case LLP
> 3000 El Camino Real
> 5 Palo Alto Square, 9th Floor
> Palo Alto, CA 94306
> hkeefe@whitecase.com; mweinstein@whitecase.com
> cclark@whitecase.com; mkeyes@whitecase.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com