IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LEADER TECHNOLOGIES, INC., a Delaware corporation<br><br>    Plaintiff and Counterdefendant,<br><br>v.<br><br>FACEBOOK, INC., a Delaware corporation<br><br>    Defendant and Counterclaimant. | CIVIL ACTION<br><br>NO. 1:08-cv-00862-JJF |

**DECLARATION OF STEPHEN GRAY
IN SUPPORT OF DEFENDANT'S MOTION FOR ORDER
COMPELLING RESPONSE TO DEFENDANT'S INTERROGATORY NO. 1**

I, Stephen Gray, declare:

    1. I am a founder and principal of the consulting firm Gray & Yorg, LLC based in San Diego, California. I have more than thirty (30) years of experience of experience in the computer and communications industries. My background includes systems and software architecture, design and development. I regularly consult in the areas of computer systems and software architecture, design and software engineering. I have also served as an expert technical consultant and/or witness in more than a dozen patent infringement cases involving computer or software-related patents, including performing infringement analyses. An accurate copy of my CV is attached hereto as **Exhibit A**.

    2. I am informed that plaintiff in this action, Leader Technologies, Inc. ("LTI"), has accused Facebook, Inc. ("Facebook") of infringing certain claims of U.S. Patent No. 7,139,761 (the "'761 patent"). I have reviewed the '761 patent, Leader Technologies, Inc.'s Response to Facebook, Inc.'s First Set of Interrogatories (Interrogatory No. 1), and a letter from Paul Andre, Esq. to Heidi Keefe, Esq. dated April 6, 2009. I have also reviewed the 151 pages of documents that were

referenced in LTI's response and letter.

3. I have been asked to analyze the information LTI has provided to determine whether LTI has meaningfully identified the features, functions or steps that allegedly infringe the '761 patent. Based on my review of the materials referenced above, which I am informed constitute the entire universe of information LTI has provided as to its infringement allegations against Facebook, it is not possible to determine with any degree of certainty which features, functions or steps LTI is accusing in this action.

4. Using claim 1 of the '761 patent as an example, it recites a system for managing data that includes multiple steps that must be performed by a user of an infringing system. For ease of reference, I have set forth claim 1 below and added bracketed headings to show the separate limitations of that claim:

| | | |
|---|---|---|
| 1. | | A computer-implemented network-based system that facilitates management of data, comprising: |
| | [a] | a computer-implemented context component of the network-based system |
| | [b] | for capturing context information associated with user-defined data |
| | [c] | created by user interaction of a user in a first context of the network-based system, |
| | [d] | the context component dynamically storing the context information in metadata associated with the user-defined data, |
| | [e] | the user-defined data and metadata stored on a storage component of the network-based system; and |
| | [f] | a computer-implemented tracking component of the network-based system |
| | [g] | for tracking a change of the user from the first context to a second context of the network-based system and |
| | [h] | dynamically updating the stored metadata based on the change, |
| | [i] | wherein the user accesses the data from the second context. |

5.  The claim language above makes clear that all of the steps in this claim depend on certain actions taken by a <u>user</u> of the claimed system. In order to infringe, for example, a user must access "**user-defined data**" in a "**first context**," with the system capturing context information "created by **user interaction of a user**" in that context. After storage of the context information, the claim further requires tracking "a **change of the user** from a first context to a second context," and concludes with "the **user access[ing] the data** from the second context." It is therefore not possible to know whether claim 1 is infringed without knowing precisely what actions the user is performing on an accused system.

6.  In my opinion, a meaningful description of how an accused system allegedly infringes the '761 patent requires, at the very least, a step-by-step identification of the specific actions taken by a user of the accused system (including the specific features used), and a precise description of how those actions meet or trigger each claim element. Such a description is even more essential when the accused system is a large networked system such as Facebook, which provides millions of users many ways to share information through thousands of applications. Because Facebook provides so many different ways to share and distribute information, a clear identification is essential in order to separate accused from non-accused functionalities.

7.  LTI has provided no meaningful description of how Facebook's alleged infringement of the '761 patent takes place. For example, LTI's responses avoid any identification of the "**user-defined data**" or the "**first context**" in which user must initially operate as required by claim 1. I cannot determine, for example, whether the "first context" refers to a specific web page on Facebook, a group of web pages, one or more applications available on Facebook, the entire website, or something entirely different. Given the large number of components and features available on the Facebook website, LTI's response does not even permit meaningful speculation as to LTI's infringement contentions. LTI's response also fails to identify the "**second context**" into which the user moves, or explain how the user effectuated that movement.

8.  The confusion is compounded by the documents cited in LTI's response, which I

3

have reviewed. For example, with respect to the requirement of claim 1 that the user moves to and accesses user-defined data from a second context, LTI states:

> The ability to access data from a different context is shown by screen-shots of the Facebook Website, including but not limited to LTI000781 to LTI000912.

(Leader Technologies, Inc.'s Response to Facebook, Inc.'s First Set of Interrogatories (Interrogatory No. 1), at 8). The 151 pages of documents referenced in this response, which I have reviewed, consist of screen-captures from Facebook and portions of Facebook's on-line help files. These pages are neither annotated, nor is there any information in these pages connecting what is depicted on the screen to any of the elements of claim 1. These pages depict so many different and disparate functionalities of Facebook (many having no apparent connection to the patent) that they are not informative to determining the accused features, functions or steps of Facebook.

9. LTI's response also refers to API calls. The term "API" is an acronym for Application Programming Interface, a term generally used to describe a set of software services that are provided to programmers for creating their own applications. The API calls referenced in LTI's response are designed to allow third party developers to access certain information regarding user status. The existence of these API calls says nothing about whether that information is ever used by Facebook in the manner recited in the claims, and LTI's reference to them is not informative to the issue of how the alleged infringement takes place.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 30, 2009 in Borrego Springs, California.

_Stephen Gray_ (signature)
Stephen Gray

4