

# Potter Anderson & Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

Philip A. Rovner
Partner
provner@potteranderson.com
(302) 984-6140    Direct Phone
(302) 658-1192    Fax

July 9, 2009

**BY E-FILE**

The Honorable Leonard P. Stark
U.S. District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801-3556

           Re:     Leader Technologies, Inc. v. Facebook, Inc.,
                 C. A. No. 08-862-JJF(LPS)

Dear Judge Stark:

       Leader Technologies, Inc. ("Leader"), a Delaware company based in Westerville, Ohio, is the owner of the 7,139,761 ("'761") patent, which is generally directed to a method and system for the management and storage of electronic information. Facebook, Inc. ("Facebook"), a Delaware company based in Palo Alto, California, owns and operates a social networking website that is accused of infringing Leader's '761 patent. Leader filed the above referenced patent infringement action on November 19, 2008.

       The parties have been unable to resolve the following three discovery issues: (1) Facebook's refusal to provide documents from relevant prior litigations; (2) Facebook's refusal to produce relevant technical documents; and (3) Facebook's inadequate responses to Leader's Requests for Admissions ("RFAs"). Leader has unsuccessfully met and conferred with Facebook in good faith multiple times in an attempt to resolve these issues.

**1.     Facebook's Refusal to Provide Documents from Relevant Previous Litigations**

       Leader requested that Facebook provide relevant documents from its previous litigations, and has limited the scope of this request to the trade secret litigation with ConnectU and a patent litigation with Cross Atlantic. This category of information, including sworn testimony of key Facebook witnesses and documents regarding Facebook, its technologies, and the development of the company and its website, is highly relevant to this litigation. Leader knows that information provided in at least the ConnectU case is relevant in this case because some of the deposition testimony of Facebook's founder was posted on the Internet, and that sworn testimony is highly relevant to Leader's case. The central issue of the ConnectU litigation was the conception and development of the Facebook website in the context of alleged trade secret misappropriation. This information is directly relevant to Leader's claims of infringement and willful infringement. Facebook's basis for not producing this information is on a relevancy grounds -- i.e., that this information is irrelevant because Leader's '761 patent was not at issue in the prior litigations. While Leader's patent was not involved in the ConnectU or Cross Atlantic case, Facebook's infringing technology at issue here was involved, and that is precisely the

relevant information that Leader seeks to obtain. Accordingly, Leader requests that the Court order Facebook to produce all non-privileged documents responsive to Leader's RFP Nos. 18-20.

## 2. Facebook's Refusal to Produce Relevant Technical Documents

Leader seeks to have Facebook produce relevant documents describing the infringing technology of its web site. Discovery has been open in this case for five months, and Facebook has produced fewer than 3000 documents. Not a single technical document was included in that production. During the May 28, 2009 hearing, the Court instructed Facebook to provide a map or list of source code modules to aid in focusing the scope of discovery. May 28, 2009 Tr. 23:13-17. Rather than provide a map of source code modules, Facebook provided a non-descriptive directory list with no reference or explanation. In spite of Facebook's blatant disregard of the Court's intent, Leader chose to work with this list to facilitate moving discovery forward. Leader selected 89 of the 400 directories as a beginning point for source code discovery.

In addition, as agreed to at the May 28 hearing, Leader required that Facebook provide the accompanying technical documents related to the selected source code so that Leader could adequately identify the specific source code needed for its infringement contentions.

```
7      THE COURT:  And the source code,
8      that is what will be, kind of, like, the step
9      off technical information?
10     MR. ANDRE:  The source code and
11     the technical documents in support of the source
12     code.
```
May 28, 2009 Tr. 25:13-20. The Court acknowledged that once Facebook provided Leader with the source code and technical documents, only then would Leader be required to firm-up its infringement contention.

```
12     MR. ANDRE:  It does, Your Honor.
13     If we get that and if we get the technical
14     documents in support of those modules as well,
15     once we identify them, that will take us almost
16     all the way to all the technical documents we
17     need anyway.
18     THE COURT:  Then you have to
19     become very firm in your infringement analysis,
20     limitation by limitation.
```
May 28, 2009 Tr. 25:13-20. Facebook has provided absolutely no basis for not producing these documents, and there is no reason to delay production of technical documents. In particular, documents that will aid Leader in its review of the selected Facebook's source code are required for Leader to finalize its infringement contentions.

### 3. Facebook's Inadequate Responses to Leader's Requests for Admissions

With respect to Leader's RFA Nos. 1, 3-29, Facebook is attempting to avoid answering straight forward RFAs by stating that easily understood terms are vague and ambiguous. Federal Rule of Civil Procedure 36 provides that "[a] denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Rather than making a good faith effort to respond to the substance of Leader's RFAs, Facebook has unreasonably supplied Leader with a blanket denial of a majority of Leader's RFAs.

The terms to which Facebook objects are easily understood within the context in which they are provided. Examples of the common and readily understood terms that Facebook claimed were vague and ambiguous are "navigate," "create," "data," "information," "user," "allows," and "hosting." Furthermore, Facebook has objected to terms used by Facebook itself in describing aspects of its website, stating that these terms are ambiguous because it is unclear whether the terms are directed toward a specific Facebook application or other applications. The RFAs are directed toward the specific functionality on the Facebook website which is clear from the requests themselves. For example, RFA No. 1 asks that Facebook "[a]dmit that the Facebook Website operates on one or more servers." Facebook objected to this request because it claimed the "term 'operates' renders the request vague and ambiguous." Subject to this objection, Facebook denied this straightforward request.

Despite the clarity of the RFAs as served, Leader attempted to address Facebook's objections and purported concerns. Leader offered to clarify certain terms such as "the photos application," "the groups application," and "the events application" as referring to the applications currently offered on the Facebook website under those names, if Facebook agreed to supplement its RFA responses. Facebook refused to agree to this proposal and instead stated that Leader could serve additional "clarified" RFAs. It is unreasonable to require Leader to serve additional RFAs, given that the initial RFAs were clear on their face and Leader has no assurance that Facebook will properly respond to a new set of RFAs. Leader thereby requests that the Court order Facebook to immediately supplement its responses to RFA Nos. 1, 3-29.

Leader has made every reasonable attempt to resolve Facebook's concerns and progress the discovery in this action; however, it is clear that Facebook's intent is not to clarify issues in this litigation, but rather obstruct discovery completely.

Respectfully,

/s/ Philip A. Rovner

Philip A. Rovner (#3215)
provner@potteranderson.com

PAR /924066
cc: Steven L. Caponi, Esq. – By E-File and E-mail
　　Heidi L. Keefe, Esq. – By –E-mail
　　Paul J. Andre, Esq. – By E-mail