

**BLANK ROME LLP**
COUNSELORS AT LAW

*Phone:* *(302) 425-6408*
*Fax:* *(302) 428-5106*
*Email:* *Caponi@BlankRome.com*

**BY HAND & ELECTRONIC FILING**        July 10, 2009

The Hon. Leonard P. Stark
J. Caleb Boggs Federal Building
U.S. District Court for the District of Delaware
844 N. King Street, Unit 26, Room 6100
Wilmington, DE 19801-3556

   Re: *Leader Technologies, Inc. v. Facebook, Inc.*, C.A. No. 08-862-JJF

Dear Judge Stark:

Defendant Facebook, Inc. respectfully submits this letter brief in opposition to the letter brief filed yesterday by plaintiff Leader Technology, Inc.'s ("LTI"). D.I. 65.

### A. The Court Already Denied LTI's Motion

LTI's exact same motion was already denied by Judge Farnan on May 28, 2009. LTI previously brought a motion to compel Facebook's source code, technical documents and materials from unrelated litigations (the same materials sought here). Facebook countered that in advance of any further document production, LTI should first be required to provide a clear explanation of what aspects of Facebook's website were alleged to infringe in order to narrow the case. To that end, Facebook brought its own motion to compel a further response to its interrogatory seeking LTI's infringement contentions. (D.I. 39).

At the May 28, 2009 hearing, Judge Farnan denied <u>both</u> motions in their entirety (Ex. A, May 28, 2009 Tr., 34:1-6), and adopted an alternative procedure designed to protect Facebook from LTI's overly broad discovery. The Court concluded that, at this time, LTI should have tailored access to portions of Facebook's source code—but nothing else. The Court said: "What I think we need to do to try and make this a little bit informed and to let it evolve a little bit, I think I would like Facebook to produce that category list [of source code modules]. Then I'd like to see how reasonable [LTI] is in polling that list." *Id.* at 22:4-9; *see also id.* at 23:5-7 ("'Okay. [LTI has] given enough at this stage of the case, but that's not enough to let them go full bore into Facebook.'"). The Court's new procedure requires Facebook to first produce a list of source code modules. *Id.* at 38:9-39:11. Thereafter, LTI would select a reasonable subset of those modules for review, so that it could provide more detail to its infringement contentions so



discovery could proceed only as to relevant portions of Facebook. *Id.* at 24:4-25:20; 38:9-39:11. Even after the Judge denied LTI's motion and put this new procedure in place, LTI <u>again</u> asked the Court about its request regarding litigation materials. But Judge Farnan was clear that he had also denied that request in favor of his new procedure (outlined above). Ex. A at 39:7-11.

Per Judge Farnan's directions, Facebook produced the source code module list and LTI has made its selections, but LTI has not yet reviewed the source code nor supplemented its infringement theories. Therefore, nothing has substantively changed since the May 28 hearing. Until LTI's review is complete and its infringement contentions are properly supplemented, Judge Farnan's Order makes clear that LTI is <u>not</u> entitled to any further document production.

### B. LTI's Attempt to Circumvent the Court's Order Should Be Rejected

The May 28 Order made clear that the Court was striking a balance between intruding on Facebook and providing LTI with the information it needed at this stage of the case. LTI should not be allowed to end run Judge Farnan's procedure by renewing its motion before Your Honor.

LTI provides no explanation for why these materials are relevant. The three litigations LTI now mentions have nothing to do with LTI or its patent. *See Wyeth v. Impax Labs., Inc.*, 248 F.R.D. 169, 170-71 (D. Del. 2006) (Farnan, J.) (holding requests for "pleadings, deposition transcripts, hearing transcripts and expert reports" in separate litigation involving the <u>same patent</u> to be overbroad and unreasonable).

As an aside, LTI's claim that Facebook has produced only 3,000 pages of documents is incorrect. Facebook has produced well over 100,000 pages. Moreover, LTI has continual access to the website, user guides and developer documents and has been offered access to the source code modules it selected. These provide LTI enough to articulate its alleged infringement case.

### C. Facebook Has Answered LTI's Poorly-Drafted Requests for Admissions

Facebook has properly responded to LTI's Requests for Admissions ("RFAs"), which were complex and poorly-drafted. In fact, a month after Facebook served its responses, LTI complained that it did not understand the basis for Facebook's responses. Facebook assured LTI that its responses were proper, but offered LTI two reasonable options to address its concerns: (1) Facebook would agree to answer an LTI interrogatory seeking explanations for Facebook's denials (provided that both parties treat such interrogatories as only a single interrogatory toward the limit in FRCP 33); or (2) LTI could serve a new set of succinct, clear, precise RFAs, to which Facebook would respond. Ex. C at 1. LTI rejected the first proposal without explanation, and



July 10, 2009
Page 3

rejected the second proposal simply because it did not want to wait 30 days for response to well drafted RFAs.

Facebook properly responded to the RFAs, which were violated Rule 36's requirement that RFAs be simple, concise and direct while avoiding vagueness and ambiguity. *United Coal Cos. V. Powell Constr. Co.*, 839 F.2d 958, 967-68 (3d Cir. 1988); *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 107-08 (D. Del. 2002). LTI's RFA No. 1, cited in its letter brief, is actually a good example of the flawed nature of its RFAs. RFA No. 1 asks Facebook to "[a]dmit that the Facebook Website operates on one or more servers." Facebook properly objected to the RFA as vague because of LTI's definition of "Facebook Website," which it incorporated into nearly all of the RFAs, includes all versions of Facebook's website or any "associated" website that ever existed and all functionality available, even those that no longer operate. *See* Ex. A at 1-2. Facebook limited its response to the then current site and properly denied the RFA because, as LTI should know, not all features of facebook.com "operate" on "one or more servers" (as certain functions operate on the member's computer and not on a server). A properly-drafted RFA would, at a minimum, have identified the specific features that were claimed to operate on a server.

LTI's other RFAs suffer from similar problems, generally by incorporating complex definitions that, in turn, incorporate the already overly broad "Facebook Website" definition. *See* e.g., Ex. B at 8 (RFA No. 6). Many of the RFAs improperly seek admissions on contested issues of infringement and were therefore properly denied. *See e.g., id.* This Court has held that "where issues in dispute [such as infringement] are requested to be admitted, a denial is a perfectly reasonable response." *Pfizer Inc. v. Ranbaxy Labs. Ltd.*, 2004 WL 830388, *1 (D. Del., April 12, 2004) (Farnan, J.).

Facebook should not be required to make assumptions, or fill in gaps, in response to poorly-drafted RFAs seeking binding admissions. Facebook properly answered all LTI's failed RFAs in good faith and even attempted to work with LTI on its concerns. Facebook submits that LTI's request regarding its RFAs be denied.

                              Respectfully submitted,

                              /s/ *Steven L. Caponi*
                              Steven L. Caponi
                              I.D. No. 3484

SLC:pfc
cc:     Philip A. Rovner, Esquire – via e-service