# EXHIBIT A



United States Patent and Trademark Office

PATENTS

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

Patents > Search Collections > MPEP > 2163 Guidelines for the Examination of Patent Applications Under the 35 U.S.C. - 2100 Patentability

Go to MPEP - Table of Contents

browse before

# 2163 Guidelines for the Examination of Patent Applications Under the 35 U.S.C. - 2100 Patentability

## 2163 Guidelines for the Examination of Patent Applications Under the 35 U.S.C. 112, para. 1, "Written Description" Requirement [R-5]

The following Guidelines establish the policies and procedures to be followed by Office personnel in the evaluation of any patent application for compliance with the written description requirement of 35 U.S.C. 112. These Guidelines are based on the Office's current understanding of the law and are believed to be fully consistent with binding precedent of the U.S. Supreme Court, as well as the U.S. Court of Appeals for the Federal Circuit and its predecessor courts.

The Guidelines do not constitute substantive rulemaking and hence do not have the force and effect of law. They are designed to assist Office personnel in analyzing claimed subject matter for compliance with substantive law. Rejections will be based upon the substantive law, and it is these rejections which are appealable. Consequently, any perceived failure by Office personnel to follow these Guidelines is neither appealable nor petitionable.

These Guidelines are intended to form part of the normal examination process. Thus, where Office personnel establish a prima facie case of lack of written description for a claim, a thorough review of the prior art and examination on the merits for compliance with the other statutory requirements, including those of 35 U.S.C. 101, 102, 103, and 112, is to be conducted prior to completing an Office action which includes a rejection for lack of written description.

I. GENERAL PRINCIPLES GOVERNING COMPLIANCE WITH THE "WRITTEN DESCRIPTION" REQUIREMENT FOR APPLICATIONS

The first paragraph of 35 U.S.C. 112 requires that the "specification shall contain a written description of the invention * * *." This requirement is separate and distinct from the enablement requirement. See, e.g., *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1560, 19 USPQ2d 1111, 1114 (Fed. Cir. 1991). See also *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 920-23, 69 USPQ2d 1886, 1890-93 (Fed. Cir. 2004) (discussing history and purpose of the written description requirement); *In re Curtis*, 354 F.3d 1347, 1357, 69 USPQ2d 1274, 1282 (Fed. Cir. 2004) ("conclusive evidence of a claim's enablement is not equally conclusive of that claim's

satisfactory written description"). The written description requirement has several policy objectives. "[T]he 'essential goal' of the description of the invention requirement is to clearly convey the information that an applicant has invented the subject matter which is claimed." In re Barker, 559 F.2d 588, 592 n.4, 194 USPQ 470, 473 n.4 (CCPA 1977). Another objective is to put the public in possession of what the applicant claims as the invention. See Regents of the University of California v. Eli Lilly, 119 F.3d 1559, 1566, 43 USPQ2d 1398, 1404 (Fed. Cir. 1997), cert. denied, 523 U.S. 1089 (1998). *>"The 'written description' requirement implements the principle that a patent must describe the technology that is sought to be patented; the requirement serves both to satisfy the inventor's obligation to disclose the technologic knowledge upon which the patent is based, and to demonstrate that the patentee was in possession of the invention that is claimed." Capon v. Eshhar, 418 F.3d 1349, 1357, 76 USPQ2d 1078, 1084 (Fed. Cir. 2005). Further, the< written description requirement ** promotes the progress of the useful arts by ensuring that patentees adequately describe their inventions in their patent specifications in exchange for the right to exclude others from practicing the invention for the duration of the patent's term.

To satisfy the written description requirement, a patent specification must describe the claimed invention in sufficient detail that one skilled in the art can reasonably conclude that the inventor had possession of the claimed invention. See, e.g., Moba, B.V. v. Diamond Automation, Inc., 325 F.3d 1306, 1319, 66 USPQ2d 1429, 1438 (Fed. Cir. 2003); Vas-Cath, Inc. v. Mahurkar, 935 F.2d at 1563, 19 USPQ2d at 1116. However, a showing of possession alone does not cure the lack of a written description. Enzo Biochem, Inc. v. Gen-Probe, Inc., 323 F.3d 956, 969-70, 63 USPQ2d 1609, 1617 (Fed. Cir. 2002). Much of the written description case law addresses whether the specification as originally filed supports claims not originally in the application. The issue raised in the cases is most often phrased as whether the original application provides "adequate support" for the claims at issue or whether the material added to the specification incorporates "new matter" in violation of 35 U.S.C. 132. The "written description" question similarly arises in the interference context, where the issue is whether the specification of one party to the interference can support the newly added claims corresponding to the count at issue, i.e., whether that party can "make the claim" corresponding to the interference count. See, e.g., Martin v. Mayer, 823 F.2d 500, 503, 3 USPQ2d 1333, 1335 (Fed. Cir. 1987). In addition, early opinions suggest the Patent and Trademark Office was unwilling to find written descriptive support when the only description was found in the claims; however, this viewpoint was rejected. See In re Koller, 613 F.2d 819, 204 USPQ 702 (CCPA 1980) (original claims constitute their own description); accord In re Gardner, 475 F.2d 1389, 177 USPQ 396 (CCPA 1973); accord In re Wertheim, 541 F.2d 257, 191 USPQ 90 (CCPA 1976). It is now well accepted that a satisfactory description may be in the claims or any other portion of the originally filed specification. These early opinions did not address the quality or specificity of particularity that was required in the description, i.e., how much description is enough.

An applicant shows possession of the claimed invention by describing the claimed invention with all of its limitations using such descriptive means as words, structures, figures, diagrams, and formulas that fully set forth the claimed invention. Lockwood v. American Airlines, Inc., 107 F.3d 1565, 1572, 41 USPQ2d 1961, 1966

(Fed. Cir. 1997). Possession may be shown in a variety of ways including description of an actual reduction to practice, or by showing that the invention was "ready for patenting" such as by the disclosure of drawings or structural chemical formulas that show that the invention was complete, or by describing distinguishing identifying characteristics sufficient to show that the applicant was in possession of the claimed invention. See, e.g., *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 68, 119 S.Ct. 304, 312, 48 USPQ2d 1641, 1647 (1998); *Eli Lilly*, 119 F.3d at 1568, 43 USPQ2d at 1406; *Amgen, Inc. v. Chugai Pharmaceutical*, 927 F.2d 1200, 1206, 18 USPQ2d 1016, 1021 (Fed. Cir. 1991) (one must define a compound by "whatever characteristics sufficiently distinguish it"). "Compliance with the written description requirement is essentially a fact-based inquiry that will 'necessarily vary depending on the nature of the invention claimed.'" *Enzo Biochem*, 323 F.3d at 963, 63 USPQ2d at 1613. An application specification may show actual reduction to practice by describing testing of the claimed invention or, in the case of biological materials, by specifically describing a deposit made in accordance with 37 CFR **1.801** *et seq.* See *Enzo Biochem*, 323 F.3d at 965, 63 USPQ2d at 1614 ("reference in the specification to a deposit may also satisfy the written description requirement with respect to a claimed material"); see also Deposit of Biological Materials for Patent Purposes, Final Rule, 54 FR 34,864 (August 22, 1989) ("The requirement for a specific identification is consistent with the description requirement of the first paragraph of 35 U.S.C. **112**, and to provide an antecedent basis for the biological material which either has been or will be deposited before the patent is granted." Id. at 34,876. "The description must be sufficient to permit verification that the deposited biological material is in fact that disclosed. Once the patent issues, the description must be sufficient to aid in the resolution of questions of infringement." Id. at 34,880.). Such a deposit is not a substitute for a written description of the claimed invention. The written description of the deposited material needs to be as complete as possible because the examination for patentability proceeds solely on the basis of the written description. See, e.g., *In re Lundak*, 773 F.2d 1216, 227 USPQ 90 (Fed. Cir. 1985). See also 54 FR at 34,880 ("As a general rule, the more information that is provided about a particular deposited biological material, the better the examiner will be able to compare the identity and characteristics of the deposited biological material with the prior art.").

A question as to whether a specification provides an adequate written description may arise in the context of an original claim which is not described sufficiently (see, e.g., >*LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1345, 76 USPQ2d 1724, 1733 (Fed. Cir. 2005);< *Enzo Biochem*, 323 F.3d at 968, 63 USPQ2d at 1616 (Fed. Cir. 2002); *Eli Lilly*, 119 F.3d 1559, 43 USPQ2d 1398), a new or amended claim wherein a claim limitation has been added or removed, or a claim to entitlement of an earlier priority date or effective filing date under 35 U.S.C. **119**, **120**, or **365(c)**. Most typically, the issue will arise in the context of determining whether new or amended claims are supported by the description of the invention in the application as filed (see, e.g., *In re Wright*, 866 F.2d 422, 9 USPQ2d 1649 (Fed. Cir. 1989)), whether a claimed invention is entitled to the benefit of an earlier priority date or effective filing date under **35 U.S.C. 119**, **120**, or **365(c)** (see, e.g., *New Railhead Mfg. L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 63 USPQ2d 1843 (Fed. Cir. 2002); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 47 USPQ2d 1829 (Fed. Cir. 1998); *Fiers v. Revel*, 984 F.2d 1164, 25 USPQ2d 1601 (Fed. Cir. 1993); *In re Ziegler*, 992 F.2d 1197, 1200, 26 USPQ2d 1600, 1603 (Fed. Cir. 1993)), or whether

a specification provides support for a claim corresponding to a count in an interference (see, e.g., *Fields v. Conover*, 443 F.2d 1386, 170 USPQ 276 (CCPA 1971)). Compliance with the written description requirement is a question of fact which must be resolved on a case-by-case basis. *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d at 1563, 19 USPQ2d at 1116 (Fed. Cir. 1991).

### A. Original Claims

There is a strong presumption that an adequate written description of the claimed invention is present when the application is filed. *In re Wertheim*, 541 F.2d 257, 263, 191 USPQ 90, 97 (CCPA 1976) ("we are of the opinion that the PTO has the initial burden of presenting evidence or reasons why persons skilled in the art would not recognize in the disclosure a description of the invention defined by the claims"). However, as discussed in paragraph I., *supra*, the issue of a lack of adequate written description may arise even for an original claim when an aspect of the claimed invention has not been described with sufficient particularity such that one skilled in the art would recognize that the applicant had possession of the claimed invention. The claimed invention as a whole may not be adequately described if the claims require an essential or critical feature which is not adequately described in the specification and which is not conventional in the art or known to one of ordinary skill in the art. For example, consider the claim "A gene comprising SEQ ID NO:1." A determination of what the claim as a whole covers may result in a conclusion that specific structures such as a promoter, a coding region, or other elements are included. Although all genes encompassed by this claim share the characteristic of comprising SEQ ID NO:1, there may be insufficient description of those specific structures (e.g., promoters, enhancers, coding regions, and other regulatory elements) which are also included.

The claimed invention as a whole may not be adequately described where an invention is described solely in terms of a method of its making coupled with its function and there is no described or art-recognized correlation or relationship between the structure of the invention and its function. A biomolecule sequence described only by a functional characteristic, without any known or disclosed correlation between that function and the structure of the sequence, normally is not a sufficient identifying characteristic for written description purposes, even when accompanied by a method of obtaining the claimed sequence. For example, even though a genetic code table would correlate a known amino acid sequence with a genus of coding nucleic acids, the same table cannot predict the native, naturally occurring nucleic acid sequence of a naturally occurring mRNA or its corresponding cDNA. Cf. *In re Bell*, 991 F.2d 781, 26 USPQ2d 1529 (Fed. Cir. 1993), and *In re Deuel*, 51 F.3d 1552, 34 USPQ2d 1210 (Fed. Cir. 1995) (holding that a process could not render the product of that process obvious under **35 U.S.C. 103**). The Federal Circuit has pointed out that under United States law, a description that does not render a claimed invention obvious cannot sufficiently describe the invention for the purposes of the written description requirement of 35 U.S.C. **112**. *Eli Lilly*, 119 F.3d at 1567, 43 USPQ2d at 1405. Compare *Fonar Corp. v. General Electric Co.*, 107 F.3d 1543, 1549, 41 USPQ2d 1801, 1805 (Fed. Cir. 1997) ("As a general rule, where software constitutes part of a best mode of carrying out an invention, description of such a best mode is satisfied by a disclosure of the functions of the software. This is because, normally, writing code for such software

is within the skill of the art, not requiring undue experimentation, once its functions have been disclosed. * * * Thus, flow charts or source code listings are not a requirement for adequately disclosing the functions of software.").

A lack of adequate written description issue also arises if the knowledge and level of skill in the art would not permit one skilled in the art to immediately envisage the product claimed from the disclosed process. See, e.g., *Fujikawa v. Wattanasin*, 93 F.3d 1559, 1571, 39 USPQ2d 1895, 1905 (Fed. Cir. 1996) (a "laundry list" disclosure of every possible moiety does not constitute a written description of every species in a genus because it would not "reasonably lead" those skilled in the art to any particular species); *In re Ruschig*, 379 F.2d 990, 995, 154 USPQ 118, 123 (CCPA 1967) ("*If* n-propylamine had been used in making the compound instead of n-butylamine, the compound of claim 13 would have resulted. Appellants submit to us, as they did to the board, an imaginary specific example patterned on specific example 6 by which the above butyl compound is made so that we can see what a simple change would have resulted in a specific supporting disclosure being present in the present specification. The trouble is that there is no such disclosure, easy though it is to imagine it.") (emphasis in original); *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1328, 56 USPQ2d 1481, 1487 (Fed. Cir. 2000) ("the specification does not clearly disclose to the skilled artisan that the inventors ... considered the ratio... to be part of their invention .... There is therefore no force to Purdue's argument that the written description requirement was satisfied because the disclosure revealed a broad invention from which the [later-filed] claims carved out a patentable portion").

### B. New or Amended Claims

The proscription against the introduction of new matter in a patent application (35 U.S.C. **132** and **251**) serves to prevent an applicant from adding information that goes beyond the subject matter originally filed. See *In re Rasmussen*, 650 F.2d 1212, 1214, 211 USPQ 323, 326 (CCPA 1981). See MPEP § **2163.06** through § **2163.07** for a more detailed discussion of the written description requirement and its relationship to new matter. The claims as filed in the original specification are part of the disclosure and, therefore, if an application as originally filed contains a claim disclosing material not found in the remainder of the specification, the applicant may amend the specification to include the claimed subject matter. *In re Benno*, 768 F.2d 1340, 226 USPQ 683 (Fed. Cir. 1985). Thus, the written description requirement prevents an applicant from claiming subject matter that was not adequately described in the specification as filed. New or amended claims which introduce elements or limitations which are not supported by the as-filed disclosure violate the written description requirement. See, e.g., *In re Lukach*, 442 F.2d 967, 169 USPQ 795 (CCPA 1971) (subgenus range was not supported by generic disclosure and specific example within the subgenus range); *In re Smith*, 458 F.2d 1389, 1395, 173 USPQ 679, 683 (CCPA 1972) (a subgenus is not necessarily described by a genus encompassing it and a species upon which it reads).

While there is no *in haec verba* requirement, newly added claim limitations must be supported in the specification through express, implicit, or inherent disclosure. An amendment to correct an obvious error does not constitute new matter where one

skilled in the art would not only recognize the existence of the error in the specification, but also recognize the appropriate correction. *In re Oda*, 443 F.2d 1200, 170 USPQ 268 (CCPA 1971). With respect to the correction of sequencing errors in applications disclosing nucleic acid and/or amino acid sequences, it is well known that sequencing errors are a common problem in molecular biology. See, e.g., Peter Richterich, Estimation of Errors in 'Raw' DNA Sequences: A Validation Study, 8 *Genome Research* 251-59 (1998). If an application as filed includes sequence information and references a deposit of the sequenced material made in accordance with the requirements of 37 CFR **1.801** *et seq.*, amendment may be permissible. Deposits made after the application filing date cannot be relied upon to support additions to or correction of information in the application as filed. Corrections of minor errors in the sequence may be possible based on the argument that one of skill in the art would have resequenced the deposited material and would have immediately recognized the minor error. Deposits made after the filing date can only be relied upon to provide support for the correction of sequence information if applicant submits a statement in compliance with 37 CFR **1.804** stating that the biological material which is deposited is a biological material specifically defined in the application as filed.

Under certain circumstances, omission of a limitation can raise an issue regarding whether the inventor had possession of a broader, more generic invention. See, e.g., *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1248, 64 USPQ2d 1344, 1353 (Fed. Cir. 2002) (Claim for a method of inhibiting sprout growth on tubers by treating them with spaced, sequential application of two chemicals was held invalid for lack of adequate written description where the specification indicated that invention was a method of applying a "composition," or mixture, of the two chemicals.); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 45 USPQ2d 1498 (Fed. Cir. 1998) (claims to a sectional sofa comprising, inter alia, a console and a control means were held invalid for failing to satisfy the written description requirement where the claims were broadened by removing the location of the control means); *Johnson Worldwide Associates v. Zebco Corp.*, 175 F.3d 985, 993, 50 USPQ2d 1607, 1613 (Fed. Cir. 1999) (In *Gentry Gallery*, the "court's determination that the patent disclosure did not support a broad meaning for the disputed claim terms was premised on clear statements in the written description that described the location of a claim element--the 'control means' --as 'the only possible location' and that variations were 'outside the stated purpose of the invention.' *Gentry Gallery*, 134 F.3d at 1479, 45 USPQ2d at 1503. *Gentry Gallery*, then, considers the situation where the patent's disclosure makes crystal clear that a particular (i.e., narrow) understanding of a claim term is an 'essential element of [the inventor's] invention.'"); *Tronzo v. Biomet*, 156 F.3d at 1158-59, 47 USPQ2d at 1833 (Fed. Cir. 1998) (claims to generic cup shape were not entitled to filing date of parent application which disclosed "conical cup" in view of the disclosure of the parent application stating the advantages and importance of the conical shape.). A claim that omits an element which applicant describes as an essential or critical feature of the invention originally disclosed does not comply with the written description requirement. See *Gentry Gallery*, 134 F.3d at 1480, 45 USPQ2d at 1503; *In re Sus*, 306 F.2d 494, 504, 134 USPQ 301, 309 (CCPA 1962) ("[O]ne skilled in this art would not be taught by the written description of the invention in the specification that any 'aryl or substituted aryl radical' would be suitable for the purposes of the invention but rather that only certain aryl radicals and certain

specifically substituted aryl radicals [i.e., aryl azides] would be suitable for such purposes.") (emphasis in original). A claim which omits matter disclosed to be essential to the invention as described in the specification or in other statements of record may also be subject to rejection under 35 U.S.C. **112**, para. 1, as not enabling, or under 35 U.S.C. **112**, para. 2. See *In re Mayhew*, 527 F.2d 1229, 188 USPQ 356 (CCPA 1976); *In re Venezia*, 530 F.2d 956, 189 USPQ 149 (CCPA 1976); and *In re Collier*, 397 F.2d 1003, 158 USPQ 266 (CCPA 1968). See also MPEP § **2172.01**.

The fundamental factual inquiry is whether the specification conveys with reasonable clarity to those skilled in the art that, as of the filing date sought, applicant was in possession of the invention as now claimed. See, e.g., *Vas-Cath, Inc.*, 935 F.2d at 1563-64, 19 USPQ2d at 1117.

## II. METHODOLOGY FOR DETERMINING ADEQUACY OF WRITTEN DESCRIP-TION

### A. Read and Analyze the Specification for Compliance with 35 U.S.C. 112, para. 1

Office personnel should adhere to the following procedures when reviewing patent applications for compliance with the written description requirement of 35 U.S.C. **112**, para. 1. The examiner has the initial burden, after a thorough reading and evaluation of the content of the application, of presenting evidence or reasons why a person skilled in the art would not recognize that the written description of the invention provides support for the claims. There is a strong presumption that an adequate written description of the claimed invention is present in the specification as filed, *Wertheim*, 541 F.2d at 262, 191 USPQ at 96; however, with respect to newly added or amended claims, applicant should show support in the original disclosure for the new or amended claims. See MPEP § **714.02** and § **2163.06** ("Applicant should * * * specifically point out the support for any amendments made to the disclosure."); and MPEP § **2163.04** ("If applicant amends the claims and points out where and/or how the originally filed disclosure supports the amendment(s), and the examiner finds that the disclosure does not reasonably convey that the inventor had possession of the subject matter of the amendment at the time of the filing of the application, the examiner has the initial burden of presenting evidence or reasoning to explain why persons skilled in the art would not recognize in the disclosure a description of the invention defined by the claims."). Consequently, rejection of an original claim for lack of written description should be rare. The inquiry into whether the description requirement is met is a question of fact that must be determined on a case-by-case basis. See *In re Smith*, 458 F.2d 1389, 1395, 173 USPQ 679, 683 (CCPA 1972) ("Precisely how close [to the claimed invention] the description must come to comply with Sec. 112 must be left to case-by-case development."); *In re Wertheim*, 541 F.2d at 262, 191 USPQ at 96 (inquiry is primarily factual and depends on the nature of the invention and the amount of knowledge imparted to those skilled in the art by the disclosure).

#### 1. For Each Claim, Determine What the Claim as a Whole Covers

Claim construction is an essential part of the examination process. Each claim must be separately analyzed and given its broadest reasonable interpretation in light of and consistent with the written description. See, e.g., *In re Morris*, 127 F.3d 1048,

1053-54, 44 USPQ2d 1023, 1027 (Fed. Cir. 1997). The entire claim must be considered, including the preamble language and the transitional phrase. "Preamble language" is that language in a claim appearing before the transitional phase, e.g., before "comprising," "consisting essentially of," or "consisting of." The transitional term "comprising" (and other comparable terms, e.g., "containing," and "including") is "open-ended" -it covers the expressly recited subject matter, alone or in combination with unrecited subject matter. See, e.g., *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501, 42 USPQ2d 1608, 1613 (Fed. Cir. 1997) ("'Comprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim."); *Ex parte Davis*, 80 USPQ 448, 450 (Bd. App. 1948) ("comprising" leaves the "claim open for the inclusion of unspecified ingredients even in major amounts"). See also MPEP § 2111.03. "By using the term 'consisting essentially of,' the drafter signals that the invention necessarily includes the listed ingredients and is open to unlisted ingredients that do not materially affect the basic and novel properties of the invention. A 'consisting essentially of' claim occupies a middle ground between closed claims that are written in a 'consisting of' format and fully open claims that are drafted in a 'comprising' format." *PPG Industries v. Guardian Industries*, 156 F.3d 1351, 1354, 48 USPQ2d 1351, 1353-54 (Fed. Cir. 1998). For the purposes of searching for and applying prior art under 35 U.S.C. **102** and **103**, absent a clear indication in the specification or claims of what the basic and novel characteristics actually are, "consisting essentially of" will be construed as equivalent to "comprising." See, e.g., *PPG*, 156 F.3d at 1355, 48 USPQ2d at 1355 ("PPG could have defined the scope of the phrase 'consisting essentially of' for purposes of its patent by making clear in its specification what it regarded as constituting a material change in the basic and novel characteristics of the invention."). See also *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1239-1240, 68 USPQ2d 1280, 1283-84 (Fed. Cir. 2003); *In re Janakirama-Rao*, 317 F.2d 951, 954, 137 USPQ 893, 895-96 (CCPA 1963). If an applicant contends that additional steps or materials in the prior art are excluded by the recitation of "consisting essentially of," applicant has the burden of showing that the introduction of additional steps or components would materially change the characteristics of applicant's invention. *In re De Lajarte*, 337 F.2d 870, 143 USPQ 256 (CCPA 1964). See also MPEP § **2111.03**. The claim as a whole, including all limitations found in the preamble (see *Pac-Tec Inc. v. Amerace Corp.*, 903 F.2d 796, 801, 14 USPQ2d 1871, 1876 (Fed. Cir. 1990) (determining that preamble language that constitutes a structural limitation is actually part of the claimed invention)), the transitional phrase, and the body of the claim, must be sufficiently supported to satisfy the written description requirement. An applicant shows possession of the claimed invention by describing the claimed invention with all of its limitations. *Lockwood*, 107 F.3d at 1572, 41 USPQ2d at 1966.

The examiner should evaluate each claim to determine if sufficient structures, acts, or functions are recited to make clear the scope and meaning of the claim, including the weight to be given the preamble. See, e.g., *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 620, 34 USPQ2d 1816, 1820 (Fed. Cir. 1995) ("[A] claim preamble has the import that the claim as a whole suggests for it."); *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257, 9 USPQ2d 1962, 1966 (Fed. Cir. 1989) (The determination of whether preamble recitations are structural limitations can be resolved only on

review of the entirety of the application "to gain an understanding of what the inventors actually invented and intended to encompass by the claim."). The absence of definitions or details for well-established terms or procedures should not be the basis of a rejection under 35 U.S.C. 112, para. 1, for lack of adequate written description. Limitations may not, however, be imported into the claims from the specification.

2. **Review the Entire Application to Understand How Applicant Provides Support for the Claimed Invention Including Each Element and/or Step**

Prior to determining whether the disclosure satisfies the written description requirement for the claimed subject matter, the examiner should review the claims and the entire specification, including the specific embodiments, figures, and sequence listings, to understand how applicant provides support for the various features of the claimed invention. An element may be critical where those of skill in the art would require it to determine that applicant was in possession of the invention. Compare *Rasmussen*, 650 F.2d at 1215, 211 USPQ at 327 ("one skilled in the art who read Rasmussen's specification would understand that it is unimportant how the layers are adhered, so long as they are adhered") (emphasis in original), with *Amgen, Inc. v. Chugai Pharmaceutical Co., Ltd.*, 927 F.2d 1200, 1206, 18 USPQ2d 1016, 1021 (Fed. Cir. 1991) ("it is well established in our law that conception of a chemical compound requires that the inventor be able to define it so as to distinguish it from other materials, and to describe how to obtain it"). The analysis of whether the specification complies with the written description requirement calls for the examiner to compare the scope of the claim with the scope of the description to determine whether applicant has demonstrated possession of the claimed invention. Such a review is conducted from the standpoint of one of skill in the art at the time the application was filed (see, e.g., *Wang Labs. v. Toshiba Corp.*, 993 F.2d 858, 865, 26 USPQ2d 1767, 1774 (Fed. Cir. 1993)) and should include a determination of the field of the invention and the level of skill and knowledge in the art. Generally, there is an inverse correlation between the level of skill and knowledge in the art and the specificity of disclosure necessary to satisfy the written description requirement. Information which is well known in the art need not be described in detail in the specification. See, e.g., *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1379-80, 231 USPQ 81, 90 (Fed. Cir. 1986).

3. **Determine Whether There is Sufficient Written Description to Inform a Skilled Artisan That Applicant was in Possession of the Claimed Invention as a Whole at the Time the Application Was Filed**

(a) Original claims

Possession may be shown in many ways. For example, possession may be shown by describing an actual reduction to practice of the claimed invention. Possession may also be shown by a clear depiction of the invention in detailed drawings or in structural chemical formulas which permit a person skilled in the art to clearly recognize that applicant had possession of the claimed invention. An adequate written description of the invention may be shown by any description of sufficient, relevant, identifying characteristics so long as a person skilled in the art would recognize that the inventor had possession of the claimed invention. See, e.g.,