IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


LEADER TECHNOLOGIES,     )
INC.,                    )
                         )
          Plaintiff,     )
                         ) C.A. No. 08-862-JJF-LPS
v.                       )
                         )
FACEBOOK, INC., a        )
Delaware corporation,    )
                         )
          Defendant.     )



                         July 14, 2009
                         2:30 p.m.
                         Teleconference



BEFORE:   THE HONORABLE LEONARD P. STARK
          United States District Court Magistrate


APPEARANCES:


          POTTER, ANDERSON & CORROON, LLP
          BY:   PHILIP A. ROVNER, ESQ.

                 -and-

          KING & SPAULDING
          BY:   PAUL ANDRE, ESQ.


                    Counsel for Plaintiff

Dockets.Justia.c

1    APPEARANCES CONTINUED:

2

3

4            BLANK ROME, LLP
             BY:  STEVEN L. CAPONI, ESQ.
5
                      -and-
6
             WHITE & CASE
7            BY:  HEIDI L. KEEFE, ESQ.

8                          Counsel for Defendant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1            THE COURT:  Good afternoon,

2    counsel.  This is Judge Stark.

3            Let me know who's on the line,

4    please.

5            MR. CAPONI:  Good afternoon, Your

6    Honor.  This is Eric Caponi from Blank Rome from

7    Facebook.  And with me is Heidi Keefe from White

8    & Case.

9            MS. KEEFE:  Good afternoon, Your

10   Honor.

11           THE COURT:  Good afternoon.

12           MR. ROVNER:  And Your Honor, this

13   is Phil Rovner from Potter, Anderson & Corroon

14   for the plaintiff.  And with me on the line is

15   Paul Andre from King & Spaulding in California.

16           MR. ANDRE:  Good afternoon, Your

17   Honor.

18           THE COURT:  Good afternoon.  You

19   folks are for Facebook; correct?

20           MR. ANDRE:  Your Honor, yeah.

21   We're for Leader Technologies, plaintiff.

22           THE COURT:  I'm sorry.  Okay.  Got

23   you.

24           MS. KEEFE:  And Mr. Caponi and

1    myself are for Facebook.

2                    THE COURT:  Okay.  Forgive me.

3                    Okay.  So for the record, this is

4    the Leader Technologies versus Facebook.  It's

5    our Civil Action Number 08-862-JJF.  And the

6    reason for the call today is that both parties

7    have some discovery requests, certain discovery

8    disputes.

9                    And I reviewed the letters that

10   were submitted in connection with both parties'

11   dispute.  I want to begin first and hear just

12   briefly from each side with respect to

13   Facebook's complaint regarding essentially the

14   response to Facebook's Interrogatory Number 10.

15                   And let me hear briefly first from

16   Facebook on this.

17                   MS. KEEFE:  Thank you, Your Honor.

18   Again, this is Heidi Keefe.

19                   Our complaint is actually, I

20   think, relatively small.  What we're looking for

21   here is to simply have Leader's response to

22   Interrogatory 10 be complete.  This is an

23   interrogatory in that it is -- it addresses a

24   very limited universe of documents and limited

1    information.

2             We are asking Leader to give us

3    their support for their contention that the

4    earlier filed, shorter application supports the

5    later issued claims of the patent at issue in

6    this case.

7             All of the information needed to

8    answer that interrogatory is within the four

9    corners of the specification of the patent in

10   question.  When Leader came back with its

11   response, its response was, Well, the first

12   response was simply everything.  And we said,

13   That's not good enough.  We need to understand

14   limitation by limitation where it is.

15            Their supplemented response, while

16   it went in the right direction, we will give

17   them that, it was circumvented with all of this

18   language like it's just exemplary.  You know,

19   this is non-limiting.

20            It's just some of the claims and

21   some of the examples that we find.  And we're

22   simply asking, in order to understand what their

23   position is and move this issue forward, to have

24   a final and complete answer.

1                    Now, we understand that if,

2        through the course of discovery, something comes

3        out that completely changes their mind under the

4        Federal Rules, they could come back and attempt

5        to supplement their responses.

6                    But we're asking for a complete

7        response as they know it at this time.  And we

8        simply don't have that yet.

9                    THE COURT:  All right.  I

10       understand what you're asking for.

11                   But as I understand it, they've

12       indicated to you that they believe the priority

13       date is the date of filing of the provisional

14       filing.  So you know what their position is, so

15       you could determine what the prior art is based

16       on what they've already told you.

17                   Help me out on why it is you're

18       entitled to or what's prejudicing you from them

19       reserving a right to potentially come up with

20       additional arguments or contentions based on

21       what you yourself describe as a limited universe

22       of documents.

23                   Why can't they reserve the right

24       to do that?

1          MS. KEEFE:  Well, I think -- I

2    think it goes to a number of things, Your Honor.

3    I think, first, what we're talking about in

4    terms of the priority date is that the burden is

5    on Leader to prove the priority date.

6          What we did was we said we don't

7    believe that you're entitled to that priority

8    date.  And, you know, we have to come forward

9    with reasons that we don't believe that -- we

10   told them that the word tracking, for example,

11   which is in every one of the claims at issue in

12   this case didn't even appear in the original

13   priority document.

14         The burden then shifts to Leader

15   to establish why it is entitled to that

16   priority -- to that priority documentation.

17         We don't feel that they've done

18   that yet.  And if all of their support, if

19   everything that they have is what they have

20   right now, we'd like to be able to move

21   potentially for summary judgment resolving this

22   issue, so that the universe of prior art is

23   firmly established and narrowed down.

24         But the way that they crafted

1     their answers saying that it's simply exemplary,

2     they simply don't know or they may have

3     different ideas later doesn't allow us to do

4     that, and doesn't allow us to know what the

5     universe of prior art is.

6               The burden is on them at this

7     point.  We'd like a final answer.

8               If their final answer is as it

9     stands right now and they have no other

10    information and they confirm that, then we'd

11    like to move for summary judgment on this issue

12    that they're not entitled to that prior date.

13              That's what we're leading to so

14    that we can have as an absolute what the

15    universe of prior art will be in this case.

16            THE COURT:  All right.  Let me

17    hear from Leader, please.

18            MR. ANDRE:  This is Paul Andre,

19    Your Honor, for Leader.  I think Your Honor

20    understands the argument quite well that we put

21    in our letter brief.  The patent is entitled to

22    the provisional date absent a showing by clear

23    and convincing evidence that the claims are not

24    enabled by the provisional application.

1                  There's been no clear and

2      convincing evidence put forward at all, actually

3      no evidence at all.  So our position is that we

4      can rely on the entirety of the application.  We

5      tried to provide an exemplar just to avoid this

6      situation with the Court.

7                  And it's not our burden at this

8      point to provide additional all-inclusive

9      responses.

10                 THE COURT:  Okay.  Fine.

11                 Ms. Keefe, anything else to add?

12                 MS. KEEFE:  I would just say, Your

13     Honor, we actually have provided evidence the

14     word track, for example, which is in every

15     claim, doesn't appear anywhere in the priority

16     application that they're claiming full support

17     of.  And I disagree with Mr. Andre's statement

18     of the law, but that's in our briefing as well.

19                 So...

20                 THE COURT:  Okay.  Fine.

21                 I'm prepared to rule on Facebook's

22     request here for further response to

23     Interrogatory Number 10.

24                 And at this time, I'm denying

1     Facebook's request. I think, given the status

2     of the case, that Leader's response at this time

3     is adequate. It's been recognized by Facebook

4     that it may be that Leader will have to or will

5     be in a position to supplement its response over

6     time.

7           And I think there's nothing that I

8     see that precludes such a supplement from being,

9     based on the documents that Leader is already

10     aware of and has identified and is relying on at

11     this time, or if discovery proves that there's

12     additional evidence on which it can rely that it

13     thinks is responsive to Interrogatory Number 10,

14     Leader may do that as well.

15           So I'm denying Facebook's request

16     at this time.

17           Let's now turn to the issues that

18     Leader has raised with respect to Facebook. And

19     I do want to go through these quickly, but one

20     by one.

21           And since Leader is the moving

22     party on these, let me hear first from Leader on

23     the first issue, which goes to the production of

24     documents from previous litigation.

1          MR. ANDRE:  Your Honor, this is

2    Paul Andre.  Once again what we're asking for is

3    relevant documents.  Not all the documents, just

4    the relevant documents from two particular

5    litigations that we've identified, the Connect U

6    case and the Cross Atlanta case.

7          The Connect U case is a trade

8    secret case in which case there has been about a

9    hundred pages of testimony that's been posted on

10   the web.  And we've looked at that testimony and

11   find it relevant to our case.

12         It discusses the development of

13   the Facebook website, the design features, both

14   past and present of their website, indication of

15   key witnesses and documents and staff, certain

16   evidence like laptops, et cetera.  So we know

17   that's relevant.

18         And Cross Atlanta we believe would

19   be relevant as well because it relates to

20   certain applications on the website regarding --

21   you know, it would -- that would be involved in

22   our case as well.

23         THE COURT:  What about the

24   suggestion that Judge Farnan has already

1    reviewed this request for relief and set forth

2    an alternative procedure in that you're not

3    fully complying with that procedure for getting

4    this type of information?

5                    MR. ANDRE:  The alternative

6    procedure, Your Honor, was coming to Your Honor

7    with these requests.  I actually brought this up

8    at the end of the hearing saying that, you know,

9    we still have one issue that was not related to

10   the source codes, but these documents in

11   particular.

12                    He specifically said that we could

13   bring that up with Your Honor with a new

14   procedure that he's instituting for all new

15   discovery disputes.  And his order was very

16   specific as well about the course of non-case

17   dispositive motions and referred them to Your

18   Honor.

19                    So I think what Judge Farnan was

20   talking about and the way he explicitly said

21   that was we could bring this up during this

22   procedure.

23                    THE COURT:  Okay.  Ms. Keefe or

24   Mr. Caponi, you want to respond?

1          MS. KEEFE:  Your Honor, obviously,

2     we disagree.  We think that what happened --

3     this is actually -- all of these issues are

4     disputes that the parties have been having since

5     the very, very beginning of this case in terms

6     of what is the extent of discovery that's

7     allowed by the infringement contentions that

8     Leader has provided thus far.

9          And we've been in front of Judge

10    Farnan twice on the same issue.  And what Judge

11    Farnan did was he said, Okay, guys.  I hear both

12    of you and I am going to come up with a

13    compromise.  At which point he instituted this

14    procedure whereby we would give them a list of

15    the source code modules.

16          They would pick a reasonable

17    number.  They would be reviewed.

18          And based on, you know, that

19    review, we would be able to narrow the case down

20    through the infringement contentions to what was

21    truly relevant.

22          Mr. Andre did, in fact, raise the

23    issue of the related or unrelated litigation at

24    the end of the hearing.  And what I said to

1  Judge Farnan was, Your Honor, this relates

2  exactly in the same way that the technology

3  documents do.  We can't possibly know what's

4  related and what is not until we know what the

5  technology is.

6         At that point, the judge

7  reiterated that he was denying all of the

8  motions and that we were to go forward on this

9  new procedure.

10         I then raised the fact that we had

11  a completely different issue, which was a broad

12  spectrum response and should we bring that

13  before Judge Farnan or should we bring that

14  before Your Honor, because he was deferring

15  future issues to you.  And he said future issues

16  will go in front of Judge Stark.

17         He did not say we can readdress

18  all of the issues that had come before.  Those

19  had been denied in favor of the staggered

20  approach that he put in place.

21         And that staggered approach makes

22  sense because it's all about figuring out what

23  is the relevant part of Facebook's website

24  that's at issue.  And, therefore, what parts of

1    other litigations may or may not be relevant.

2               THE COURT:  Okay.  Mr. Andre.

3               MR. ANDRE:  Your Honor, I disagree

4    completely with Ms. Keefe's characterization of

5    what Judge Farnan ruled on and what he stated.

6               He actually stated he denied all

7    motions as moot.  It says it on Page 34 of the

8    transcript.  And then he -- basically he wants

9    to defer all future discovery to Your Honor to

10    handle these.

11               The fact of the matter is Facebook

12    has been complaining all along that they don't

13    understand the scope of the case.  So what we've

14    done now, we've identified specifically, I don't

15    know if you call them source code modules or

16    data files, we've identified ones that we were

17    interested in looking at at this point.

18               So they know what we are looking

19    at to be relevant any way, so they know what

20    documents they can produce with the previous

21    litigation.

22               It's a little bit different,

23    because I know with the Connect U case, one of

24    our positions is they copied the White paper we

1  published.  And they were able to design and

2  develop their website based on that White paper.

3              There's nothing unclear about

4  that.  I've looked at this testimony and read it

5  myself, and it's very clear that they talk about

6  how they designed and developed the website and

7  how they were able to code the entire thing in

8  two weeks.  Or less than two weeks in some

9  cases.

10             So we know that's relevant to our

11  willful case, regardless of Ms. Keefe saying, We

12  don't know what the technology is.  You know,

13  we've been hearing that song and dance since day

14  one.

15             So the information that's in these

16  previous litigations and like an olympic

17  universe of information we're entitled to.

18  There's absolutely no reason not to give it up

19  at this time.

20             THE COURT:  Ms. Keefe, do you want

21  to add anything regarding why it wouldn't be

22  relevant, assuming I reach this issue on the

23  merits?

24             MS. KEEFE:  Your Honor, this is

1    absolutely not relevant at this point.  They've

2    actually -- they have established absolutely no

3    way of knowing that -- sorry.  Let me back up.

4              They have not established, in any

5    way, that we had access to any White papers or

6    documentation, and that they have and we've

7    answered interrogatories that have absolutely

8    said that we did not.  And so it is not relevant

9    at this point.

10             And the only thing that they've

11   otherwise been saying is that these litigations

12   are somehow related to the technology of the

13   Facebook website.  And that's exactly what this

14   staggered approach is designed to do is to try

15   to figure out what is that technology that

16   they're using.  The fact that they've identified

17   some modules that they want to look at does not,

18   by definition, make them relevant.

19             In fact, they haven't even viewed

20   those modules yet.  They're scheduled to do so

21   later that week.

22             We would ask that the Court

23   continue with the parties on the course set by

24   Judge Farnan, and that they be forced to look at

1 the source code, come back and tell us what's

2 really at issue in this case. And we'll go

3 forward from there.

4     THE COURT: All right. And,

5 Mr. Andre, whether it's up to me independently

6 or whether Judge Farnan has already decided that

7 this is the way to proceed, it sounds like a

8 reasonable way of proceeding, why should I not

9 hold you to going and reviewing some of this

10 source code and other materials and then seeing

11 if you can make a showing as to the relevance of

12 the other litigation and maybe the other stuff

13 you're seeking here?

14     MR. ANDRE: Your Honor, it's

15 something that we can already show the relevance

16 of at least Connect U, because that has been

17 produced publicly or a hundred pages of it has

18 been.

19     We need the technical documents

20 when we get to that part of the brief to

21 actually understand the source code. If you

22 read source code in a vacuum, you can do it, to

23 some degree, but you need the supporting

24 documents, the design notes, and various other

1     technical support for that source code to get

2     full understanding of what's going on there.

3              So, you know, this is nothing more

4     than Facebook from day one they're trying to run

5     out the clock on us.  We have a November

6     discovery cutoff in this case.

7              And they've been acting like they

8     don't know what this case is about.  We've given

9     detailed infringement contentions based on

10    public information.  We identified the

11    functionality.

12              We gave them screen shots.  We

13    gave them API calls.

14              It is something that, regardless

15    of what we say, they come back and plead

16    ignorance.  We don't know what they're talking

17    about now.

18              They are saying that is not

19    relevant.  Well, I know for a fact the Connect U

20    testimony is relevant.

21              I can tell you right now what I'd

22    like to use in that testimony in my case in

23    chief, just what I told you about, the amount of

24    time it took them to write the code for the

1    Facebook website.

2              So there's other information there

3    as well.  Obviously, the design features and

4    some other identification of documents of

5    witnesses that we would like to get.  So I know

6    that's relevant.

7              And Ms. Keefe saying that, you

8    know, we don't know what the case is about.  All

9    one has to do is read the patent and the claims

10   and, as Judge Farnan said on multiple occasions,

11   this is not the type of claims that people

12   cannot understand.  It's fundamental

13   architecture of their website that we believe is

14   infringing and there's no reason to withhold

15   these documents whatsoever.

16             They have already produced them

17   once in the previous litigations. They can do it

18   again.

19             THE COURT:  I guess by necessity,

20   we've overlapped now into the second request

21   that Leader makes which is more specifically

22   with respect to the technology for the Facebook

23   website.

24             Is there anything else to add on

1     that request that we haven't already addressed?

2     Mr. Andre, first.

3             MR. ANDRE:  Your Honor, none other

4     than there's no reason not to produce it.  The

5     only reason they put forward is they said Judge

6     Farnan didn't order it.

7             They have been dodging their

8     discovery obligations since the beginning of

9     this case.  Just because a judge doesn't order

10     it, that doesn't mean you don't produce it

11     pursuant to the Federal Rules.

12             So our position there is that we

13     identified the module or the data files,

14     whatever you want to call them.  We want the

15     supporting documents for those so we can make

16     heads or tails of the source code.  And there's

17     absolutely no reason not to produce them.

18             THE COURT:  And when is it that

19     you're scheduled to go look at something?

20             MR. ANDRE:  We have our expert

21     witness coming in this week to look at it on

22     Thursday.

23             THE COURT:  And why should I not

24     put all of this on hold, you know, my decision,

1   you know, for a week or so and get you all back

2   after you had the chance to have your expert

3   review those materials that are already arranged

4   to be seen and see what the dispute looks like,

5   you know, a week from now?

6           MR. ANDRE:  Well, the expert

7   already informed us that he'll need technical

8   documents to actually conclude, you know, make

9   his evaluation of the source code.

10          THE COURT:  So are you saying he's

11  not going to be able to get anything productive

12  done on Thursday if I --

13          MR. ANDRE:  No.  We'll get some

14  productive information done.  There's no doubt

15  about it.

16          He's going to be able to go in,

17  see how the source code is set out because the

18  list they gave us was -- it was supposed to be a

19  map of the source code.  They didn't give us a

20  map.

21          They gave us a list of 400 titles,

22  some of them as ridiculous as this is Letter R

23  or the Letter N or entitled documents.  So

24  they're not descriptive in nature and they were

1    not a map at all.

2                    But we decided we're going to work

3    with this, because we know what their approach

4    is, try to push discovery out as long as

5    possible and run out the clock on us.

6                    What the expert is going to do is

7    go in and see how the source code is structured.

8    He's going to do a lot of information from that

9    first review.

10                    He's not going to be able to get a

11    conclusive call one way or the other on the

12    source code until he actually sees the support

13    documents.

14                    THE COURT:  Ms. Keefe, I want you

15    to have a chance to address anything further

16    with respect to the technology documents, but

17    also articulate for me what, if anything, I

18    would be gaining particularly in terms of

19    clarity of this issue if I were to defer ruling

20    for, say, a week until after the expert for

21    Leader has had a chance to do whatever he or she

22    is going to do on Thursday.

23                    MS. KEEFE:  Absolutely.  Thank

24    you, Your Honor.

1          I think, first off, this goes back

2    to the notion that this is -- we're in a new

3    kind of place with this discovery.  We're in a

4    staggered form.

5          Yet their argument has always

6    been -- we understand that ours has always been

7    that we don't.  Judge Farnan specifically

8    accepted both parties' position, and in fact, he

9    actually said, you know, "Okay.  Leader's given

10   enough at this stage of the case, but not enough

11   to let them go full bore into Facebook."

12          And that's why he created

13   something that would protect both sides, their

14   interest at looking at some information, but our

15   interest in protecting what's most important to

16   us, which is our code.  And the fact that the

17   site and the company are essentially massive,

18   and therefore, we need to be able to make sure

19   that only what's relevant is what's going on.

20          The judge then said what -- you

21   know what I think -- this is another quote.

22   "What I think we need to do to try and make this

23   a little bit informed and to let it evolve a

24   little bit, I think I would like Facebook to

1    produce that category list" -- which we did.

2    "Then I'd like to see how reasonable Leader is

3    in pulling that list.  Does that make sense?"

4                    So we gave them a list.  They

5    picked their list.

6                    We thought it was a little bigger

7    than it should be, but we denied to -- not to

8    raise that fight.  Now, we're producing that

9    material.  Then they -- they haven't even seen

10   the code and yet they're telling me that they

11   can't understand it.

12                   I think that they will find that

13   the code actually is quite understandable.  I am

14   not a computer scientist and I'm able to

15   understand Facebook's code by looking at it.

16                   This isn't a company that makes

17   software that they then sell, so there aren't

18   things like user manuals going around.  Facebook

19   crafts little keys.

20                   It goes up on the -- as the

21   website and it changes over time quite a bit.

22   So I think Your Honor's approach in going back

23   to what Judge Farnan had originally intended is

24   a good one, because I think they'll find when

1    they actually do review the code that they will

2    understand what they're looking at.  And they'll

3    then be able to narrow their request as everyone

4    intended this process to do in order to only get

5    at that which they really need and not the

6    things that they don't.

7             Regardless of what Mr. Andre says,

8    we do not still actually have a good grasp on

9    what they are accusing of infringement.  And

10    that's why this process was set in place.

11             So, please, Your Honor, don't put

12    the cart before the horse.  Have them review the

13    code.  They're set to do so this week.

14             And then Mr. Andre and myself can

15    talk about what they saw or didn't see, why

16    something made sense or didn't make sense.

17    Judge Farnan also anticipated this happening and

18    he said that if, in fact, once we went through

19    process number one, we couldn't agree on what

20    was happening, he talked about the possibility

21    of bringing experts in from both sides to tell

22    him why they would want more than has been

23    already given, or an expert on my side to say

24    why they don't need what's going on.

1          So that was another part of Judge

2    Farnan's entire approach to this stage-in-tiers

3    discovery.  We're not trying to stall things.

4          If the other side, if Leader

5    believes that we need more time, we're

6    absolutely happy to go to the Court and get

7    discovery extended.  This is the position and

8    this is what Judge Farnan put in place.  And

9    we'd like to see that through.

10          THE COURT:  Okay.  Let's move on

11    to the final topic, which is Leader's demand or

12    request that there be additional substantive

13    responses to the Request for Admission.

14          Mr. Andre, would you address that

15    for me?

16          MR. ANDRE:  Yes, Your Honor.

17    Essentially what's happening, we've filed a very

18    specific set of Request for Admissions.

19          We're not asking him to admit

20    infringement or anything of that nature, but we

21    did ask them to make certain admissions

22    regarding their technology.  And instead of

23    giving any substantive responses, they went

24    through and made objections that were so far off

1 the reality that it would be impossible to craft

2 our RFA that would be answerable according to

3 Facebook.  So they objected to all the RFA's and

4 then denied it based on those objections.

5     I mean, just to give Your Honor

6 some examples, if you look at the Request for

7 Admission 22 where it says admit that Facebook's

8 website stores information about users in one or

9 more databases.  The objection was that was

10 vague and ambiguous.

11     They said the word stores

12 information and users are vague and ambiguous,

13 and therefore, they denied it based on that.

14     Another one that was a good

15 example is RFA 28, admits that Facebook's

16 website is hosted from servers located in the

17 territory of the United States.  Objection to

18 the word hosted and denied the RFA based on

19 that.

20     You know, counsel can play these

21 games of not wanting to admit any RFA.  And

22 admitting RFA's or not are discovery tools that

23 lawyers don't like to use or to answer.  But

24 there has to be some substantive responses other

1    than denials based on objections.

2            THE COURT:  And what about the

3    proposals that they offered to try to get you

4    more information, either they would answer an

5    interrogatory giving their explanation for their

6    denials or you would serve new RFA's?

7            MR. ANDRE:  Well, the new RFA's

8    would -- they wouldn't commit to the fact.  If

9    we gave RFA's with specific definitions, they

10   asked -- when they asked us to define

11   essentially every word in the RFA.  If we were

12   to give those specific RFA's, would they even

13   answer those?

14           They'd object to them according to

15   them.  We couldn't get that locked in, one way

16   or the other.  They said you try to refile them

17   and make them clear for us.  Once again, a stall

18   tactic.

19           It was -- obviously, Ms. Keefe

20   would love to ask for extension of discovery and

21   lose our trial date in June of next year.

22           The other alternative about

23   interrogatories, I believe it was conditioned

24   upon the fact that if that's the case, that

1    would use up all of our remaining

2    interrogatories.  We have a limited number of

3    interrogatories in the case.

4              THE COURT:  What if we amended it

5    so that it wouldn't count towards your

6    interrogatory limit, or alternatively, required

7    them to respond very quickly to a new set of

8    RFA's.

9              Would either of those approaches

10   solve the problem?

11             MR. ANDRE:  That would be fine,

12   Your Honor, if they responded substantively and

13   not with just objections.  Again, that would be

14   fine with us.

15             THE COURT:  All right.  Ms. Keefe.

16             MS. KEEFE:  Well, I mean, Your

17   Honor, I can't -- I'm not even sure where to

18   start.  Let me back up.

19             As far as the interrogatory

20   proposition goes, our proposition to them was

21   that we would answer an interrogatory, so long

22   as -- and we wouldn't count it as each one being

23   a separate interrogatory for each RFA that had

24   to be responded to so long as they would give us

1    the same courtesy. If, after we served RFA's on

2    them, a single interrogatory would count.

3                So it wasn't at all that the rogs

4    would be used up. It was exactly the opposite.

5                It was that both parties would

6    agree that the rogs would not be used up and

7    they would treat interrogatories to define why

8    the RFA was answered that way in a similar

9    fashion. So we'd actually be extremely content

10   if Your Honor said, All right. You're allowed

11   to serve an interrogatory asking for the reasons

12   for the denial. We will answer that

13   interrogatory and not count it against their

14   total.

15               So long as when we serve RFA's on

16   them and then serve a similar single

17   interrogatory, it doesn't count against us.

18   That's the proposition and we are still willing

19   to do that.

20               THE COURT: Let's stop there,

21   because my understanding is Mr. Andre would be

22   content with that. Am I right, Mr. Andre?

23               MR. ANDRE: Your Honor, that would

24   be fine as long as, you know, the -- one of our

1     concerns is that, you know, we sent a very

2     limited world of RFA's to them and there is no

3     limit on RFA's.

4           Even though we requested it in our

5     Rule 16 conference, there are no -- in our

6     initial conference with the counsel. Then we

7     stipulated to the fact that there would be no

8     limits on RFA's.

9           So we are a little bit concerned

10    by the fact that we may get 250 RFA's from them.

11    It would be so unduly burdensome for us to have

12    to answer them on a interrogatory basis, that

13    that would be our only concern.

14          Maybe if counsel would agree to

15    limit the number of RFA's in the case in total,

16    that would be a way to alleviate that concern.

17          THE COURT: All right. I'm not

18    going to require any limitation on RFA's.

19          At this point, I find I've got at

20    least a full-time job just dealing with the

21    discovery disputes that are in front of me. I'm

22    not going to worry about ones that might come

23    down the pike.

24          But if they do, obviously you all

1  know how to raise a discovery dispute with me.

2  With respect to the RFA's, I am going to rule by

3  ordering that Facebook provide in the form of

4  interrogatory response.  I guess actually I need

5  to rule, Mr. Andre, that Leader serve an

6  interrogatory that won't count towards your

7  limit whereby you ask for Facebook's basis for

8  the responses to the RFA's.

9          If at some point Facebook wants to

10  serve the same interrogatory for the same

11  limited purpose on Leader, that interrogatory

12  also will not count towards whatever

13  interrogatory limit is otherwise in place.  That

14  takes care of that issue.

15          And let me give you my ruling with

16  respect to the first two issues that Leader has

17  raised.  And there I'm going to deny without

18  prejudice to -- I'm going to deny Leader's

19  request at this time for any further -- for any

20  production of documents from other litigation or

21  production of additional technical documents.

22          I want to let the situation that's

23  in place play out, but only for a very limited

24  additional time.  And specifically let me tell

1    you what I'm looking for.

2            My understanding is that Leader's

3    expert is going to be reviewing source code this

4    Thursday the 16th.  After that review is

5    complete, the parties are to meet and confer and

6    discuss, at a minimum, these two discovery

7    requests that Leader presented to the Court

8    today.

9            If you're not able to resolve

10   amicably those two disputes, then by the end of

11   the day next Thursday the 23rd, I want a single

12   letter on behalf of both parties not to exceed a

13   total of five pages that sets out for me what

14   remains in dispute with respect to those two

15   requests and what each side's proposal is for

16   how I should resolve them.

17           And I will get back to you after I

18   get that letter as to whether I need further

19   information from you and whether I need to

20   schedule a call or if I'm able to just resolve

21   it based on the letter.

22           I don't want any reargument at

23   this time, but I do want to make sure everybody

24   understands what I have ruled here.

1            Any questions, Mr. Andre?

2            MR. ANDRE:  No, Your Honor.  Thank

3    you.

4            THE COURT:  Okay.  And Ms. Keefe?

5            MS. KEEFE:  No.  Thank you very

6    much, Your Honor.

7            THE COURT:  All right.  Thank you

8    all very much, counsel.

9            Bye.

10            (Teleconference was concluded at

11    3:09 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

1  State of Delaware )
                    )
2  New Castle County )

3

4

5              CERTIFICATE OF REPORTER

6

7          I, Heather M. Triozzi, Registered

8  Professional Reporter, Certified Shorthand Reporter,

9  and Notary Public, do hereby certify that the

10 foregoing record, Pages 1 to 36 inclusive, is a true

11 and accurate transcript of my stenographic notes

12 taken on July 14, 2009, in the above-captioned

13 matter.

14

15         IN WITNESS WHEREOF, I have hereunto set my

16 hand and seal this 24th day of July, 2009, at

17 Wilmington.

18

19

20      _____

21      Heather M. Triozzi, RPR, CSR
        Cert. No. 184-PS
22

23

24