IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LEADER TECHNOLOGIES, INC., a Delaware corporation<br><br>Plaintiff and Counterdefendant,<br><br>v.<br><br>FACEBOOK, INC., a Delaware corporation<br><br>Defendant and Counterclaimant. | CIVIL ACTION<br><br>NO. 1:08-cv-00862-JJF<br><br>**FILED UNDER SEAL – PURSUANT TO PROTECTIVE ORDER** |

### DECLARATION OF STEPHEN GRAY

Dated: August 10, 2009

| | |
|---|---|
| OF COUNSEL:<br><br>Heidi L. Keefe (*pro hac vice*)<br>Mark R. Weinstein (*pro hac vice*)<br>Craig W. Clark (*pro hac vice*)<br>Melissa H. Keyes (*pro hac vice*)<br>**WHITE & CASE LLP**<br>3000 El Camino Real<br>5 Palo Alto Square, 9th Floor<br>Palo Alto, CA 94306 | Thomas P. Preston (DE Bar #2548)<br>Steven L. Caponi (DE Bar #3484)<br>**BLANK ROME LLP**<br>1201 N. Market Street<br>Wilmington, DE 19801<br>302-425-6400<br>Fax: 302-425-6464<br><br>*Attorneys for Defendant and Counterclaimant Facebook, Inc.* |

I, Stephen Gray, declare:

1. I am a founder and principal of the consulting firm Gray & Yorg, LLC based in San Diego, California. I have more than thirty (30) years of experience in the computer and communications industries. My background includes systems and software architecture, design and development. I regularly consult in the areas of computer systems and software architecture, design and software engineering. I have served as an expert technical consultant and/or witness in more than a dozen patent infringement cases involving computer or software-related patents, including performing infringement analyses.

2. I am informed that plaintiff in this action, Leader Technologies, Inc., has accused Facebook of infringing certain claims of U.S. Patent No. 7,139,761. I previously submitted a declaration in this matter, dated April 30, 2009, in which I evaluated the plaintiffs' written contentions regarding how the Facebook website allegedly infringed the '761 patent. In that Declaration, I concluded that the plaintiff had not provided a coherent description of how Facebook's alleged infringement of the '761 patent takes place, nor had the plaintiff identified with any specificity the features, functions or steps of the Facebook website accused of infringement.

3. I have been asked to review a letter dated July 23, 2009 addressed to the Honorable Leonard P. Stark submitted by counsel for the plaintiff and the accompanying "Declaration of Guivanni Vigna in Support of Leader's Letter Brief to Compel the Production of Documents and Source Code" (which I will refer to as the "Vigna Declaration"), also dated July 23, 2009. In preparing this declaration, I have also reviewed a subset of Facebook source code that, I am informed, was the same subset made available at Mr. Vigna's review that took place on July 16, 2009. I have also reviewed a document entitled "Manifest, 2009-7-16 Inspection," which lists all of the source code files that were made available to Mr. Vigna. I also reviewed some additional Facebook source code that I understand Facebook offered to make available for inspection, but which has not yet been reviewed by the plaintiff.

1

4. I have been asked to evaluate the plaintiff's position as articulated in its July 23 letter and the Vigna Declaration that it needs the entire Facebook source code and technical documents in order to perform an infringement analysis.[1] In my opinion, the plaintiff has not explained why it needs to review the complete source code, as set forth below.

5. It is common for source code in a particular file to refer to or rely on information or functionality located in another file. For example, the source code in a particular file may invoke (or "call") a procedure that is defined in a separate source code file. That separate source code file may, in turn, refer to data or other procedures that are described in other files. To use one analogy, academic or technical documents will often "cite" or rely on other academic or technical documents, which may themselves cite to or rely on other documents, and so forth. In computer science, this kind of externally-defined information in source code is loosely referred to as a "dependency."

6. The gist of the Vigna Declaration is that, because some of the source code he reviewed refers to information contained in files that were not provided for his review, he must have access to and review the complete source code.

---

[1] I was not asked to address the portions of the Vigna Declaration relating to the need for a hierarchical map of the Facebook source code, as I am informed that Facebook had already made such a listing available to the plaintiff.

[REDACTED]

Vigna Declaration ¶ 7.

7. Mr. Vigna's conclusion that he must "review the complete source code" is based on the false assumption that a reviewer must be able to resolve and trace all possible dependencies in the source code in order to understand how it functions, therefore necessitating access to the entire source code. I have performed source code review in a number of litigations in which only a portion of a party's source code was made available to the other side. This is common in software patent infringement cases because the asserted patent claims will often implicate only a portion of the overall functionality of the accused software. The plaintiff in such a case can evaluate its claim by simply asking for the portions of the source code responsible for the functionality implicated by the patent claims. To the extent unresolved dependencies exist in the files provided, those gaps usually can be filled with a small number of additional files.

8. [REDACTED]

9. [REDACTED]





10. Mr. Vigna also claims that he needs access to certain technical documents "used to describe the source code and the functionality of the Facebook website." Vigna Declaration, ¶ 10. The majority of these requests are extremely vague or have no apparent relationship to a claim of infringement of the '761 patent. For example, Mr. Vigna claims that he needs access to Facebook's internal developer "blog" to understand how the source code works. Vigna Declaration, ¶ 16. Mr. Vigna also claims without explanation that he needs "developers guides which are given to employees to write code for the Facebook website," Vigna Declaration ¶ 11. To the extent such documents exist, I do not see how they would be reliably helpful in ascertaining how the website operates. The most accurate technical document describing the operation of the Facebook website, or any other piece of software, is its source code.

███████████████

11. Accordingly, it is my opinion that Mr. Vigna's conclusions regarding the purported need to have access to all of Facebook's source code and technical documents are invalid.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 10, 2009 in Solana Beach, California.

*[signature: Stephen Gray]*
Stephen Gray