

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

**Philip A. Rovner**
Partner
provner@potteranderson.com
(302) 984-6140  Direct Phone
(302) 658-1192  Fax

September 2, 2009

**BY E-FILE**

The Honorable Leonard P. Stark
Magistrate Judge
U.S. District Court for the District of Delaware
U.S. Courthouse
844 N. King Street
Wilmington, DE 19801-3556

> Re: Leader Technologies, Inc. v. Facebook, Inc.,
> C. A. No. 08-862-JJF(LPS)

Dear Judge Stark:

Pursuant to your August 20, 2009 Order, Plaintiff Leader Technologies, Inc. ("Leader") submits this letter to the Court, in response to the September 1, 2009 letter from Defendant Facebook, Inc. ("Facebook"). As evidenced from Leader's opening letter to the Court and attachments, Leader provided detailed infringement contentions in March, exhausting all of the publicly available information it has to show infringement. It is now September, and Facebook continues to raise the same contrived arguments fraught with inconsistencies that it cannot identify what is being accused of infringement.

**1.  Leader Relied Upon All The Public Information Available To Prove Infringement.**

It is undisputed that Leader has exhausted all of the public information available to prove Facebook's infringement. Indeed, nowhere in Facebook's letter does it contest this fact. Rather, Facebook's arguments purposefully rely on the notion that Leader must provide ***non public*** information regarding the Facebook Website in order to have infringement contentions that Facebook believes would be satisfactory. For example, Facebook argues that Leader should specifically identify back end data such as "metadata" and "context information" within Facebook's system. *See* Facebook's September 1st Letter ("Facebook's Opp.") at 4 (D.I. 101). Identification of such nonpublic information is not possible without access to Facebook's entire source code and production of the corresponding technical documents, all of which Facebook continues to vehemently conceal from Leader.

More importantly, Leader did identify the API calls that demonstrate that the infringing technology exists on the back end. The back end functionality which is at issue can only be

identified through the public information that Leader has relied upon, namely the Facebook Website itself and the published API calls. It is unreasonable for Facebook to condition its production on Leader's ability to identify the very information Facebook continues to hide.

Once Facebook finally produces this important technical information, Leader will directly incorporate this information into its infringement contentions. This has always been Leader's position and that has not changed. Facebook's claim that Leader should have already supplemented its infringement contentions at this point with the limited source code that has been made available, an argument brought up for the first time in its letter filed yesterday, simply ignores the central fact that Leader is seeking Facebook's technical information in order to do just that.

2. **Facebook Ignores the Information and Evidence of Its Infringement Leader Has Provided.**

Facebook received detailed infringement contentions from Leader over half a year ago, providing how the independent and dependent asserted claims are infringed. *See* Leader's Opening Letter, Exhibit A (D.I. 98). This included the Claim Chart, Narrative Explanation, Screenshots, API Calls, and Second Narrative Explanation. In an effort to overcome the evidence provided, Facebook makes inconsistent arguments and deliberately ignores the information Leader provided. For example, while claiming that Leader's claim chart "parrots the claim language," (Facebook's Opp. at 2) (D.I. 101), it simultaneously argues that it has no idea what an "initial context" is as it relates to the "first context" claim element of Claim 1.[1] (Facebook's Opp. at 3.) (D.I. 101). Such inconsistencies demonstrate the infirmity of Facebook's position. Moreover, it ignores the fact that Leader has provided the details appropriate for a party who has not received any confidential technical information from Facebook regarding the accused system, the Facebook Website.

   a. **Facebook Ignores the Information Provided by April 6, 2009 Letter**

Defiantly, Facebook's letter refuses to acknowledge the essential information provided in Leader's April 6, 2009 letter, which was direct evidence of Leader's efforts to work in good faith with Facebook on discovery issues. *See* Leader's Opening Letter, Exhibit D (D.I. 98). Instead, Facebook limits its argument only to the information Leader provided in March. As Leader has informed Facebook on several occasions, Leader agreed to incorporate the information provided in its April 6th letter into Leader's supplemental interrogatory response after it has received sufficient confidential technical information.

---

[1] Another example of Facebook's inconsistent positions includes the statement that while "Leader ignores [the dynamically updating the stored metadata based on the change] claim element," Leader also "provides explanation as to how" Facebook satisfies this element. Facebook Opp. at 4 (D.I. 101).

A cursory glance at the April 6th letter demonstrates it addresses all of Facebook's previous arguments. For example, Facebook argues that Leader's Claim Chart lumped Claim 1 into a single block. The letter clearly splits the explanation into the two components of the claim, a context component and a tracking component. The letter then goes on to individually explain how each component of Claim 1 is infringed, identifying and linking specific screenshots to demonstrate Facebook's infringement. Facebook cannot disregard Leader's letter and use it as a pretext to avoid its discovery obligations.

### b. Facebook Cannot Claim it is Unable to Comprehend Screenshots of its Own Website

Facebook's deliberate ignorance of the detailed information Leader provided regarding Facebook's infringement is apparent, as Facebook claims that Leader's screenshots of its own website are "vague." (D.I. 101 at n. 2). It is wholly incomprehensible that Facebook cannot comprehend screenshots of its own website. Each of Leader's screenshots was systematically created with a Facebook feature in mind. The features displayed in each screenshot are instantly recognizable to any Facebook user. Facebook's argument that a single screenshot can depict a dozen functionalities, intentionally omits the context in which each of the screenshots was provided. Each of the screenshots were clearly grouped and purposely linked to narrative explanation in order to demonstrate the precise feature at issue. *See* Leader's Opening Letter and Exhibits A, B and D (D.I. 98), providing a step-by-step example of Facebook's Events feature.

It is shocking for Facebook to claim that it cannot understand Facebook's own features unless each of these visually descriptive screenshots is further annotated. Indeed, three months ago, without any annotations to any screenshot, Facebook was somehow able to comprehend that its Groups, Photos, and Events features were at issue. *See* Facebook's Opposition to Leader's Motion to Compel Responses to Leader's First Set of Requests for Production and First Set of Interrogatories at 5 (D.I. 48). In raising the question in briefing regarding whether Leader's case is "limited to Facebook's Groups, Photos and Events features," Facebook is implicitly admitting that it understands what is at issue based on the information provided by Leader. If Facebook did not comprehend what was accused of infringement, it would not have identified them in such a manner. Facebook has no defensible basis for claiming that it does not understand what is accused of infringement or that Leader does not have "*any* infringement theory."

### c. Facebook Cannot Claim that its Own API Calls Are Irrelevant to Showing Infringement.

Contrary to Facebook's claims, Leader's citations to Facebook's own API calls are relevant to demonstrating infringement. API calls demonstrate the technology that exists on the back end without exposing the user to the actual source code. API calls are used both internally and externally, so software developers can build applications for Facebook without having access to Facebook's source code. It is also a convenient way for software developers, both external and internal, to develop applications, while also providing a security mechanism whereby Facebook does not have to disclose its source code to multiple software developers. In other words, there is no need to modify the back end source code every time you want to add functionality to the Facebook Website. The API calls are therefore directly relevant to identifying what Facebook's back end does without disclosing Facebook's confidential source code.

Nearly all software developers utilize published API calls in their own source code. It seems that Facebook is now suggesting that it does not utilize any of its published API calls in developing its own applications for the Facebook Website. Facebook's statement is either a serious misunderstanding of its own source code or else Facebook actually utilizes API calls in a way that is uniquely different from all other software developers. If this is the case, it is unclear how Facebook interacts with third parties regarding potential new applications or features for the Facebook Website.[2] In any case, API calls are pertinent to showing that the Facebook Website contains infringing features, especially without direct access to the source code modules which provides those features.

Furthermore, Facebook's criticism of Leader's use of API calls detracts from the real issue. Specifically, because Facebook has continued to conceal its technical documents for over six months, Leader is regulated to using Facebook's published API calls in order to demonstrate the non-public functions of Facebook's source code.

### d. Facebook Cannot Ignore The Claim Elements Relevant to What Occurs On The Back End of The Facebook Website.

Facebook is alleging that Leader should be able to show every potential infringing act based on the front end, *i.e.*, the user facing features. This is simply not true. The patent covers a data management tool that automatically organizes information based on people or groups. The asserted claims of the '761 Patent are directed to the activity of components in a computer-implemented network-based system, such as the "context component" and "tracking component." Those components are contained on the back end of the Facebook Website. The front end which the user interacts with merely proves that those components exist.[3] While Facebook's infringing activities can be shown to exist by analyzing the front end, components are contained on the back end. Thus, Leader must have access to the entire source code to identify the components which implement the infringing functionality.

For example, the infringing act of "dynamically updating the stored metadata" is a feature related directly to what is occurring on the back end of the Facebook Website. Whereas Leader knows based on basic computer software technology and what a user can see on the front end that this metadata is being updated as claimed in Leader's patent, Leader cannot, however, point to the actual confidential technical evidence of how it happens because that information is embedded in Facebook's source code and the confidential technical information that Leader is seeking. Dynamically updating the stored metadata is a back end process that is not visible to the user.

Facebook's Grey Declaration misses the key issue here. Facebook appears to be using it in an attempt to box Leader into a theory of indirect infringement based on a user's actions. However, as set forth in Leader's infringement contentions provided through the April 6, 2009

---

[2] Yet again, such information regarding Facebook's business has yet to be produced, as Facebook has refused to produce any confidential technical information.
[3] Given the short time that Leader had to respond to Facebook's opposition, Leader refers the Court to Leader's Answering Brief in Opposition to Facebook's Motion Compelling Leader's Response to Interrogatory No. 1 at 5-6, addressing this argument previously. (D.I. 45)

letter, Facebook's infringement is based on the fact that the Facebook Website has a context component and a tracking component. Thus, the user's actions are immaterial because if the context component and tracking component which provide the claimed functionality exist, Facebook is liable for infringement. Whether a user actually uses the functionality is not relevant because the '761 Patent covers a computer-implemented network-based system that contains a context component and a tracking component.

3. **Relevant Case Law Supports Discovery of Facebook's Source Code and Technical Information.**

Facebook's citations to case law simply reiterate the same inapposite citations it used in its Opposition to Leader's Motion to Compel. None of the citations support Facebook's contention that Leader failed to provide adequate infringement contentions. Rather, the patentees in those cases uniformly failed to provide virtually *any basis* for infringement. *See New York Univ. v. E. Piphany, Inc.*, No. 05Civ.1929, 2006 WL 559573, at *4 (S.D.N.Y. Mar. 6, 2006) (denying patentee's motion only as to those products where the patentee's infringement contentions consisted solely of references to an infringement chart for an unrelated product); *see also ConnecTel, LLC v. Cisco Sys. Inc.*, 391 F. Supp. 2d 526, 528 (E.D. Tex. 2005) (the patentee produced preliminary infringement contentions so sparse and vague that they "[did] not refer in their text to a single structure, process, algorithm, feature or function of any accused product"); *Rates Tech. Inc. v. Mediatrix Telcom, Inc.*, No. CV 05-2755, 2007 WL 2581777, at *3 (E.D.N.Y. Sept. 5, 2007) (plaintiff failed to provide infringement contentions or claim construction more than one year into litigation). These cases are inapposite to Leader's claims because, as discussed above and in Leader's Opening Letter (D.I. 98), Leader provided Facebook with a definition of infringement contentions and examples of infringement from the Facebook Website, as well as a definition of the accused product. *See* Leader's Reply in Support of its Motion to Compel Responses to Plaintiff's First Set of Requests for Production of and First Set of Interrogatories at 5-7 (D.I. 52). Unlike the patentees in those cases, Leader provided the Claim Chart, Narrative Explanation, Screenshots, API Calls, and the Second Narrative Explanation.

Ultimately, at issue is a 60 megabyte production of source code, not a terabyte as originally represented by Facebook's counsel to the Court, and a number of technical documents which Facebook previously characterized as "limited" documentation. Facebook's continued claim that it still cannot grasp which features are at issue demonstrates that unless ordered otherwise by the Court, Facebook will invariably ignore the overwhelming amount of detailed information that Leader has provided of its infringement. Facebook has been exploiting this demonstrated form of deliberate ignorance to circumvent its discovery obligations for over six months. Accordingly, Facebook cannot be allowed to protract its discovery obligations any further.

Respectfully,

*/s/ Philip A. Rovner*

Philip A. Rovner (#3215)
provner@potteranderson.com

PAR /mes/931653
cc: Steven L. Caponi, Esq. – By E-File and E-mail
　　Heidi L. Keefe, Esq. – By –E-mail
　　Paul J. Andre, Esq. – By E-mail