

Potter
Anderson
& Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

**BY E-FILE**

**Philip A. Rovner**
Partner
provner@potteranderson.com
(302) 984-6140    Direct Phone
(302) 658-1192    Fax

September 3, 2009

The Honorable Leonard P. Stark
Magistrate Judge
U.S. District Court for the District of Delaware
U.S. Courthouse
844 N. King Street
Wilmington, DE 19801-3556

      Re:    Leader Technologies, Inc. v. Facebook, Inc.,
             C. A. No. 08-862-JJF(LPS)

Dear Judge Stark:

      Plaintiff Leader Technologies, Inc. ("Leader") submits this letter in response to the letter, submitted by Defendant Facebook, Inc. ("Facebook") who seeks an order to compelling Leader to further respond to Facebook's Interrogatory No. 9: (1) by identifying which of Leader's products practice the invention claimed in the patent-in-suit; and (2) by providing a claim chart that maps each such product to every limitation of every claim of Leader's patent.

      Wholly apart from the fact that Facebook failed to meet and confer regarding the issues presented in its letter regarding Leader's Response to Interrogatory No. 9, discussed below, it is undisputed that the first portion of Facebook's request is moot because Leader already identified its product that practices the invention five months ago with Leader's Supplemental Response to Interrogatory No. 9. *See* Leader's Supplemental Response to Interrogatory No. 9 stating in part that "Leader2Leader powered by Digital Leaderboard is covered by the '761 Patent."

      The second portion of Facebook's Interrogatory No. 9, seeking a claim chart identifying "where each limitation of each claim is found within such product(s) or service(s)" is improper and unduly burdensome. It speaks volumes that there is no case law that Facebook cites to support its demands that a patentee bear the burden of providing detailed claim charts of the patentee's products, demonstrating where "each limitation of each claim is found" in its product. The impetus for Facebook's demand seems to be that it will be unable to resist the temptation to violate one of the fundamental tenets of patent law, namely an attempt to compare Leader's product to the accused product.

      A.    **Facebook's Unsupported Demand that Leader Provide a Claim Chart Is Improper and Unduly Burdensome.**

      While much of Facebook's motion is devoted to arguments consisting of general statements of patent law, notably absent from any of Facebook's arguments is *legal* support for what it is ultimately demanding, namely claim charts of Leader's products of *all* the claims, whether they are asserted or not. As a preliminary matter, the claims that are not asserted in this

case are simply not relevant, which was one of the grounds for Leader's objection that this request is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, there is simply no case law that makes it proper to require Leader to prepare detailed claim charts of its products covered by its patent, as Leader's product, while it might be marginally relevant pursuant to the Federal Rules of Evidence to some peripheral factual issues involved in the case, it is not the product at issue in this patent case. No legal support exists for Facebook's position because it is overly burdensome to require Leader to map the thousands of pages of technical design documents of Leader2Leader that Leader produced over half a year ago to each limitation of every claim of the '761 Patent. Moreover, it raises a significant risk that an infringer will attempt to do a product-to-product comparison to confuse the issues before the Court and jury.

Facebook's bare statements of law do not support its groundless demand. For example, Facebook cites to *Amgen, Inc. v. Hoffman-La Roche Ltd.*, 581 F.Supp. 2d 160, 211-212 (D. Mass. 2008) and *Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, Case No. 04-1371-JJF, 2008 WL 5210843, at *1 (D. Del. 2008), but does not describe how these cases overcome the unduly burdensome request it is making for claim charts. Indeed, the emphasis in determining irreparable harm does not appear to turn on whether the plaintiff and defendant are competitors. *See Callaway Golf Co. v. Acushnet Co.*, 585 F.Supp.2d 600, 619 (D.Del 2008)(citing cases emphasizing that plaintiff and defendant were competitors.) More importantly, nowhere in the case law is there a requirement that a patentee detail where each limitation of the patent is found in a commercial embodiment of the patent via a ***claim chart***.

Next, Facebook cites to *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-1539 (Fed. Cir. 1983) and *Edward Lowe Indus., Inc. v. Oil-Dri Corp. of Am.*, No 94 C 7568, 1995 WL 399712, *1-2 (N.D. Ill. 1995). However, rather than explaining why these cases support its demand, Facebook again seems to be merely arguing the obvious: that secondary considerations are used to rebut invalidity challenges. Leader has no issue with such a statement. But nowhere in the case law or any rules does it give Facebook the right to demand the production of a claim chart on an embodiment of the patent.

Finally, Facebook again overreaches the case law in positing that Leader must prove its patent covers the Leader2Leader product. To prove lost profits, all Leader must do is prove causation between Facebook's infringement and loss of profit. *See Wechsler v. Macke International Trade, Inc.*, 486 F.3d 1286 (Fed. Cir. 2007) citing *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999). There is no requirement that Leader prove its commercial embodiment is covered by its patent via a claim chart.

Furthermore, Facebook's statement that, "the information sought by Interrogatory No. 9 is entirely within plaintiff's possession" is either a brazen lie or another example of Facebook's pattern of deliberately ignoring the very information Leader has already provided in order to obtain the result it desires.

### B. Facebook has Ignored its Obligations to Meet and Confer

From the outset, Leader has made good faith efforts to accurately understand all of Facebook's stated concerns in order to resolve this issue without the Court's involvement. Facebook's actions in directly utilizing the court's involvement without a good faith attempt to resolve its issue with Leader demonstrates its disregard of its obligation to meet and confer under D. Del. L.R. 7.1.1.

Contrary to Facebook's representation, Facebook's attempts to meet and confer regarding Interrogatory No. 9 since Leader supplemented its interrogatory response has never been around providing claim charts. This explains Facebook's omission of *any* citations to actual letters or emails in support of its letter.

After Leader responded with appropriate objections to Facebook's Interrogatory No. 9, the parties met and conferred on April 10, 2009. During this call, Leader requested that Facebook provide relevant case law in support of its unfounded claim that Leader is required to provide a claim chart of its products to its patent. Because Facebook was unable to provide any case law in support of its ridiculous demand, Leader stated that it will only supplement Interrogatory No. 9 in regards to the identification of Leader products that practice the invention. *See* Facebook's April 14th Email and Leader's April 16th Letter, Exhibits A and B, attached hereto.

As promised, on April 17, 2009, Leader supplemented its response to Interrogatory No. 9 in the manner expressly stated during the parties' meet and confer Thereafter, at no time did Facebook make a demand for a claim chart. To Leader's surprise, four months later, Facebook once again contested Leader's supplementation of Interrogatory No. 9, but its challenge was limited to the substance of Leader's response. Rather than a claim chart, Facebook's August 24th email conspicuously couples its Interrogatory No. 3 with Interrogatory No. 9 by asking whether the position Leader has taken on Interrogatory No. 3 "extends to LTI's response to Facebook Interrogatory No. 9." Exhibit C. Noticeably, Facebook's Interrogatory No. 3 never asked Leader for a claim chart. Facebook's email also did not renew its previous demands of a claim chart for Interrogatory No. 9. Instead, Facebook confines its request to a clarification of the products Leader stated in its supplemental response to Interrogatory No. 9 due to Facebook's perceived inconsistencies of Leader's documents. Specifically, Facebook did not believe that "only Leader2Leader practices the claimed invention." Curiously absent from Facebook's correspondence is any mention the need of a claim chart again until Facebook's current letter to the Court.

Thus, Facebook failed to meet and confer on the subject matter of its letter, disregarding its obligation to attempt to resolve discovery disputes in good faith before bringing them to the attention of the Court.

Accordingly, without any support for its outlandish demand and without any attempt to comply with its obligations to meet and confer with opposing counsel before bringing this issue to the Court, Leader respectfully requests the Court to deny Facebook's request.

Respectfully,

*/s/ Philip A. Rovner*

Philip A. Rovner (#3215)
provner@potteranderson.com

PAR /mes/931730
cc: Steven L. Caponi, Esq. – By E-File and E-mail
    Heidi L. Keefe, Esq. – By –E-mail
    Paul J. Andre, Esq. – By E-mail