

**Potter Anderson & Corroon LLP**

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

Philip A. Rovner
Partner
provner@potteranderson.com
(302) 984-6140   Direct Phone
(302) 658-1192   Fax

August 27, 2009

**PUBLIC VERSION September 3, 2009**

**BY E-FILE**

The Honorable Leonard P. Stark
Magistrate Judge
U.S. District Court for the District of Delaware
U.S. Courthouse
844 N. King Street
Wilmington, DE 19801-3556

> Re:   Leader Technologies, Inc. v. Facebook, Inc.,
>         C. A. No. 08-862-JJF(LPS)

Dear Judge Stark:

Pursuant to your August 20, 2009 Order, Plaintiff Leader Technologies, Inc. ("Leader") submits this opening letter to the Court, describing the detailed infringement contentions it has provided to Defendant Facebook, Inc. ("Facebook"). From the outset of this case, Leader has asserted that the Facebook Website infringes U.S. Patent No. 7,139,761 ("the '761 Patent"). Demonstrating Facebook's infringement of Leader's patent, Leader provided Facebook with infringement contentions, utilizing *all* the publicly available sources of information regarding the Facebook Website, namely Facebook's published API[1] calls and screen shots of the Facebook Website itself. In addition, Leader has described how the Facebook Website infringes every element of the asserted claims with great detail.

Leader's infringement contentions served over six months ago were more than sufficient. Nonetheless, Leader has, in a good faith effort to get Facebook to engage in the discovery process without requiring the Court's intervention, provided Facebook with additional specific examples of its infringement of the '761 Patent. Facebook's response to all of Leader's efforts has been to delay discovery, repeating the meritless mantra that it does not know what is accused of infringement. Facebook's abuse of the discovery process is apparent -- six months after receiving Leader's infringement contentions, Facebook has yet to produce a single confidential technical document about the Facebook Website in its 100,000 page document production.

---

[1] An API (Application Programming Interface) is an interface that defines the ways by which an application program may request services from a system, like the Facebook Website. It is often referred to as an API call or method.

1.      **Leader Disclosed Its Infringement Contentions Months Ago.**

On March 20, 2009, Leader served detailed infringement contentions, attached hereto as Exhibit A. It included an 18 page claim chart that detailed how the Facebook Website infringes each asserted claim of the '761 Patent. This claim chart included:



These detailed infringement contentions utilized all the publicly available sources of information regarding the Facebook Website to prove Facebook's infringement and demonstrated how the Facebook Website infringed the elements of the asserted claims.

Since Facebook continued to claim that it did not know what was accused of infringement, Leader's lead trial counsel met and conferred with Facebook's counsel. To avoid any further discovery delays and in an effort to address their purported concerns, Leader provided a 4½ page letter on April 6, 2009, attached hereto as Exhibit D. This letter provided an additional narrative explanation of how the elements of Claim 1 were infringed, identifying and linking specific screenshots to demonstrate Facebook's infringement. This explanation also mapped precise screenshots and API calls to each element of Claim 1.

2.      **Leader Relied Upon All The Public Information Available To Prove Infringement.**

Facebook has more than ample information regarding Leader's infringement contentions. Leader provided details regarding how the Facebook Website infringed each element of the asserted claims. Moreover, Leader exhausted all the public information available to prove Facebook's infringement.

By way of example, Leader sets forth below the evidence of Facebook's infringement it provided to support its infringement of the "tracking component" element, found in all of the claims. The "tracking component" element is as follows:

> a computer-implemented tracking component of the network-based system for tracking a change of the user from the first context to a second context of the network-based system and dynamically updating the stored metadata based on the change, wherein the user accesses the data from the second context.

In connection with this element, Leader provided the following evidence of Facebook's infringement:

> The second element of Claim 1 is directed to a "tracking component." Once again, anybody who has ever been on the Facebook Website recognizes that they are being tracked when they navigate from one context to another. The novel

---

[2] Four representative sample screenshots are attached hereto as Exhibit B.
[3] Attached hereto as Exhibit C is a representative sample of an API call.

"tracking component" claimed in the '761 Patent is clearly found in Facebook's Website as demonstrated by the API calls and screenshots already provided to you. For example, the Facebook Website contains a tracking component for tracking a change of a user from one context to another and dynamically updating the metadata based on the change when the user accesses the data from a different context as shown in the screenshots bates labeled as LTI000840-LTI000848, LTI000849, LTI000852- LTI000855, LTI000873, LTI000879, LTI000902 and LTI000912. Each of these screenshots illustrate that when a user accesses data that was entered or uploaded in a different context, certain information concerning those actions are collected by Facebook and associated with the accessed data. Moreover, the API call Auth.getSession is further non-limiting evidence that the Facebook Website maintains this information about its users.

*See* Ex. D at 2.



This representative example shows the details that Leader provided regarding Facebook's infringement. By describing how Facebook infringes every element of the asserted claims, along with screen shots and API calls, Leader has availed itself of all publicly available sources of information to prove Facebook's infringement. Furthermore, by linking every element of each claim to a meticulous step-by-step analysis, Leader has provided Facebook with ample detail of Leader's infringement contentions.

### a.    Screenshots

Screenshots of the Facebook Website were created to unambiguously illustrate Facebook's infringement of the asserted claims of the '761 Patent. Leader presented these

screenshots to Facebook over half a year ago on March 20, 2009. Each of these screenshots was individually created to punctuate Leader's narrative of Facebook's infringement of elements of the asserted claims. The creation of over 100 individualized screenshots was a meticulous process that required numerous hours of careful inspection of the user-facing aspects of the Facebook Website.

A cursory glance at any one of the screenshots instantly illustrates the precise feature of the Facebook Website that infringes the asserted claim element. For example, Leader cited to screenshots bearing bates numbers LTI000858 - LTI000861, which specifically linked the Facebook Website feature in the screenshots to the first element of Claim 1. *See* Ex. B. Apparent on the first page of Exhibit B, the screenshot is of the Facebook Website feature called "Events." In fact, "Facebook Events" appears at the top of the page and the word, "Events," is stated ten times in this one screenshot.

Contrary to Facebook's claim,[4] Leader mapped this feature to specific elements of the asserted claims of the '761 Patent months ago, something Leader had done for all the elements of the asserted claims. For example, Leader specifically linked the "Events" screenshots (LTI000858-LTI000861) of Facebook's Events feature to the "context component" claim element. *See* Ex. B. In narrative form, Leader stated each of these screenshots "illustrate that a user is given the ability to enter or upload data to the Facebook Website [and therefore] contains a context component which captures the user-defined data." *See* Ex. D at 2. A review of these individual screenshots of the "Events" feature shows a step by step visual representation of how to upload data to the Facebook Website.

### b.    API Calls

Facebook publishes certain API calls or methods in order to allow a third party programmer to determine the programming vocabulary and calling conventions it should employ in order to connect their own applications to the Facebook Website. To the extent that Facebook has made its API methods public, Leader provided them to demonstrate Facebook's infringement.

For example, Leader cited to the Facebook API method "Users.setStatus" to demonstrate how the Facebook Website infringes the "context component" element of the asserted claims. ██████████████████████ According to Facebook's documentation, the Users.setStatus API is suppose to update a user's Facebook status. *See* Ex. C, LTI000696-7. A "Facebook status" is the text a user inputs into the Facebook Website to inform others of his/her status. Leader cited this API to explain that Facebook's utilization of such an API further reinforces Leader's contention that the Facebook Website captures context information associated with the user-defined data. ████████ Leader's utilization of Facebook's APIs further exemplifies Leader's effort to utilize every piece of public information available to illustrate Facebook's infringement.

As described above, Leader has provided more than ample evidence of Facebook's infringement of the asserted claims through the use of a claim chart, narrative explanations, screenshots and API calls. It has exhausted all the information that is publicly available and should be permitted to obtain the confidential technical information of the Facebook Website.

---

[4] *See* Ex. E at 2.

Respectfully,

*/s/ Philip A. Rovner*

Philip A. Rovner (#3215)
provner@potteranderson.com

PAR /mes/930993
cc: Steven L. Caponi, Esq. – By E-File and E-mail
    Heidi L. Keefe, Esq. – By –E-mail
    Paul J. Andre, Esq. – By E-mail

Public Version: September 3, 2009

# EXHIBIT A

THIS EXHIBIT HAS BEEN
REDACTED IN ITS ENTIRETY

# EXHIBIT B



**facebook**    Home   Profile   Friends   Inbox                    Terry Smith   Settings   Logout   Search

Browse Events  |  Export Events

### Events

Help

Upcoming Events | Friends' Events | Past Events | Birthdays

| Search for Events | | + Create an Event |

You do not have any upcoming events.
You can browse for events to attend or create your own.

Advertise

**Tattoo Your Profile**

Add killer tattoos to your
backgrounds and place them
on your wall or profile pages.
It's easy and free.

Everyone
can e-file
IRS taxes
FREE at
TaxACT.com

LT1 000859

Facebook | Create an Event - Microsoft Internet Explorer

File   Edit   View   Favorites   Tools   Help

Address   http://www.facebook.com/home.php?#/editevent.php

## Create an Event

Step 1: Event Info

| Event Name: (required) | |
| Tagline: | |
| Networks: | Global - Available to All of Facebook |
| Host: (required) | |
| Event Type: (required) | Select Category:   Select Type: |
| Description: | |
| Start Time: | March   10   3   10   pm |
| End Time: | March   10   6   10   pm |
| Location: (required) | |
| Street: | |
| City/Town: | |
| Phone: | |
| Email: | |

Create Event      Cancel

Advertise

Elanit R Hasas State Farm

Phone 770 333 3331. Your home for all of your insurance and financial services needs: Auto, Fire, Life, Health, Commercial Insurance.

File   Edit   View   Favorites   Tools   Help

Back   |   Search   Favorites

Address   http://www.facebook.com/editevent.php?curealsid=5602336205I&create&new&m=1

**facebook**   Home   Profile   Friends   Inbox                    Terry Smith   Settings   Logout   Search

Advertise

**Murder Wrinkles**

More than half of Hollywood uses this trick. Try it free.

**CAPELLA**
THE UNIVERSITY ONLINE

Graduate
programs &
support to fit
your busy life.

Customize Morris Smith's 20th Birthday

Step 1: Event Info   |   Step 2: Customize   |   Finish and View

Your event has been created.

Current Picture

**Upload Picture**

You can upload a JPG, GIF or PNG file.

[                    ]   Browse...

☐ I certify that I have the right to distribute this picture, and that it does not violate the Terms of Use.

Upload Picture

File size limit 4 MB. If your upload does not work, try a smaller picture.

Options

☑ Let guests know they can bring friends to the event.
☐ Show the guest list.
☐ Hide guests who are not attending.
☑ Enable the wall.
☑ Enable photos.
  ⦿ Allow all members to upload photos.
  ◯ Only allow admins to upload photos.
☑ Enable videos.
  ⦿ Allow all members to upload videos.
  ◯ Only allow admins to upload videos.
☑ Enable links.
  ⦿ Allow all members to post links.
  ◯ Only allow admins to post links.

Access:
  ⦿ This event is open.
  People can add themselves to the guest list and invite others to the event. Anyone can see the event information and content.
  ◯ This event is closed.
  Only people you invite will be on the guest list. People can request invitations. Anyone can see the event

**facebook**     Home   Profile   Friends   Inbox          Terry Smith   Settings   Logout   Search

## Create an Event

Step 1: Event Info

| | |
|---|---|
| **Event Name:** (required) | Moris Smith's 20th Birthday |
| **Tagline:** | Birthday Dinner Party |
| | eg: "One night only" or "Because she'll turn 21 once." |
| **Network:** | Global - Available to all of Facebook. |
| **Host:** | Terry Smith |
| **Event Type:** (required) | Party ☑   Birthday Party |
| **Description:** | Moris Smith is turning 20 years old. Let's through him a birthday party |
| **Start Time:** | March   10   at   8   : 00   pm |
| **End Time:** | March   10   at   4   : 00   pm |
| **Location:** (required) | Applebee's |
| **Street:** | 300 Saratoga Avenue |
| **City/Town:** | Cupertino, CA |
| **Phone:** | (408)-777-7777 |
| **Email:** | ts78@gmail.com |

Create Event   Cancel

Advertise

Elanit R Hisas State Farm

Phone 770 333 3331. Your home for all of your insurance and financial services needs. Auto, Fire, Life, Health, Commercial Insurance.

To shed light on a gambling problem, call the National Problem Gambling Hotline et

or

LTI 000961

# EXHIBIT C



DocumentationCommunityResourcesToolsNews

# Users.setStatus

**From Facebook Developers Wiki**

## Description

Updates a user's Facebook status. This method requires the extended permission status_update, which the user must opt into via the Extended Permissions system. You can test for this permission by checking for the error code listed below (250), or via the users.hasAppPermission method.

For Web applications, you must pass either the ID of the user on whose behalf you're making this call or the session key for that user, but not both. If you don't specify a user with the uid parameter, then that user whose session it is will be the target of the call.

However, if your application is a desktop application, you must pass a valid session key for security reasons. Do not pass a uid parameter

## Contents

- 1 Description
- 2 Parameters
- 3 Example Return XML
- 4 Response
- 5 Error Codes
- 6 Notes

## Parameters

| Required | Name | Type | Description |
|---|---|---|---|
| required | api_key | string | The application key associated with the calling application. |
| | call_id | float | The request's sequence number. Each successive call for any session must use a sequence number greater than the last. We suggest using the current time in milliseconds, such as PHP's microtime(true) function |
| | sig | string | An MD5 hash of the current request and your secret key, as described in the How Facebook Authenticates Your Application. |
| | v | string | This must be set to 1.0 to use this version of the API. |
| optional | session_key | string | The session key of the user whose status you are setting. Note: A session key is always required for desktop applications. It is required for Web applications only when the uid is not specified |
| | format | string | The desired response format, which can be either XML or JSON. (Default value is XML.) |
| | callback | string | Name of a function to call. This is primarily to enable cross-domain JavaScript requests using the <script> tag, also known as JSONP, and works with both the XML and JSON formats. The function will be called with the response passed as the parameter. |
| | status | string | The status message to set. |
| | clear | bool | Set to true to clear the status. |
| | status_includes_verb | bool | If set to true, the word "is" will not be prepended to the status message. |
| | uid | int | The user ID of the user whose status you are setting. If this parameter is not specified, then it defaults to the session user. Note: This parameter applies only to Web applications and is required by them only if the session_key is not specified. Facebook ignores this parameter if it is passed by a desktop application. |

## Example Return XML

```
<?xml version="1.0" encoding="UTF-8"?>
<users_setStatus_response xmlns="http://api.facebook.com/1.0/"
    xmlns:xsi="http://www.w3.org/2001/XMLSchema-instance"
    xsi:schemaLocation="http://api.facebook.com/1.0/ http://api.facebook.com/1.0/facebook.xsd">1</users_setStatus_response>
```

## Response

1 on success, 0 on failure, or an error code.

## Error Codes

| Code | Description |
|---|---|
| 1 | An unknown error occurred. Please resubmit the request. |
| 2 | The service is not available at this time. |
| 4 | The application has reached the maximum number of requests allowed. More requests are allowed once the time window has completed. |
| 5 | The request came from a remote address not allowed by this application. |
| 101 | The API key submitted is not associated with any known application |
| 102 | The session key was improperly submitted or has reached its timeout. Direct the user to log in again to obtain another key. |

LTI 000696

| | |
|---|---|
| 103 | The submitted call_id was not greater than the previous call_id for this session. |
| 104 | Incorrect signature |
| 200 | The application does not have permission to operate on the passed in uid parameter. |
| 250 | Updating status requires the extended permission status_update. |

## Notes

- This function does not require a session_key, unless it is being called by a desktop application.

Retrieved from "http://wiki.developers.facebook.com/index.php/Users.setStatus"

Categories: API functions | Session Optional API

- This page was last modified 16 48, 28 October 2008.

# EXHIBIT D

# KING & SPALDING

King & Spalding LLP
333 Twin Dolphin Drive
Suite 400
Redwood Shores, CA 94065
Tel: (650) 590-0700
Fax: (650) 590-1900
www.kslaw.com

Paul Andre
Direct Dial: (650) 590-0721
Direct Fax: (650) 590-1900
pandre@kslaw.com

April 6, 2009

Heidi Keefe
White & Case LLP
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, CA 94306

**VIA ELECTRONIC MAIL AND U.S. MAIL**

Re: _Leader Technologies, Inc. v. Facebook, Inc._, 1:08-cv-00862-JJF (D. Del.)

Dear Heidi:

As stated in our telephone conversation on April 2, 2009, based on the public information available to Leader at this time, it is clear that Facebook infringes Claims 1-2, 4-5, 7-16, 21, 23-26, 29, and 31-34 of Leader's U.S. Patent No. 7,139,761. In our interrogatory responses, we provided Facebook with proof of this infringement in the form of a narrative explaining how Facebook's Website infringes each element of the asserted claims, examples of specific API calls that demonstrate the website functions as claimed, and over 100 pages of screen shots that provide examples of Facebook's infringement. Even before we received a single document or any discovery from Facebook, we had already provided you with overwhelming evidence of infringement. Nonetheless, Facebook still claims it is not aware of what features of its website that Leader is accusing of infringement. In our call, you requested that we identify specific screenshots that correspond to each elements of the claims. We have more than fulfilled our obligations with respect to our initial responses to Facebook's first set of interrogatories, and will not supplement our interrogatory responses at this time. However, in an effort to get Facebook to engage in the discovery process without requiring the Court's intervention, we will provide you with specific examples of the screenshots that demonstrate infringement of Claim 1 of the '761 Patent. We will also provide you with specific applications and features developed by Facebook that demonstrate the infringing technology. It is our hope that this information will convince Facebook to cease these delay tactics, and participate in good faith in the discovery process.

The first element of Claim 1 is directed to a "context component." Anybody with a rudimentary understanding of computers can determine that the Facebook Website has components that function exactly as described in this first claim element. For example, several of the screenshots that we have produced to you demonstrate that the Facebook website contains a context component for capturing user-defined data. These include the screenshots bates labeled as LTI000781-LTI000799, LTI000801, LTI000803, LTI000805, LTI000807, LTI000832, LTI000834, LTI000835-837, LTI000839, LTI000841, LTI000843, LTI000847, LTI000848, LTI000850, LTI000851, LTI000856, LTI000858- LTI000869, LTI000871, LTI000872, LTI000874- LTI000878, LTI000880, LTI000881, LTI000886- LTI000890, LTI000893-LTI000901 and LTI000903- LTI000911. Each of these screen shots illustrate that a user is given the ability to enter or upload data to the Facebook Website. The fact that a user is given the ability to enter or upload data is evidence that the Facebook Website contains a context component which captures the user-defined data. It would be hard to imagine that Facebook does not understand what features of its website capture user-defined data.

In addition, it is also apparent that the Facebook Website contains a context component for capturing context information associated with the user-defined data which is dynamically stored as metadata. This feature is shown in screenshots bates labeled as LTI000800, LTI000802, LTI000804, LTI000806, LTI000808- LTI000831, LTI000833, LTI000838, LTI000840, LTI000842, LTI000844, LTI000857, LTI000870, LTI000882- LTI000885, LTI000891 and LTI000892. As shown in these screen shots, information concerning the data entry is collected by Facebook and automatically associated with the user's data. The fact that the information concerning the data entry is displayed to the user is evidence that the context-component of Facebook Website captures context information and stores it as metadata. Further evidence that the Facebook Website captures context information is from the fact that this information is retrievable using certain API calls. For example, and without limitation, this information is available by using the Users.setStatus and Users.getInfo API calls.

The second element of Claim 1 is directed to a "tracking component." Once again, anybody who has ever been on the Facebook Website recognizes that they are being tracked when they navigate from one context to another. The novel "tracking component" claimed in the '761 Patent is clearly found in Facebook's Website as demonstrated by the API calls and screenshots already provided to you. For example, the Facebook Website contains a tracking component for tracking a change of a user from one context to another and dynamically updating the metadata based on the change when the user accesses the data from a different context as shown in the screenshots bates labeled as LTI000840-LTI000848, LTI000849, LTI000852-LTI000855, LTI000873, LTI000879, LTI000902 and LTI000912. Each of these screenshots illustrate that when a user accesses data that was entered or uploaded in a different context, certain information concerning those actions are collected by Facebook and associated with the accessed data. Moreover, the API call Auth.getSession is further non-limiting evidence that the Facebook Website maintains this information about its users. Facebook cannot argue in good faith that it does not know what aspect of its website is responsible for tracking its users.

While the above-identified screenshots are evidence of Facebook's infringement of particular elements of Claim 1 of the '761 Patent, the same screenshots may also be evidence of additional elements of the asserted claims. As we discussed in our telephone conversation, once we have access to Facebook's document production and relevant source code, we will supplement our interrogatory response to identify the specific components that provide the functionality illustrated in the above-identified screenshots.

Furthermore, you have complained that our definition of "Facebook Website" is over broad, and would encompass over 500,000 third party applications. To be clear, we do not expect or desire to have Facebook provide us with discovery from third parties at this time. However, we do request Facebook to provide us with discovery of applications and features of Facebook's Website that have been developed by Facebook. We have reviewed the publicly available information regarding the source of the Facebook features listed in Leader's definition of the "Facebook Website." Contrary to your claim that the Facebook features listed in Leader's definition of "Facebook Website" are all created by third parties, the Facebook features named in Leader's definition are all created by Facebook with the exception of the third party application named "Reviews." Accordingly, Leader removes the third party application "Reviews" from its definition of "Facebook Website," but maintains the other Facebook features in its definition. Below is a table of Facebook applications and features that we believe were created by Facebook, and the support for such belief. If you have information that refutes this support, we will reconsider our definition of "Facebook Website."

| Facebook Website | Support for Being Facebook Created |
|---|---|
| Facebook Marketplace | http://blog.facebook.com/blog.php?post=2383962130 |
| Facebook Flyers (now called Facebook Advertising) | http://www.facebook.com/advertising/ |
| Facebook Platform | http://developers.facebook.com/ |
| Facebook Video | http://www.facebook.com/help.php?page=417 |
| Facebook Notes | http://www.facebook.com/help.php?page=415 |
| Facebook Mobile | http://www.facebook.com/help.php?page=432 |
| Facebook Posted Items (now called Facebook Links) | http://www.facebook.com/applications/Posted_Items/2309869772 |
| Facebook Photos | "The Facebook Bifts". facebook.com. http://blog.facebook.com/blog.php?post=2406207130. |
| Facebook Events | http://www.facebook.com/help.php?page=413 |

| Facebook Gifts | "Give gifts on Facebook!". Facebook. http://blog.facebook.com/blog.php?post=2234372130. |
|---|---|
| Facebook Groups | http://www.facebook.com/help.php?page=414 |
| Facebook Discussion Boards (part of Facebook Groups) | http://www.facebook.com/help.php?page=827 |
| Facebook Discography (part of Facebook Pages) | http://www.facebook.com/help.php?page=175 |
| Facebook Music Player (part of Facebook Pages) | http://www.facebook.com/help.php?page=175 |
| Facebook Translations | http://wiki.developers.facebook.com/index.php/Translating_Platform_Applications |
| Facebook Wall | "Facebook is off-the-wall". http://blog.facebook.com/blog.php?post=3532972130. |
| Facebook Exporter for iPhoto | http://blog.facebook.com/blog.php?post=22389032130 |
| Facebook Toolbar for Firefox | http://developers.facebook.com/toolbar/ |
| Facebook Mobile Services | http://blog.facebook.com/blog.php?post=2228532130 |
| Facebook Connect | http://www.facebook.com/help.php?page=730 |
| Facebook Pages | http://www.facebook.com/help.php?page=175 |
| Facebook Share Service | http://www.facebook.com/terms.php |
| Facebook Share Link | http://blog.facebook.com/blog.php?blog_id=company&blogger=5 |
| Facebook Ads | http://www.facebook.com/help.php?page=409 |
| Facebook Beacon | http://blog.facebook.com/blog.php?post=7584397130 |
| Facebook Social Ads | Facebook announced Facebook Beacon on November 7, 2007, a marketing initiative that allows websites to publish a user's activities to their Facebook profile as "Social Ads" and promote products. |
| Facebook News Feed | "Facebook Gets a Facelift". The Facebook Blog. http://blog.facebook.com/blog.php?post=2207967130. |

As demonstrated by this letter, we have expended considerable time and efforts to address your concerns. Since the reasons for your withholding substantive responses to Leader's written discovery requests are no longer valid as a result of the further detail provided to you in this letter, we request that Facebook now provide Leader with substantive responses to Leader's First Set of Interrogatories and Leader's First Set of Requests for Production of Documents and Things. Should you continue to withhold substantive responses and seek to evade your discovery obligations, we will be forced to seek relief from the Court.

Sincerely,

Paul J. Andre

# EXHIBIT E



White & Case LLP
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, California 94306

Tel   + 1 650 213 0300
Fax  + 1 650 213 8158
www.whitecase.com

Direct Dial + 650.213.0307      cclark@whitecase.com

April 8, 2009

Via E-Mail *(lkobialka@kslaw.com)*

Lisa Kobialka, Esq.
KING & SPALDING
333 Twin Dolphin Drive, Suite 400
Redwood City, CA 94065

Re:  *Leader Technologies, Inc. v. Facebook, Inc.*, 1:08-cv-00862-JJF (D. Del.)

Dear Lisa:

I write to follow up on the issues we discussed yesterday.

Protective Order

I understand that LTI will make some changes to the circulated protective order and provide us with an updated proposed version in the next few days. As discussed, we believe that the provision on compiling source code is neither necessary nor feasible, but believe the other changes discussed (*i.e.*, ensuring coverage of non-parties; ensuring specifications will be provided only if reasonably available; and allowing authorized reviewers to take notes during any source code review) do not present significant hurdles to finalizing an acceptable version for submission to the court. While not specifically discussed, please note that any notes taken during any source code review should be designated and marked with the ATTORNEYS-EYES-ONLY – SOURCE CODE designation. Please ensure your revisions cover that point.

Electronic Discovery

You suggested that the parties agree to provide certain information regarding custodians, electronic storage systems, and collection information. I agreed to confer with my client on your proposal and discuss the issues further with you during our next call.

Affixing Designations to Facebook-Produced Materials

Facebook produced 72 records to LTI in native format on March 23, 2009. Fifty-five of these records were designated "AEO" in the file name and are subject to Del. L.R. 26.2. In our cover

ABU DHABI  ALMATY  ANKARA  BEIJING  BERLIN  BRATISLAVA  BRUSSELS  BUCHAREST  BUDAPEST  DÜSSELDORF  FRANKFURT  HAMBURG
HELSINKI  HONG KONG  ISTANBUL  JOHANNESBURG  LONDON  LOS ANGELES  MEXICO CITY  MIAMI  MOSCOW  MUNICH  NEW YORK
PALO ALTO  PARIS  PRAGUE  RIYADH  SÃO PAULO  SHANGHAI  SINGAPORE  STOCKHOLM  TOKYO  WARSAW  WASHINGTON, DC

PALOALTO 97780 (2K)

letter, we asked that LTI affix the appropriate confidentiality designation to any printed versions of the 55 designated records. LTI has stated that it is unwilling to do so. We maintain that affixing the appropriate designation to materials produced by Facebook in native format is a reasonable measure to protect the Facebook's confidential and sensitive materials. We hope that LTI will reconsider its position. If not, we will have to revisit production format. During our call yesterday, you represented that LTI will not print any of the materials from files bearing the "AEO" designation for one week, or until April 14, 2009. We ask that LTI extend that cut off until the protective order and this issue is resolved. Since LTI is withholding documents it considers confidential until after entry of a protective order, I do not believe this is an unreasonable request.

<u>LTI's Response to Facebook Interrogatory No. 1</u>

As discussed, we believe that despite Mr. Andre's April 6 letter, LTI has still failed to meaningfully respond to Facebook's Interrogatory No. 1. I welcome your offer to revisit the issue of supplementation. As discussed, Mr. Andre's April 6 letter is not a supplemental interrogatory response and therefore raises evidentiary concerns. Second, even if it were a formal supplementation, it fails to elucidate LTI's infringement position on a claim-by-claim and limitation-by-limitation bases.

We believe a meaningful response would connect claim elements to accused feature(s). For example, for claim 1, a meaningful response would identify, among other things, what LTI contends comprises: a "context component;" a "first context;" a "second context;" "user-defined data;" "metadata;" a "storage component;" and a "tracking component" as those terms are used in the patent. LTI has taken the position that these elements are obvious and that Facebook somehow knows what and where they are. Even if that were true, which it is not, Interrogatory No. 1 seeks *LTI's positions* about how any accused features allegedly meet the claim limitations for each asserted claim. As suggested to Mr. Andre last week and again on our call yesterday, one solution may be for LTI to circle or label the components depicted on the various Facebook screen captures with the claim limitations LTI contends are met.

Facebook is not asking for anything more than that which is due under the Federal Rules of Civil Procedure. LTI must demonstrate the steps that it contends constitute infringement of its patent in a meaningful, non-evasive manner. Ample case law supports the position that patentees are required to provide their infringement contentions in a readily accessible manner by mapping the accused features against the each limitation of the asserted claims. *See e.g., Cleo Wrap Corp. v. Elsner Engineering Works, Inc.,* 59 F.R.D. 386, 391 (M.D. Pa. 1972) (compelling patentee to label a "diagram of defendant's machine with the nomenclature of the corresponding parts of its patent"). Without a supplementation, Facebook cannot identify the features at issue and is effectively hamstrung in its defenses and counterclaims. Also, as we discussed, Facebook cannot meaningfully respond to LTI's written discovery absent knowledge of LTI's infringement contentions. LTI's clear supplementation depicting its infringement position should also help pare this case back from its current "stimulus package" level frowned on by the court.

Also, LTI's definition of "Facebook Website" remains unworkable and still includes third-party applications. *See* http://www.facebook.com/apps/application.php?id=128581025231&ref=s#/

2

apps/index.php?q=Marketplace.  Please advise whether LTI is willing to name the specific features it is accusing.

LTI's Response to Facebook Interrogatory No. 3

We believe that LTI is required to provide precise dates of conception and reduction to practice as well as specific details describing the first public disclosure and other information requested in this interrogatory.  This information is critical to Facebook's defenses and counterclaims and is necessary to define the universe of prior art.  In its response, LTI fails to describe any circumstances of first public disclosure.  LTI also modifies the dates given with "not later than" language that effectively incorporates every prior date and makes the response imprecise and evasive. *See, e.g., Boston Scientific Corp. v. Micrus Corp.*, No. C 04-04072, 2007 WL 174475, 1 (N.D. Cal., Jan. 22 2007) (granting accused infringer's motion to compel more complete responses to interrogatories directed to date of conception and reduction to practice); *McKesson Information Solutions LLC v. Epic Systems Corp.*, 242 F.R.D. 689 (N.D. Ga. 2007) (rejecting patentee's argument that it did not have to provide to accused infringer information as to when it conceived and reduced to practice its claimed invention until the accused infringer produced prior art that predated the filing date of the patent).

LTI's Response to Facebook Interrogatory No. 4

I explained that Facebook intends to move to dismiss LTI's willfulness claims based on the lack of evidence provided in response to Facebook's Interrogatory No 4.  Please advise whether LTI will dismiss its willfulness claims and thereby avoid unnecessary motion practice.

LTI's Response to Facebook Interrogatory No. 5

I explained that LTI's response to Facebook's Interrogatory No. 5 fails to provide LTI's inducement and contributory infringement for the same reasons LTI's response to Facebook's Interrogatory No. 1 is deficient.  Please advise if LTI will supplement its response to this interrogatory.

LTI's Response to Facebook Interrogatory No. 9

You said LTI was willing to identify LTI products that allegedly embody the invention but was unwilling to provide a claim chart.  Information about which LTI products actually embody the claimed invention *and how* they do so is directly relevant to several of LTI's contentions, including its allegations of irreparable harm, its allegation that LTI somehow competes with Facebook, LTI's alleged product marking, and secondary considerations.  Moreover, the information is directly relevant to the validity of the patent in that Mr. McKibben has stated that he conceived of the alleged invention a decade prior to issuance of the patent, thus raising the question as to whether any LTI products themselves constitute prior art.  Moreover, if LTI is claiming that its products embody the invention, Facebook is entitled to understand how those products allegedly do so.  LTI cannot claim the benefit of embodying products without proving up that embodiment.  Accordingly, please advise whether LTI will supplement its response to this interrogatory.

Limiting Asserted Claims

We understand that LTI has declined at this time to limit the number of asserted claims or identify representative claims, despite the fact that the court expressly mentioned that such limitation may be necessary in this case. We reserve the right to move the court for an order compelling LTI to limit the asserted claims and/or identify representative claims.

LTI's Proposed Rolling Production of Documents

We understand that LTI is taking the position that it is entitled to withhold confidential materials and to roll production of documents responsive to Facebook's First Set of Requests for Production only after entry of a protective order. We maintain that Facebook is entitled to LTI's production of confidential materials now, under Del. L.R. 26.2. Hopefully, entry of a protective order will moot the issue, but Facebook reserves its right to move the court for an order compelling LTI's production if the issue is not resolved promptly.

E-Mail Service and Distribution Lists

We agreed that treating e-mail service as personal service would be acceptable subject to details about timing. I propose that the parties treat e-mail service as personal service provided the e-mail in question is sent by 6:01 p.m. Pacific on the day service is to be effected, with confirmation *via* First Class Mail to the parties' California and Delaware counsel. Please let me know if this is acceptable.

We also agreed that distribution lists for correspondence between the parties would be helpful. For Facebook, please direct all correspondence and e-mail service as follows:

> hkeefe@whitecase.com;
> mweinstein@whitecase.com;
> cclark@whitecase.com;
> mmcool@whitecase.com; and
> caponi@blankrome.com.

Please provide your distribution list and we will ensure all correspondence is sent accordingly.

Thank you for what I feel was a productive call. I am available for our follow-up call this Friday, April 10, 2009 at 3:00 p.m. Please let me know if that time works for you.

Sincerely,

/s/ Craig W. Clark