# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

Leader Technologies Inc, :
:
           Plaintiff, :
:
v. : Civ. No. 08-862-JJF-LPS
:
Facebook Inc., :
:
           Defendant. :

## ORDER

At Wilmington this **4th** day of **September, 2009**,

Presently pending before me are three discovery disputes: (i) Leader's request to amend the scheduling order to permit fact depositions to begin prior to the completion of document production and contention interrogatories ("Scheduling Request"); (ii) Facebook's request to compel a supplemental response to its Interrogatory No. 9 ("Interrogatory Request"); and (iii) Facebook's request to stay this Court's prior ruling (D.I. 78) providing Leader with access to Facebook's source code until after Judge Farnan rules on Facebook's objections to my prior ruling ("Stay Request"). For reasons provided during a teleconference this same date, as well as those set forth below, I GRANT IN PART AND DENY IN PART the Scheduling Request and the Interrogatory Request and DENY the Stay Request.

Scheduling Request

The Scheduling Order entered by Judge Farnan expressly provides: "Exchange and completion of contention interrogatories, identification of fact witnesses and document production [i.e., 'paper discovery'] shall be commenced so as to be completed by November 20,

2009." (D.I. 76 ¶ 4.a) With regard to depositions, paragraph 4.d of the Scheduling Order states: "Depositions shall not commence until the discovery required by Paragraph 4(a), (b) [regarding contention interrogatories], and (c) [regarding requests for admission] is completed." Nonetheless, on July 29, 2009, well before the November 20, 2009 cut-off for "paper discovery," Leader noticed a 30(b)(6) deposition of Facebook. (D.I. 79) Facebook objects to the deposition notice as violating the Scheduling Order. However, until today, Facebook did not state its position as to when fact depositions had to be completed.

It is plain that the Scheduling Order does not permit depositions to take place until after the completion of "paper discovery," which must be done by November 20, 2009. Leader has articulated no basis – and I perceive none – to alter this provision of the Scheduling Order.[1] Therefore, Leader's notice of deposition is premature and Facebook is not required to provide a 30(b)(6) witness until after November 20, 2009.

It is equally clear, however, that these parties require a firm date for the completion of deposition of fact witnesses. In some cases parties are able to cooperate and complete depositions of fact witnesses in a timely and efficient manner without the necessity of a deadline. That has not, unfortunately, been the experience in this case.

Therefore, IT IS HEREBY ORDERED that the Scheduling Order is modified solely to add that depositions of fact witnesses are to be completed no later than March 1, 2010.

---

[1] There is no merit to Leader's suggestion that statements by Judge Farnan or counsel during the scheduling conference that preceded entry by Judge Farnan of the Scheduling Order somehow created ambiguity or inconsistency in the explicit requirement that depositions not begin prior to November 20, 2009. (D.I. 102)

2

Interrogatory Request

    Facebook has propounded Interrogatory No. 9, which asks:

    For each claim of the '761 Patent that [Leader] contends is practiced by any product(s) and/or service(s) of [Leader], identify all such product(s) and/or service(s) and provide a chart identifying specifically where each limitation of each claim is found within such product(s) or service(s).

Leader initially objected to this Interrogatory on the grounds, among others, that it is "overbroad, unduly burdensome, and oppressive to the extent it seeks information that is not relevant to the issues in the litigation and/or not reasonably calculated to lead to the discovery of admissible evidence." Thereafter, in its First Supplemental Response, Leader added, subject to its objections, "Leader2Leader® powered by the Digital Leaderboard® engine is covered by the '761 Patent [i.e., the patent-in-suit]." Leader did not provide any information disclosing which claims of the patent-in-suit are practiced by its product, nor any chart supporting its contention. Facebook requests that Leader be compelled to respond to Interrogatory No. 9 in full.[2]

    I agree with Facebook that the issue of whether Leader offers products that practice claims of the patent-in-suit is relevant to evaluating Leader's request for injunctive relief, and particularly the element of irreparable harm (and the related matter of whether the parties here are direct competitors). However, I agree with Leader that it is overbroad to require a patentee to disclose all of its products that practice any claim of the patent-in-suit, including those products

---

[2]The parties dispute whether Facebook satisfied its meet-and-confer obligation with respect to its request that Leader provide claim charts. Because I am not ordering Leader to provide such claim charts, I need not fully assess the adequacy of the meet-and-confer efforts. This is, nonetheless, an appropriate time to remind the parties that, by the time they contact the Court to schedule a teleconference to resolve a discovery dispute, there should be no ambiguity between the parties as to what the dispute is and as to the precise relief being sought by the complaining party.

3

that only practice claims that are not asserted in this litigation.[3] I further agree with Leader that it would be unduly burdensome to require Leader, as the patentee, to produce detailed claim charts showing precisely how its products practice each of the asserted claims. This case is fundamentally about whether Facebook infringes Leader's patent, not about whether Leader practices its own patent. Facebook has cited no authority to support requiring a patentee to prove, through detailed claim charts, at a relatively early stage of discovery, how its own (by definition, "unaccused") products practice its own patent.

Facebook is entitled to know every Leader product or service that Leader contends practices any of the asserted claims of the patent-in-suit. Facebook is also entitled to know which claims are practiced by which of Leader's products and services. However, a proper weighing of the relative burdens on the parties, as well as the relevance of the discovery Facebook seeks, leads me to conclude that Facebook is entitled to nothing more than this in response to Interrogatory No. 9.

Accordingly, IT IS HEREBY ORDERED THAT within ten days of the date of this Order Leader shall supplement its response to Facebook's Interrogatory No. 9 to disclose any and all Leader products or services that practice any of the asserted claims of the '761 patent and to identify – product-by-product and service-by-service – which of the asserted claims are practiced by each of these products or services.

---

[3]During the teleconference today, Facebook agreed that it would not pursue a further response to Interrogatory No. 9 with respect to patent claims that are not asserted to be infringed by Facebook.

4

Stay Request

On July 28, 2009, I ordered that, following several preceding steps, Facebook provide Leader with access to its entire source code, subject to the procedures set forth in the Protective Order (D.I. 35), no later than August 21, 2009. (D.I. 78 and hereinafter "Source Code Order") On August 10, 2009, Facebook objected to my Source Code Order (D.I. 82), and Facebook's objections are pending before Judge Farnan.

On August 12, 2009, Facebook requested that I stay execution of the Source Code Order until after Judge Farnan rules on the pending objections to it. (D.I. 85) Following the submission of additional letter briefs and a teleconference with the parties, on August 20, 2009, I entered an Order staying the Source Code Order until September 4, 2009 and directing the parties to submit additional briefing on the adequacy of Leader's interrogatories setting forth the basis for Leader's accusation that the entirety of Facebook's website infringes Leader's '761 patent. Having reviewed the parties' recent letters, as well as the other materials they have submitted, I conclude that Facebook's request for a stay should be denied.

Leader alleges that the entirety of Facebook's website, and particularly its "context component" and "tracking component," infringes Leader's patent. Given that Leader has, with little exception, had access only to publicly-available information, Leader has provided sufficiently detailed infringement contentions. As detailed in Leader's recent letters, Leader has provided Facebook with: detailed infringement contentions, including a narrative explanation of how the Facebook website infringes each asserted claim of the '761 patent; citations to more than 100 individually-created screenshots of the Facebook website, further illustrating the narrative provided in Leader's claim chart; citations to numerous Application Programming Interface

("API") calls demonstrating that Facebook's website has functionality allegedly infringing the asserted claims; and several detailed letters further articulating Leader's infringement theory (D.I. 98 & Ex. D; D.I. 104).

I am persuaded that Leader has sufficiently articulated its infringement contentions to demonstrate the relevance of the entirety of the source code for Facebook's website. Furthermore, I continue to be persuaded by Leader's expert's declaration explaining that "all of the source code must be made available to complete a meaningful review." (D.I. 74 at 1 & Ex. A) I also believe that Facebook understands Leader's infringement theory.

I remain unpersuaded by Facebook's contentions that it will be irreparably harmed by giving Leader access to the entirety of its source code, especially if such access must be given prior to Judge Farnan's rulings on the objections. I rejected these contentions during the August 20, 2009 teleconference, and I adhere to this reasoning:

> . . . [E]ither side, if they're dissatisfied with the ruling from a Magistrate Judge on a discovery matter referred to him, that gives you a right to object, of course, but you don't get an opportunity to wait until your objections are ruled on to comply with the discovery order.
>
> The discovery order of the Magistrate Judge is an order of the court. It's only going to be reversed if the District Judge finds it's clearly erroneous, contrary to law, or an abuse of discretion.
>
> And the point is it's an order of the court, and sometimes it may happen that because discovery is moving more quickly than the objections' process can move, that you end up having to comply with the discovery order that, otherwise, you might have found you could [have] had reversed.
>
> Further, it needs to be understood that I am not limited at this point to follow the procedure that Judge Farnan set forth when he was handling discovery in this case.
>
> As I understand the referral, part of what's referred to me is to manage this process as it evolves. Nobody believed that it was going to just stand still. And so

the fact that I view something differently than Judge Farnan is not an argument that limits my discretion in terms of how I'm going to handle discovery.

I want to further say the argument that Facebook is making – and I've given you every opportunity to articulate it today – that the prejudice to Facebook will somehow be overwhelming and irreparable just by virtue of opening up the entirety of the source code to a litigant that claims the source code is infringing the litigant's patent rights, when opening up that source code is subject to very stringent protection,[4] which have been discussed here and are an order of the court, is not an especially persuasive argument against the discovery [in] the particular circumstances of this case.

(D.I. 110 at 39-41)

This case has been effectively stalled for some time, with Leader insisting it needs access to Facebook's entire source code and Facebook countering that Leader has not done enough to articulate its infringement theory to justify such access. Both parties have given every indication that, regardless of what else happens, they will stick to these positions. Leader will always assert that it needs full access to the source code and Facebook will always say Leader's contentions are

---

[4]Under the terms of the Protective Order (D.I. 35), Leader will only be permitted to review Facebook's source code at a location of Facebook's choosing, at which Facebook will provide a non-networked, stand-alone, password-protected computer terminal for Leader's use. Only a single electronic copy of the source code will be made available to Leader's examiners. Leader may only designate as examiners two of its outside counsel and two of its experts, and all of these individuals are bound by the Protective Order as a whole, its accompanying Confidentiality Agreement, and the Protective Order's specific paragraph prohibiting disclosure of source code information. Leader's examiners are prohibited from copying or printing Facebook's source code; any handwritten notations they make during viewing will be designated as HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY - SOURCE CODE, and, thus, subject to the Protective Order. The Protective Order further requires that the producing party create a source code access log to track and prevent unauthorized access and designates these logs as privileged and undiscoverable. Additionally, the Protective Order controls secondary or derivative uses of source code information by: (1) requiring that any code excerpts or descriptive documents to be filed under seal, (2) limiting the use of any code-related information to the present litigation, governed by the Protective Order, and (3) demanding that, should information about the source code be elicited in depositions, all unauthorized parties remove themselves from the room.

inadequate. Something must give. For the reasons I have given here, as well as those stated in my prior orders and during the teleconferences, I have concluded that Leader must be provided access to the entirety of Facebook's source code.

Accordingly, IT IS HEREBY ORDERED THAT:

1. The stay of the Source Code Order is VACATED.

2. Facebook's request for a stay of the Source Code Order pending a ruling on Facebook's objections to that order is DENIED.

3. Facebook shall produce its entire source code, for Leader's review, subject to the procedures set forth in the Protective Order (D.I. 35), no later than **September 15, 2009**.

4. Leader shall provide Facebook with a list of the source code modules with respect to which it seeks production of technical documents no later than **September 22, 2009**.

5. Facebook shall provide Leader with all such relevant technical documents no later than **September 29, 2009**.

6. Leader shall promptly complete its review of Facebook's source code and technical documents and shall, based on such review, provide supplemental contention interrogatories to Facebook no later than **October 15, 2009**.

Delaware counsel are reminded of their obligations to inform out-of-state counsel of this Order. To avoid the imposition of sanctions, counsel shall advise the Court immediately of any problems regarding compliance with this Order.

_____
United States Magistrate Judge