# EXHIBIT 1

Dockets.Justia.com

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF DELAWARE

3     _____
      LEADER TECHNOLOGIES,        )
4     INC., a Delaware            )
      corporation,                )
5                                 )
              PLAINTIFF,          )
6                                 )
         v.                       )  C.A. No. 08-862 JJF
7                                 )
      FACEBOOK, INC., a           )
8     Delaware corporation,       )
                                  )
9             DEFENDANT.          )
      _____

10

11
                       Friday, September 4, 2009
12                     11:00 a.m.
                       Telephone Conference
13                     Chambers of Judge Stark

14                     844 King Street
                       Wilmington, Delaware
15

16
      BEFORE:  THE HONORABLE LEONARD P. STARK,
17             United States District Court Magistrate

18

19    APPEARANCES:

20             POTTER ANDERSON & CORROON, LLP
               BY:  PHILIP ROVNER, ESQ.
21

22             KING & SPALDING LLP
               BY:  PAUL ANDRE, ESQ.
23             BY:  LISA KOBIALKA, ESQ.
               BY:  JAMES HANNAH, ESQ.
24
                       Counsel for Plaintiff

1    (APPEARANCES CONTINUED)

2

3             BLANK & ROME, LLP
              BY:  STEVEN L. CAPONI, ESQ.

4

5             COOLEY, GODWARD & KRONISH, LLP
              BY:  HEIDI L. KEEFE, ESQ.
              BY:  MARK WEINSTEIN, ESQ.

6

7                      Counsel for Defendant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1          THE COURT:  Good morning,
2     everyone.  This is Judge Stark.  Who is on the
3     line, please?
4               MR. ROVNER:  Good morning, Your
5     Honor.  This is Phil Rovner from Potter
6     Anderson.  With me on the line from King and
7     Spaulding are Paul Andre, Lisa Kobialka, and
8     James Hannah.
9               MR. CAPONI:  Good morning, Your
10    Honor.  Steven Caponi from Blank Rome for
11    Facebook.  Also with me today:  Heidi Keefe and
12    Mark Weinstein from Cooley Godward.
13               THE COURT:  Okay.  Good morning to
14    all of you.  I have a court reporter with me, of
15    course, and for the record, this is our case of
16    Leader Technologies, Inc., versus Facebook, Inc.
17    It is civil action number 08-862-JJF-LPS.
18               And we're here today because there
19    are two new discovery disputes, one from each
20    party, and I have reviewed your letters and have
21    -- really only need to hear a tiny bit more, I
22    think, before I'll be in a position to resolve
23    those two new disputes, and let's turn first to
24    Leader's concern about the scheduling order and

1    the issue as to when fact depositions can begin.

2                    And here I want to first hear from

3    Facebook, and I want to understand Facebook's

4    position as to when exactly you think fact

5    discovery ends in this case and whether or not I

6    should make that clear when that is.  Let me

7    hear from Facebook in response to that question,

8    please.

9                    MR. CAPONI:  Your Honor, Steven

10   Caponi.

11                    We think the scheduling order put

12   in place by Judge Farnan is unambiguous.

13   November 20th, I believe, is the date that fact

14   discovery ends, to where depositions can

15   proceed.

16                    THE COURT:  So when can fact

17   depositions begin, and when do they have to end

18   by?

19                    MR. CAPONI:  Sorry, Your Honor.  I

20   think I spoke a little too generally.

21                    I think written discovery should

22   be interrogatories, document requests, exchange

23   of documents, review of documents -- would end

24   by November 20th and then following that,

1    deposition discovery of both fact and experts.

2    Fact would proceed and then experts pursuant to

3    the schedule for experts.

4              THE COURT: So when do you think

5    fact depositions need to be completed by?

6              MR. CAPONI: Your Honor, we did

7    not have a specific date in mind for when they

8    need to be completed by. It's just a cut-off

9    for when they need to end.

10             THE COURT: Any reason why I

11   should not go ahead and amend the scheduling

12   order to indicate a date to end fact

13   depositions?

14             MR. CAPONI: Your Honor, I don't

15   think there's any reason not to do that. I

16   guess my preference would be, since it's an

17   issue that's being raised for the first time,

18   the parties may want to confer to see if we can

19   agree on a date to end all fact discovery.

20   Parties never discussed the issue.

21             THE COURT: All right.

22             Leader. Whoever wants to speak

23   for Leader, do you want to respond on that

24   issue, please.

1          MR. ANDRE:  Your Honor, this is
2     Paul Andre.  I'll respond to that.
3          This has been raised several
4     times.  We didn't want to bring this issue to
5     Your Honor's attention because we just wanted to
6     know what their position on this was, and they
7     would not give it to us.
8          Our position was -- our concern
9     was that they were going to do the bait and
10    switch and then on November 21st say, "Fact
11    discovery has ended.  You have no right to take
12    depositions."
13          We think it would be a good idea
14    to put in a fact-depositions date, when those
15    have to be completed, and we'd be amenable to
16    any time early into 2010.
17          THE COURT:  Okay.
18          MR. ANDRE:  If we get that coming
19    from Facebook, I think we could work this out.
20    When we had our meet-and-confers, a couple of
21    them, they would not agree to that.
22          THE COURT:  But Leader's belief is
23    if fact depositions were done by, say, the end
24    of January 2010, that could keep the case on

1       track to ultimately have trial in June 2010; is

2       that correct?

3                   MR. ANDRE:  Absolutely, Your

4       Honor.

5                   THE COURT:  Mr. Caponi, do you

6       have any disagreement with that, that a

7       fact-depositions cut off of January 31st, 2010,

8       would allow this case to stay on track for trial

9       in June 2010?

10                  MR. CAPONI:  Appreciating my

11      limitations, Your Honor, I will defer to

12      Ms. Keefe on that, who will be taking the

13      depositions.

14                  THE COURT:  Okay.  Go ahead,

15      Ms. Keefe.

16                  MS. KEEFE:  Good morning, Your

17      Honor.

18                  The only worry I have about

19      January is we're talking about a compressed time

20      frame with holidays, including potential

21      third-party depositions, and so from

22      November 20th until just the end of January,

23      we've got Thanksgiving, Christmas, New Year's

24      holiday.

1          So I would ask that we set it for
2    March because that accommodates the possibility
3    of third parties not being able to get things
4    done.
5               THE COURT:  All right.
6               Mr. Andre, any objection to
7    March 1st.
8               MR. ANDRE:  Your Honor, I don't
9    have an objection for fact depositions going up
10   to the day before trial.  That's okay with me as
11   long as we don't miss the trial date.
12              One thing we talked about with
13   Facebook as well is regarding third parties --
14   the idea here is that Judge Farnan wanted all
15   the written discovery between the parties to be
16   completed and then fact depositions go
17   thereafter.
18              But with third parties, we could
19   begin taking third-party depositions tomorrow.
20   If we don't get documents from them, if we
21   subpoena documents, we can take the depositions.
22   There's nothing that would preclude us from
23   finishing up the third-party depositions in
24   2009.

1          MR. CAPONI:  Your Honor, Steve

2     Caponi.

3               I don't think we would agree with

4     Mr. Andre's characterization of the scheduling.

5     I think it's been pretty clear, as with Judge

6     Farnan's practice developed over many years,

7     that you have many wasteful depositions and

8     retaking depositions when parties jump the gun a

9     little early; therefore, you close exchange of

10    paper discovery.  We have a set record with

11    which to move forward on depositions, third

12    party and party.

13               THE COURT:  I'm not going to get

14    into an issue that's not actually in front of me

15    right now, but with respect -- which is the

16    third-party depositions issue -- I'm going to

17    hope that the parties can work that out by

18    taking a look at the language of the scheduling

19    order.

20               But what I am going to rule with

21    respect to the -- let's call it -- Leader's

22    request to modify the scheduling order, I am

23    going to modify it, and I will get something out

24    in writing to you.  But just so you know, I'm

1      not going to be modifying Paragraph 4(d), which

2      is the one that refers to depositions beginning

3      after paper fact discovery is done. But I am

4      going to add to the scheduling order that all

5      fact depositions are to be completed in this

6      case by March 1st, 2010.

7      Let's move next to Facebook's

8      request that the Court compel a further response

9      to Interrogatory Number 9, and I want to start

10      on this one, again, with Facebook.

11      And first, I'd like to know where

12      in the record I can find the evidence that you

13      adequately met and conferred with respect to the

14      extent of the relief being requested now from

15      the Court, is that the patentee, Leader here,

16      provide the claim charts showing in detail where

17      they practice -- where their products practice

18      their claims.

19      Whoever is going to take this for

20      Facebook, please start there.

21      MR. WEINSTEIN: Thank you, Your

22      Honor. This is Mark Weinstein.

23      I'm going to refer to a couple

24      exhibits and a couple different letter briefs

1    because they raise the meet-and-confer issue in

2    their responsive letter brief, to which we

3    didn't have an opportunity to respond, but there

4    is ample evidence in the record and some of the

5    letter briefs.

6            The first letter brief would be

7    attached as Exhibit E to Leader's August 27th

8    letter to Your Honor.  It's a letter to Lisa

9    Kobialka following a meet-and-confer discussion.

10           On page three of the letter --

11   this is following up on a telephonic meet and

12   confer -- here is the following statement.  This

13   is memorializing a telephonic meet and confer

14   that took place the day before:

15               "You said LTI was going to

16           identify LTI products that allegedly

17           embody the invention, but were unwilling

18           to provide claim charts."

19           The letter goes on to describe the

20   reasons why the claim chart is relevant, and

21   essentially, it is a mirror of the arguments

22   that are before Your Honor today.

23           There was a second meet-and-confer

24   conference conducted with a different lawyer at

the King and Spalding firm, Megan Wharton, and

that's memorialized in Exhibit C to Leader's

letter of September 3rd to Your Honor. That's

an e-mail to Megan Wharton, and if you look at

paragraph four, a second meet and confer, their

position was the same:

"LTI is willing to identify the

LTI products it contends practice the

claimed invention in response to

Facebook (inaudible), and it will

explain how those products allegedly

embody the invention. However, it will

not provide claim charts."

So there are two instances in

which telephonic meet and confers reached an

impasse.

Beyond that, Your Honor, in August

we asked them on two separate occasions to

supplement their response to the interrogatory,

and their response in both cases was that their

response is complete and no further

supplementation was required.

I think, Your Honor, that another

piece of evidence is borne out by the record,

1    which is that parties are certainly at an

2    impasse with respect to Interrogatory Number

3    nine.  If you look carefully at your letter, you

4    don't see them arguing that they're going to

5    supplement their response or that they are going

6    to waver in any way to the position that they've

7    taken at least two or three times previously.

8                   I guess last point, Your Honor, is

9    the day before they filed their letter brief,

10   they had -- one of their lawyers had sent me a

11   letter saying, "We don't think you've met and

12   conferred."

13                  I responded about an hour later

14   this week and said, "We think we have."

15                  We attached the relevant

16   correspondence, and we heard nothing further

17   from them until we got their letter brief to

18   Your Honor dated yesterday.

19                  So as far as we're concerned, Your

20   Honor, the meet-and-confer obligations are more

21   than satisfied, the parties are clearly at an

22   impasse, and this matter is clearly ripe for

23   adjudication by Your Honor.

24                  THE COURT:  Let's assume for a

1    moment that I agree with you on that point.

2              Explain to me what the possible

3    relevance would be of the question of whether

4    Leader practices through its products or

5    services any of the claims of its patent that

6    are not asserted in this case.

7              MR. WEINSTEIN:  Your Honor, as to

8    claims that are not asserted, we would agree not

9    to pursue a response as to those claims.  We

10   would pursue a request as the claims that are

11   asserted.  We have no objection to an order

12   compelling them only to address the asserted

13   claims.

14              THE COURT:  All right.

15              And then help me out on what is

16   the basis, and is there any authority -- because

17   I haven't seen any in your letters -- for

18   requiring a patentee to do detailed claim charts

19   showing how that patentee believes its own

20   products and services practice the patent at

21   suit?

22              Assume for the moment I agree with

23   you that there is relevance to whether or not

24   the patentee practices the patent.  I need help

1    on what authority there is for imposing on the

2    patentee the burden of doing a detailed claim

3    chart.

4           MR. WEINSTEIN:  I think the simple

5    answer to that, Your Honor, is that in the vast

6    majority of patent cases, this issue comes up

7    repeatedly because patentees, as we explained in

8    our letter, they have the possibility of

9    enjoying additional benefits, possibly

10   additional remedies, if they practice the claims

11   of their own patents.

12          The issue typically comes up where

13   the plaintiff states the products that practice

14   the invention, and in almost every case I've had

15   -- in fact every case I've had before this one

16   -- it really is not a disputed issue of fact.

17          The patent is relatively

18   straightforward, and the manner in which the

19   patent -- it covers the products is not really

20   in dispute because after all, the plaintiff

21   presumably wrote its own patent to cover its own

22   products.

23          This is an unusual case, Your

24   Honor, because there is a factual dispute here

1   as to whether or not the patent, in fact, covers

2   their products.  It is our contention that the

3   patent is exceedingly narrow in its scope.  We

4   think, obviously, it doesn't cover Facebook's

5   products.  We also don't think it covers

6   Leader's products either, and that's going to be

7   a contested, factual issue we're going to bring

8   to the Court.

9               We're entitled to know -- if they

10  claim it's practicing it, we're entitled to know

11  what their explanation is so we can have our

12  experts and witnesses rebut their theory and

13  prove, in fact, that their patent is not

14  practiced by their products, and, therefore,

15  they're not entitled to those legal benefits.

16              I think their main argument, Your

17  Honor, relates to the question of overbreadth.

18  They claim it's overly broad to do that.  I

19  think the short answer to that concern, which is

20  the majority of their letter, is that all of the

21  information needed to respond to this is in

22  their possession.  This is their own product,

23  their own patent.  It's not like they need

24  discovery from a third party.

1           And second of all, Your Honor,

2    they're out there in the market telling people

3    that their Digital Leaderboard technology is

4    covered by their patent.  If you go to their web

5    site, their patent number is marked on every

6    page of every one of their products.

7           They certainly have a theory.

8    They certainly have some idea of why their

9    products are practiced by the patents.  All

10   we're asking them to do is tell us what that

11   theory is so we can challenge it in this

12   litigation.

13          THE COURT:  Do you have access to

14   their product?

15          MR. WEINSTEIN:  No, I don't have

16   access to their product.  I have access to their

17   web site materials, where they tout their patent

18   and discuss the products that are practiced by

19   it.  It's the same products that are identified

20   in their interrogatory.

21          THE COURT:  Have you sought in

22   discovery to have access to their product?

23          MR. WEINSTEIN:  I just -- I'm not

24   sure, Your Honor.  Ms. Keefe is writing me

1    notes.  She thinks that's the case, but sitting
2    here now, I'm not exactly sure.
3                    THE COURT:  I guess what I'm
4    having trouble with is, I understand why you
5    need to know which products it is that Leader
6    has that they believe practice their own patent.
7                    But once they disclosed them to
8    you and provided that you had sufficient access
9    to those products, I'm not understanding why the
10   burden at this stage in the proceedings isn't
11   properly placed on you to begin to prepare your
12   case as to why you think you're not direct
13   competitors and why you think they can't show
14   irreparable harm on the grounds that they don't
15   practice their own patent.
16                   MR. WEINSTEIN:  The problem with
17   that, Your Honor, is it's basically asking us to
18   prove a negative.
19                   If, in fact, it's the case that
20   they're going to seek permanent injunctive
21   relief in this case -- and by every indication
22   they've indicated that they're going to --
23   they're the plaintiff in the case.  They're
24   going to have to prove entitlement to a

permanent injunction. They're going to have a
burden of proof to show that they are
competitors and that their products do practice
the patent.

We, of course, would respond to
that allegation and say, "We don't believe we're
competitors. We're in different markets, and
our products, in fact -- your products, in fact,
do not practice your patent."

They will have to make some
initial showing. It's very difficult for us to
try to rebut an allegation when we don't know
what the basis of their allegation is.

THE COURT: I want to talk to
Leader on this issue now.

Is it going to be you, Mr. Andre?

MR. ANDRE: It is, Your Honor.
Regarding meet and confer, Ms. Kobialka will
speak, but on the other issues, I'll speak.

THE COURT: Let me start with you
then.

First off, is Leader to Leader,
powered by Digital Leaderboard, the only Leader
product or service that practices the 761

```
1    patent?
2              MR. ANDRE:  Yes, Your Honor.
3              THE COURT:  Are you able to state
4    at this point which of the asserted claims that
5    the 761 patent, that that product practices?
6              MR. ANDRE:  No, Your Honor.
7              THE COURT:  All right.
8              And how long would you need to be
9    able to put yourselves on the record as to which
10   of the asserted claims the product you just
11   identified practices?
12             MR. ANDRE:  It would be a fairly
13   large burden, Your Honor.  We'd have to go
14   through and do an entire analysis of proving
15   infringement of our own product.
16             THE COURT:  I understand your
17   contention that you would have to do an entire
18   analysis if I required you to do the detailed
19   claim chart that they're asking for.
20             But if all I required you to do
21   was let them know which of the asserted claims
22   you believe your product practices, how hard can
23   that be, and when could you get it done?
24             MR. ANDRE:  Your Honor, that would
```

1  |  with a simpler task, and we could get that done
2  |  within a week.
3  |              THE COURT:  Okay.
4  |              And so tell me why I should not
5  |  order you to do that, and in the alternative,
6  |  why should I not order you to do the claim
7  |  chart?
8  |              MR. ANDRE:  Your Honor, the actual
9  |  relevance for us naming our product is not
10 |  whether we're practicing our invention or not.
11 |  It is if we are direct competitors.
12 |              Look at Federal Circuit precedent
13 |  regarding the irreparable harm issue for an
14 |  injunction.  The issue there is:  Are we
15 |  competitors?  Are they taking sales away from us
16 |  in our market share?  That's our irreparable
17 |  harm.
18 |              The patent gives a right to
19 |  exclude people, but it's not a one-for-one,
20 |  product-by-product comparison.  The claim chart
21 |  they're asking for can only be used to try to
22 |  flip the case.
23 |              The next thing that happens, they
24 |  would be trying to prove our product doesn't

1    infringe our patent.  Will they have expert
2    reports on this?  I don't know.
3              There's absolutely no relevance
4    whatsoever for us to go through an infringement
5    analysis element by element with supporting
6    documentation as they request to try to prove
7    our own product infringes our patent.
8              So with respect to naming which
9    claims that we've asserted against them that is
10   also covered by our product, Your Honor, we're
11   willing to do that.  I have no problem with
12   that.  I think that's something we can do in
13   short order.
14             But to take a position as to why
15   each element is covered, all they can use this
16   for is to try to do a product-by-product
17   comparison, which is improper, or use it in some
18   kind of claim construction, which is also
19   improper.
20             There's absolutely no relevance,
21   and there's a lot of potential shenanigans that
22   might take place with this type of discovery.
23             THE COURT:  Let me hear from
24   Ms. Kobialka on the meet-and-confer issue,

1   please.

2               MS. KOBIALKA:   Thank you, Your

3   Honor.

4               The way that the meet and confer

5   had occurred was the parties were having

6   discussions way back in April, and there was a

7   bit of correspondence that went back and forth,

8   and I was involved in those particular

9   meet-and-confer discussions.

10              And at that time we specifically

11  discussed this issue of claim charts, and I

12  requested they provide me with some law to

13  support their position that it would be

14  appropriate for the patentee to bear the burden

15  of preparing claim charts and said that we would

16  supplement our interrogatory response.

17              All of the correspondence we had

18  leading up to our supplemental interrogatory

19  response, we did specifically discuss that, but

20  it was dropped after we served our supplemental

21  interrogatory response on April 17.

22              The subsequent meet and confers

23  that have come up since April 17th and the ones

24  that Mr. Weinstein had referred to in August

1     were all surrounding the allegation that

2     Facebook claimed we needed to change our

3     interrogatory response for number nine because

4     they said our response was inconsistent with our

5     document production.

6              We kept informing them we do not

7     believe our response is inconsistent with the

8     documents.  To the extent they thought that was

9     the case, we would invite them to go ahead and

10    ask additional discovery requests to understand

11    -- so they could understand what was going on

12    behind it.

13             But as their Interrogatory Number

14    9 is written, it did not require us to provide

15    an explanation when they just disputed what we

16    said in our interrogatory.

17             And that is borne out, actually,

18    on Exhibit C, that correspondence that we

19    attached to our letter dated September 3rd, in

20    which we specifically said our Interrogatory

21    Number 9 response is complete and is not

22    inconsistent with the documents produced,

23    contrary to what Facebook has been saying to us,

24    and that there was nothing additional that we

1    needed to supplement at this time if they wanted

2    information regarding these claims of

3    inconsistencies between the documents produced.

4                    And their response is they could

5    go ahead and request that in additional

6    discovery.  So all of our meet-and-confer

7    efforts were then surrounding the substance of

8    the response, but we've never discussed claim

9    charts, and to this day, we've yet to get any

10   legal support whatsoever because there is none.

11   There is no law that says the patentee should

12   bear the burden of providing the claim chart.

13                    THE COURT:  Mr. Weinstein, do you

14   want to respond to anything you heard?

15                    MR. WEINSTEIN:  Just briefly, Your

16   Honor.

17                    The issue was never dropped, ever.

18   It was raised twice in two separate telephonic

19   meet and confers.  Their position was very

20   clear.

21                    In fact, those meet and confers

22   are what resulted in the supplemental

23   interrogatory response that is the subject of

24   our motion to compel.

1           Their position has always been the

2      same:  We're not going to provide claim charts.

3      They've never wavered in that position.

4           The theory that we somehow dropped

5      our request for claim chart is simply unfounded,

6      and the exhibits I cited to you -- Exhibit E to

7      the August 27th letter and then Exhibit C to the

8      September 3rd letter -- bear that out.

9           THE COURT:  Okay.

10          Well, on this one -- and again I

11     will get something out in writing to you -- I'm

12     going to grant in part and deny in part the

13     request to compel a further response from Leader

14     to Interrogatory Number 9.

15          I'm granting it to the extent that

16     I am requiring Leader to confirm that it has

17     disclosed the identity of all of its products

18     and services it believes practice its 761

19     patent, and, further, to require within ten days

20     of today that Leader provide Facebook with an

21     indication as to which of the asserted claims in

22     this case are practiced by that product or

23     products.

24          I'm denying the request for a

1    claim chart.  I've yet to hear any authority to

2    support a requirement that a patentee undertake

3    the burden, at this stage of discovery, to prove

4    through detailed claim charts that its own

5    products practice its own patent.

6              I recognize that this is an

7    unusual case, but I think, recognizing the

8    unusual nature of it, and weighing the relative

9    burdens -- not just burden of proof, but the

10   burden of time expended that would be necessary

11   -- and factoring in the relevance and at what

12   point in these proceedings these issues are

13   going to become most relevant -- weighing all

14   that together, I conclude that the result that

15   I've come up with properly considers all of

16   those factors and places the right amount of

17   burden on the patentee.

18             That's all that this call is

19   scheduled to address.  I am mindful, as I'm sure

20   the parties are, that I have received a latest

21   round of letters relating to the ongoing dispute

22   as to when Leader is going to have access to the

23   full source code of Facebook, if ever.  And

24   those letters have been helpful, and I plan to

1    get you an answer to that question soon.

2                I don't want to turn this into a

3    long argument over that issue, but knowing that

4    those letters are out there and knowing that I'm

5    going to be deciding that issue very soon, I

6    want to give you each a chance, if you want,

7    just for a few minutes to say whatever you want

8    to say on that issue.

9                So, Leader, you can have that

10   opportunity first.

11               MR. ANDRE:  Thank you, Your Honor.

12   This is Paul Andre.  I'll be speaking for

13   Leader.

14               In the letters what we tried to

15   show the Court was that we have disclosed the

16   public information that is available to us that

17   shows that the Facebook web site actually

18   infringes these patents.  We've gone through and

19   laid out element-by-element analysis.

20               They were not happy with our

21   interrogatories early in this case.  They moved

22   to compel earlier in front of Judge Farnan.

23   Judge Farnan denied it and said these are

24   sufficient for the time being, but that we will

1    need to supplement once we get the confidential

2    documents.

3                    We've been waiting now for six

4    months to get a single confidential document or

5    any type of information that would help us

6    complete these and give them more substantive

7    responses.

8                    So at this point we are confident

9    that we've exhausted the public information, and

10   now we are just waiting to get the actual

11   information we get in every litigation.

12                   This case has been going on for

13   quite some time.  Discovery has been going on

14   for six months, and they have yet to produce a

15   single confidential document.

16                   In the call earlier today, I heard

17   Counsel for Facebook say they are confident, and

18   they know what this claim means, and they don't

19   infringe, and they don't think our product

20   infringes.

21                   They have an understanding what

22   this claim talks about, what this patent talks

23   about.  They have an understanding what we're

24   accusing because we laid out very clearly the

1    information.

2              I think that's clear from the

3    briefs and the letters we've provided, and we've

4    explained our case to them.  And I think the

5    purpose of these letters was to set forth, have

6    we explained to them our theory of the case?

7    And I think it's pretty clear that we have.

8              Thank you, Your Honor.

9              THE COURT:  Sure.

10             Facebook, anything of a brief

11   nature you wish to add on this dispute?

12             MR. WEINSTEIN:  Your Honor, we

13   obviously disagree with Mr. Andre, but we think

14   the letter briefs speak for themselves.

15             If you have any specific

16   questions, I'd be happy to answer them, but I

17   think the record is pretty complete on this

18   issue.

19             THE COURT:  I agree.  The record

20   is pretty complete.  And again I thank you.  The

21   letters are detailed and helpful.

22             I will be entering an order on

23   that issue soon, but I am going to continue the

24   stay of my order, which is Docket Entry Number

1    78, the one that had required Facebook to

2    provide access to the full source code by a

3    date.  I think it was in August.

4              I'm going to continue that stay

5    until I get my written order out to you

6    resolving the issue as best I can.

7              Thank you all very much for your

8    time.

9              MR. ANDRE:  Thank you, Your Honor.

10             MR. WEINSTEIN:  Thank you.

11             (Proceeding ended at 11:32 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

1             C E R T I F I C A T I O N

2                I, DEANNA WARNER, Professional

3 Reporter, certify that the foregoing is a true and

4 accurate transcript of the foregoing proceeding.

5                I further certify that I am neither

6 attorney nor counsel for, nor related to nor employed

7 by any of the parties to the action in which this

8 proceeding was taken; further, that I am not a

9 relative or employee of any attorney or counsel

10 employed in this case, nor am I financially

11 interested in this action.

12

13

14

15                —————————————————————————————————

16                DEANNA WARNER

17                Professional Reporter and Notary Public

18

19

20

21

22

23

24