## IN THE UNITED STATES COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LEADER TECHNOLOGIES, INC., a Delaware corporation, | ) CIVIL ACTION ) ) |
| Plaintiff and Counterdefendant, | ) No. 1:08-cv-00862-JJF ) |
| v. | ) ) |
| FACEBOOK, INC., a Delaware corporation, | ) ) ) |
| Defendant and Counterclaimant. | ) ) |

**DEFENDANT FACEBOOK, INC.'S OPENING BRIEF IN
SUPPORT OF ITS MOTION TO STAY PENDING
<u>REEXAMINATION OF U.S. PATENT NO. 7,139,761</u>**

Steven L. Caponi (DE Bar #3484)
**BLANK ROME LLP**
1201 N. Market Street
Wilmington, DE 19801
302-425-6400
Fax: 302-425-6464
*Attorneys for Defendant and
Counterclaimant Facebook, Inc.*

OF COUNSEL:
Heidi L. Keefe (*pro hac vice*)
Mark R. Weinstein (*pro hac vice*)
Jeffrey Norberg (*pro hac vice*)
Melissa H. Keyes (*pro hac vice*)
**COOLEY GODWARD KRONISH LLP**
3000 El Camino Real
5 Palo Alto square, 4th floor
Palo Alto, CA 94306

Dated: October 21, 2009

128605.00602/40184584v.1

# Table of Contents

I. STATEMENT OF NATURE AND STATE OF PROCEEDINGS ................................ 1

II. SUMMARY OF ARGUMENT ................................................................................ 1

III. STATEMENT OF FACTS ...................................................................................... 2

    A. Facebook's Request for Ex Parte Reexamination ........................................ 2

    B. Facebook's Request for Inter Partes Reexamination ................................... 3

IV. ARGUMENT .......................................................................................................... 3

    A. Reexamination is a Useful Tool for Streamlining Litigation ....................... 3

    B. It is a Virtual Certainty that Inter Partes Reexamination of the '761 patent Will Be Granted ............................................................................................ 6

    C. This Court Has Routinely Stayed Patent Infringement Proceedings Pending Reexamination before the Patent Office ....................................... 6

    D. All Relevant Factors Favor A Stay of the Present Litigation ...................... 7

        1. Reexamination Will Simplify Issues in this Case and Preserve Judicial Resources ............................................................................ 7

        2. This Action Is Far From Complete ................................................. 10

        3. A Stay Will Not Create Undue Prejudice or Present Any Clear Tactical Advantage ......................................................................... 10

    E. In Lieu of a Stay, the Court May Dismiss the Present Action Without Prejudice ..................................................................................................... 11

V. CONCLUSION ..................................................................................................... 12

128605.00602/40184584v.1

# Table of Authorities

**PAGE**

## CASES

*01 Communique Lab. Inc. v. Citrix Sys. Inc.*,
  2008 WL 696888 (N.D. Ohio Mar. 12, 2008) .................................................................. 10

*Abbott Diabetes Care, Inc. v. Dexcom, Inc.*,
  2006 WL 2375035 (D. Del. Aug. 16, 2006) ............................................................. 6, 7, 11

*Abbott Diabetes Care, Inc. v. Dexcom, Inc.*,
  2007 WL 2892707 (D. Del. Sept. 30, 2007) ....................................................................... 6

*Alloc, Inc. v. Unilin Décor N.V.*,
  2003 WL 21640372 (D. Del. July 11, 2003) ...................................................................... 6

*Amro v. Ameriquest Mortgage Co.*,
  2005 WL 2284247 (N.D. Ill. Sept. 15, 2005) ................................................................... 11

*Arrivalstar S.S. v. Canadian Nat'l Ry. Co.*,
  2008 WL 2940807 (N.D. Ill. July 25, 2008) .................................................................... 4, 9

*Engineered Data Prods., Inc. v. GBS Corp.*,
  506 F. Supp. 2d 461 (D. Colo. 2007) ................................................................................. 8

*eSoft, Inc. v. Blue Coat Systems, Inc.*,
  505 F. Supp. 2d 784 (D. Colo. 2007) ............................................................................... 10

*Ethicon, Inc. v. Quigg*,
  849 F.2d 1422 (Fed. Cir. 1988) .......................................................................................... 4

*Gioello Enters. Ltd. v. Mattel, Inc.*,
  2001 WL 125340 (D. Del. Jan. 29, 2001) .......................................................................... 6

*Gould v. Control Laser Corp.*,
  705 F.2d 1340 (Fed. Cir. 1983) ...................................................................................... 4, 7

*Hamilton Indus., Inc. v. Midwest Folding Prods. Mfg. Corp.*,
  1990 WL 37642 (N.D. Ill. Mar. 20, 1990) ....................................................................... 11

*Motson v. Franklin Covey Co.*,
  2005 WL 3465664 (D.N.J. Dec. 16, 2005) ...................................................................... 10

*Pegasus Dev. Corp. v. DirecTV, Inc.*,
  2003 WL 21105073 (D. Del. May 14, 2003) ....................................................... 3, 5, 6, 7, 10

*Sheth v. Ernst & Young, LLP*,
  2005 WL 221245 (N.D. Ill. Jan. 27, 2005) ...................................................................... 11

*Sun-Flex Co., Inc. v. Softview Computer Prod. Corp.*,
  1989 WL 117976 (N.D. Ill. Sept. 27, 1989) ...................................................................... 9

*Tap Pharm. Prods. Inc. v. Atrix Labs., Inc.*,
  2004 WL 422697 (N.D. Ill. Mar. 3, 2004) ......................................................................... 9

*United Sweetener USA, Inc. v. Nutrasweet Co.*,
  766 F. Supp. 212 (D. Del. 1991) ........................................................................................ 6

*Wall Corp. v. Bonddesk Group, L.L.C.*,
  2009 WL 528564 (D. Del. Feb. 24, 2009) ....................................................................... 6, 9

128605.00602/40184584v.1

# Table of Authorities
(continued)

**Page**

## STATUTES AND RULES

| | |
|---|---|
| 35 U.S.C. § 252 | 8 |
| 35 U.S.C. § 301 | 4 |
| 35 U.S.C. § 311(a) | 4 |
| 35 U.S.C. § 312(a) | 4 |
| 35 U.S.C. § 314(a) | 5 |
| 35 U.S.C. § 314(b)(2) | 5 |
| 35 U.S.C. § 314(c) | 5 |
| 35 U.S.C. § 315(c) | 6, 8, 9 |
| 35 U.S.C. § 316(a) | 6 |
| 35 U.S.C. § 316(b) | 8 |
| Local Rule 7.1.1 | 2 |

I.  **STATEMENT OF NATURE AND STATE OF PROCEEDINGS**

Plaintiff Leader Technologies, Inc. ("LTI") filed its Complaint against defendant Facebook, Inc. in this patent infringement action on November 19, 2008. Discovery opened on February 17, 2009. Written fact discovery is set to close in November 2009, deposition discovery has not commenced, Markman is set for January 20, 2010, expert discovery is months away, and trial is not set until June 28, 2010. D.I. 30, *Rule 16 Scheduling Order*.

II.  **SUMMARY OF ARGUMENT**

Defendant Facebook, Inc. ("Facebook") respectfully moves to stay proceedings in this matter pending reexamination of U.S. Patent No. 7,139,761 ("'761 patent") by the U.S. Patent and Trademark Office ("Patent Office"). Facebook has already filed a request for *ex parte* reexamination, which has been granted by the Patent Office, and will soon be filing a request for *inter partes* reexamination. Both will dramatically simplify or resolve the issues in this case. If, upon reexamination, the claims of the '761 patent are rejected, the present case will end. If the claims are amended, there will be no past infringement or damages. If the claims survive, the issues of validity concerning the art before the Patent Office will be removed from the litigation due to the estoppel effect of *inter partes* reexamination. No matter what the outcome of the reexamination, substantial economies will be gained through a stay.

The Plaintiff is a software company that does not compete with Facebook. Rather, LTI describes itself as a company that sells "web based collaboration platforms that merge voice and data." Therefore, there will be no undue burden on Plaintiff by staying this litigation, at this early stage. The parties have not yet engaged in any substantive motion practice, no depositions have been taken, and claim construction has not even occurred. In short, all the attendant expenses and judicial resources associated with the present action can be preserved and potentially never used. Thus, a stay is in the best interest of the Court and the parties.

1.

In accordance with Local Rule 7.1.1, an averment of Facebook's counsel that reasonable efforts have been made to reach agreement with the opposing party on the matters set forth in this motion is contained in the Declaration of Jeffrey Norberg in Support of Defendant Facebook's Motion to Stay Pending Inter Partes Reexamination of U.S. Patent No. 7,139,761 ("Norberg Decl.").

## III. STATEMENT OF FACTS

### A. Facebook's Request for *Ex Parte* Reexamination

The '761 patent is precisely the type of patent for which the reexamination procedure was created. Very little prior art was ever considered by the Patent Office or brought to its attention by LTI. During the original prosecution of the '761 patent, LTI identified fewer than 10 prior art references to the Patent Office. Norberg Decl. Ex. A. The Patent Office itself located and considered only four additional references beyond the ones identified by LTI. *Id.*

In connection with its ongoing struggle to understand Leader's interpretation of its patent, Facebook has been searching for prior art. Facebook's search for prior art was expanded after LTI filed its opposition to Facebook's Motion Compelling Plaintiff's Response to Defendant's Interrogatory No. 1 on May 18, 2009. In its opposition, LTI took broad positions on the application of certain limitations of the '761 patent, thus exposing the patent to further invalidity attack. These prior art searches revealed numerous prior art references that had never been considered by the Patent Office. On July 2, 2009, believing that some of this prior art made a compelling case of invalidity of the '761 patent, Facebook filed a request for *ex parte* reexamination with the Patent Office. Norberg Decl. Ex. B.

Facebook's *ex parte* reexamination request presents three prior art references that each anticipate the claims of the '761 patent that were never considered by the Patent Office or cited by LTI during the original prosecution. Facebook also identified three substantial new questions

2.

of invalidity raised by that prior art. Norberg Decl. Ex. B. The Patent Office accepted all of Facebook's arguments and has declared that there are substantial new questions of patentability for all asserted claims and thus granted reexamination of all of the asserted claims. Norberg Decl. Ex. C. An office action rejecting those claims is anticipated soon.

### B. Facebook's Request for *Inter Partes* Reexamination

On October 15, 2009, after review of Facebook's source code pursuant to a procedure ordered by Magistrate Judge Stark, LTI provided supplemental infringement contentions. Norberg Decl. ¶3. These supplemental infringement contentions confirm that *all* of the claims LTI is asserting in this litigation are currently subject to the Patent Office's *ex parte* reexamination process. *Id.* These supplemental contentions also clarified, to some extent, LTI's positions on Facebook's alleged infringement, providing insight into the meaning LTI attaches to its own claims. LTI's supplemental contentions have allowed Facebook to identify additional prior art, and further substantial new questions of patentability involving the art are now before the Patent Office. Facebook intends to submit the additional art and combinations in an *inter partes* request for reexamination of all of the claims currently subject to the *ex parte* reexamination.

## IV. ARGUMENT

### A. Reexamination is a Useful Tool for Streamlining Litigation.

This Court has recognized that there is a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings. *See, Pegasus Dev. Corp. v. DirecTV, Inc.*, No. Civ. A. 00-1020-GMS, 2003 WL 21105073, at *1 (D. Del. May 14, 2003). This liberal policy exists because of the "simplification of litigation that might result from the cancellation, clarification, or limitation of claims, and, even if the reexamination did not lead to claim amendment or cancellation, it could still provide valuable analysis to the district court,

3.

which it could consider in reaching its determination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1428 (Fed. Cir. 1988) (citations omitted). To appreciate these advantages fully, a brief review of the reexamination process is instructive.

Reexamination proceedings are initiated when a third party files a request with the Patent Office identifying prior art that raises questions regarding the patent's validity. 35 U.S.C. §§ 311(a), 301. The Patent Office has ninety days to act on the request, and is required to grant the request and reexamine a patent if "a substantial new question of patentability affecting any claim of the patent concerned is raised by the request...." 35 U.S.C. § 312(a). There are two types of reexamination requests: *ex parte*, in which the party requesting reexamination is not permitted to participate after submitting its request, and *inter partes*, in which the requesting party continues to participate throughout the reexamination process.

This reexamination procedure was created in order to provide a streamlined process for challenging the validity of an issued patent. *See, e.g., Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341-42 (Fed. Cir. 1983) ("One purpose of the reexamination procedure is to eliminate trial of that issue [of patent validity] (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)."). Reexamination was also designed to streamline patent infringement litigation by eliminating or narrowing issues that will require trial. *See Arrivalstar S.S. v. Canadian Nat'l Ry. Co.*, No. 08C1086, 2008 WL 2940807, at *2 (N.D. Ill. July 25, 2008) ("As the Federal Circuit has explained, '[o]ne purpose of the reexamination procedure is to eliminate trial of that issue [of patent validity] (when the claim is canceled) or facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceedings).'" (quoting *Gould*, 705 F.2d at 1341-42). As explained in

Section C, *infra,* this Court routinely stays infringement litigation to achieve these goals when there is concurrent reexamination of the patent in question.

Judge Sleet has noted that a stay of litigation pending reexamination can provide numerous efficiencies, including: "(1) many discovery problems relating to the prior art may be alleviated; (2) the record of the reexamination likely would be entered at trial, reducing the complexity and length of the litigation; (3) the issues, defenses, and evidence will be more easily limited in pre-trail conferences following a reexamination; (4) the outcome of the reexamination process may encourage a settlement without further involvement of the court; and (5) if the patent is declared invalid, the suit likely will be dismissed as to that patent." *Pegasus Dev. Corp.*, 2003 WL 21105073, at *2 (stay granted pending *ex parte* reexamination) (citations omitted).

While a stay of litigation is clearly called for here based solely on the existence of the current *ex parte* reexamination, the filing of the *inter partes* reexamination will enhance those efficiencies. *Inter partes* reexaminations are conducted "with special dispatch." 35 U.S.C. § 314(c). When the request for *inter partes* reexamination is granted, the two reexaminations will be merged, and the patent owner will be permitted to propose narrowing amendments to its claims or to propose new claims, "except that no proposed amended or new claim enlarging the scope of the claims of the patent shall be permitted." 35 U.S.C. § 314(a). Unlike the current *ex parte* reexamination, in the *inter partes* reexamination like the one Facebook will be requesting, Facebook will be able to participate in the process by submitting written comments and responses within 30 days of any submission by LTI. *See* 35 U.S.C. § 314(b)(2). At the final conclusion of the *inter partes* reexamination, the Patent Office will publish a certificate canceling any claim of the patent determined to be invalid, confirming any claim determined to

be valid, and incorporating in the patent any proposed amended or new claim determined to be valid. 35 U.S.C. § 316(a). One important aspect of *inter partes* proceedings is that the final results of that reexamination will be binding on Facebook in this case. 35 U.S.C. § 315(c).

### B. It is a Virtual Certainty that Inter Partes Reexamination of the '761 patent Will Be Granted.

In this case, the Patent Office has already granted Facebook's *ex parte* reexamination request, and Facebook intends to file an *inter partes* request shortly. The Patent Office has granted 95 percent of *inter partes* reexamination requests since the procedure first became available. http://www.uspto.gov/web/patents/documents/inter_partes.pdf at ¶ 5(a) (last visited Oct. 21, 2009) (Norberg Decl. Ex. D). Thus, while the '761 patent is already being reexamined, it is a virtual certainty that the '761 patent will be subject to *inter partes* reexamination as well, into which the *ex parte* request will be merged, placing the Court and Patent Office on parallel lines of inquiry into identical issues of invalidity if the present case is not stayed.

### C. This Court Has Routinely Stayed Patent Infringement Proceedings Pending Reexamination before the Patent Office.

In keeping with the liberal policy favoring stay, the courts in this district have consistently granted motions to stay a patent action pending reexamination. *See, e.g., Wall Corp. v. Bonddesk Group, L.L.C.*, C.A. No. 07-844 GMS, 2009 WL 528564 (D. Del. Feb. 24, 2009); *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, C.A. No. 06-514 GMS, 2007 WL 2892707 (D. Del. Sept. 30, 2007); *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, C.A. No. 05-590 GMS, 2006 WL 237035 (D. Del. Aug. 16, 2006); *Alloc, Inc. v. Unilin Décor N.V.*, No. Civ. A. 03-253-GMS, 2003 WL 21640372 (D. Del. July 11, 2003); *Pegasus Dev. Corp. v. DirecTV, Inc.*, No. Civ.A. 00-1020 GMS, 2003 WL 21105073 (D. Del. May 14, 2003); *Gioello Enters. Ltd. v. Mattel, Inc.*, No. C.A. 99-375 GMS, 2001 WL 125340 (D. Del. Jan. 29, 2001); *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212 (D. Del. 1991). As with those cases, a stay would be

appropriate here.

### D. All Relevant Factors Favor A Stay of the Present Litigation.

In determining whether a stay is proper, courts generally evaluate three factors: (1) whether the stay will simplify the issues in the litigation, (2) whether the stay was sought during the advanced stages of litigation, including whether discovery is complete and whether a trial date has been set, and (3) whether a stay would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party. *See Abbott Diabetes Care, Inc.*, 2006 WL 2375035, at *5. An evaluation of all three factors, as explained below, favors staying this action.

#### 1. Reexamination Will Simplify Issues in this Case and Preserve Judicial Resources

"One purpose of the reexamination procedure is to eliminate trial of that issue [of patent validity] (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould*, 705 F.2d at 1341-42. This District has recognized that deferring to the Patent Office on the issue of patent validity has many advantages, including: (1) consideration of prior art by the Patent Office with its specialized expertise, (2) alleviation of discovery issues relating to prior art, (3) likely dismissal of the lawsuit if patent is found invalid, (4) encouragement of settlement without further expenditure of judicial resources, (5) reduction in the complexity or length of litigation, (6) limitations of issues, defenses, and evidence to be presented at trial, and (7) reduction in costs for both the parties and the Court. *See Pegasus Dev. Corp.*, 2003 WL 21105073, at *2 (granting stay).

These factors weigh even more heavily in favor of a stay when, as will soon be the case here, an *inter partes* reexamination has been requested. The *inter partes* statute expressly

provides that a third party requester, like Facebook, may not re-litigate in a civil action an issue of validity that "the third-party requester raised or could have raised during the *inter partes* reexamination proceedings." 35 U.S.C. § 315(c). Given this, there is therefore no conceivable argument that the reexamination will not streamline this litigation: there are only three possible outcomes of reexamination, and each will substantially simplify this case.

First, the most likely result is that the claims of the '761 patent will be <u>canceled</u> during *inter partes* reexamination. According to the Patent Office's published statistics, *inter partes* reexaminations result in canceled or modified claims 95 percent of the time, meaning that only five percent of reexaminations resulted in all claims being confirmed. http://www.uspto.gov/web/patents/documents/inter_partes.pdf at ¶ 7 (last visited Oct. 21, 2009). (Norberg Decl. Ex. D). Cancellation of one or more claims is a particularly likely result in the present case given the strength of the prior art cited by Facebook and the fact that the '761 patent received insufficient scrutiny during its original prosecution in the Patent Office. With canceled claims, obviously there will be no trial since the patent will be invalid.

Second, to the extent the '761 patent claims are <u>narrowed</u> during reexamination proceedings, the scope of this case will be significantly reduced by the doctrine of "intervening rights," which stands for the proposition that Facebook cannot be liable for activities which were not infringing before the claims were amended. *See* 35 U.S.C. §§ 316(b), 252. For example, as to any amended or new claim that issues from the reexamination: (1) Facebook would have no liability for any allegedly infringing activities that took place prior to the date of issuance of the reexamination certificate; and (2) Facebook would be entitled to continue to use any accused system as it existed prior to the issuance of the reexamination certificate. *See* 35 U.S.C. § 252; *Engineered Data Prods., Inc. v. GBS Corp.*, 506 F. Supp. 2d 461, 475-76 (D. Colo. 2007)

(summary judgment granted to defendant based on intervening rights acquired when plaintiff substantively amended its claims during reexamination).

Finally, in the unlikely event that the claims of the '761 patent are <u>affirmed</u>, the trial will be similarly narrowed since Facebook will be estopped from arguing any of the prior art which was argued or could have been argued in the reexamination. 35 U.S.C. § 315(c)

This Court has recognized that the powerful estoppel consequences of an *inter partes* reexamination, along with the specialized expertise of the Patent Office, weigh heavily in favor of a stay because of the benefits of dramatically simplifying the issues for trial. *See Wall Corp.*, 2009 WL 528564, at *1-2. Other courts agree. *See, e.g., Arrivalstar*, 2008 WL 2940807, at *2 ("In other words, the PTO's expert analysis of prior art may simplify and/or facilitate resolution of the case whether or not TransWorks ultimately succeeds in persuading the PTO to amend or invalidate some or all of the claims or patents at issue."); *Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.*, No. 03-C-7823, 2004 WL 422697, at *2 (N.D. Ill. Mar. 3, 2004) (finding that this factor favors stay because "[i]f these proceedings are not stayed, there is a substantial risk of expending substantial resources on trying the validity of patent claims that may ultimately be cancelled or amended by the PTO. A stay will allow both the parties to take advantage of the PTO's expert analysis of prior art and may limit or narrow the remaining issues."); *see also Sun-Flex Co., v. Softview Computer Prods. Corp.*, No. 89 C 296, 1989 WL 117976, at *1 (N.D. Ill. Sept. 27, 1989) ("Even if issues remain to be litigated after the reexaminations are completed, the cost and scope of the remaining litigation are likely to be substantially reduced.").

Here, all 24 of the asserted claims in this action are subject to cancellation or modification. Any result will streamline this case by eliminating either the entire case, or large issues from trial. This factor therefore weighs heavily in favor of a stay.

### 2. This Action Is Far From Complete.

This case has been pending for less than one year. Discovery is still open, no depositions have been taken, expert discovery has yet to start, no summary judgment motions have been filed, claim construction has neither been briefed nor argued, and trial is not scheduled until June of next year. Clearly, a great deal of work remains to be done in this case – nearly all of which will be affected by the outcome of the reexamination proceedings.

Numerous courts have granted stays even when the litigation was far more advanced than it is in this case. *See, e.g., eSoft, Inc. v. Blue Coat Sys., Inc.*, 505 F. Supp. 2d 784, 788 (D. Colo. 2007) (granting motion to stay after discovery and motions); *01 Communique Lab. Inc. v. Citrix Sys. Inc.*, No. 06 CV 0253, 2008 WL 696888 (N.D. Ohio Mar. 12, 2008), at *2 (granting motion to stay two years after start of litigation, after completion of discovery and after seven summary judgment motions filed); *see also Motson v. Franklin Covey Co.*, No. Civ. 03-1067 (RBK), 2005 WL 3465664, at *2 (D.N.J. Dec. 16, 2005) (granting stay despite completion of discovery and summary judgment motions decided).

Here, a stay will conserve significant judicial resources. It would be contrary to the purposes of the reexamination procedure to proceed with this case and require the parties and the Court to expend substantial resources on validity and infringement issues that may be mooted by the outcome of the reexamination process. This factor also weighs in favor of a stay.

### 3. A Stay Will Not Create Undue Prejudice or Present Any Clear Tactical Advantage.

LTI waited two years to bring this case against Facebook, so a stay pending the reexamination will not unduly prejudice LTI. While LTI may complain that a stay will prejudice its ability to enforce its purported patent rights during the period of stay, any such delay on its own is not unduly prejudicial because the reexamination procedure is part of the statutory framework that allowed LTI to obtain the '761 Patent. *See, e.g., Pegasus*, 2003 WL 21105073, at *2 ("[T]he court reminds the plaintiffs that they affirmatively invoked the rights of the patent

statute; they can hardly be heard now to complain of the rights afforded others by that same statutory framework."). Indeed, during the parties' meet and confer on this subject, LTI's counsel did not provide any explanation as to how LTI would be prejudiced by a stay. Norberg Decl. ¶2.

Additionally, LTI cannot complain that it will be denied a purported right to enjoin Facebook's allegedly infringing activities while the Patent Office conducts the reexamination process. Although LTI's complaint seeks injunctive relief, LTI has not filed a motion for preliminary injunction. *See Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, 2006 WL 2375035 (inability to enforce patents during reexamination did not constitute undue prejudice where plaintiff failed to move for a preliminary injunction). Indeed, LTI has produced no credible evidence that it markets or plans to market any product that competes with the Facebook product. This factor therefore weighs in favor of granting a stay.

### E. In Lieu of a Stay, the Court May Dismiss the Present Action Without Prejudice.

In order to maximize the conservation of judicial resources and efficiencies, other courts have favored dismissal, without prejudice, over a stay of litigation. *See, e.g., Amro v. Ameriquest Mortgage Co.*, No. 05 C 2420, 2005 WL 2284247, at *4 (N.D. Ill. Sept. 15, 2005) (mooting motion to stay action pending arbitration in view of dismissal of action with leave to reinstate); *Sheth v. Ernst & Young, LLP*, No. 04 C 4280, 2005 WL 221245, at *2 (N.D. Ill. Jan. 27, 2005) ("The motion to stay is denied as moot. Rather than leave the case inactive on the court docket, we deem it prudent to dismiss the action with leave to reinstate after the arbitration is resolved, if appropriate."); *Hamilton Indus., Inc. v. Midwest Folding Prods. Mfg. Corp.*, No. 89 C 8696, 1990 WL 37642, at *2 (N.D. Ill. Mar. 20, 1990) (dismissing action pending reexamination of patent-in-suit with leave to reinstate action for any surviving claims). Likewise, a dismissal of the present action with leave for LTI to reinstate any surviving claims

after the reexamination would be in the best interests of judicial economy.

## V. CONCLUSION

Reexamination will unquestionably narrow issues for trial in this case, if not eliminate the need for trial completely. There is a high likelihood that the Patent Office's reexamination of the '761 patent will have a dramatic effect on the issues before the Court, up to and including dismissal of the entire action if the patent claims are found to be invalid. Even if claims emerge from the reexamination process, which is unlikely given the strength of the prior art, the Court will benefit from the Patent Office's expertise and analysis of the patent-in-suit.

Because all of the claims at issue in this action will be reexamined by the Patent Office, and to avoid wasting the Court's and the parties' resources in costly pretrial and trail proceedings, Facebook respectfully requests the Court to stay, or alternatively, dismiss without prejudice, this case pending the reexamination of the '761 patent.

Dated: October 21, 2009                                      BLANK ROME LLP

                                                             By: /s/ Steven L. Caponi
                                                                 Steven L. Caponi (DE BAR #3484)
                                                                 1201 Market Street, Suite 800
                                                                 Wilmington, DE 19801
                                                                 (302) 425-6400
                                                                 FAX: (302) 425-6464

                                                             *Attorneys for Defendant and
                                                             Counterclaimant Facebook, Inc.*

OF COUNSEL:

Heidi L. Keefe *(pro hac vice)*
Mark R. Weinstein *(pro hac vice)*
Jeffrey Norberg *(pro hac vice)*
Melissa H. Keyes *(pro hac vice)*
COOLEY GODWARD KRONISH LLP
3000 El Camino Real
5 Palo Alto Square, 4th Floor

12.