IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LEADER TECHNOLOGIES, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 08-862-JJF |
| | : | |
| FACEBOOK, INC., | : | |
| | : | |
| Defendant. | : | |

Paul J. Andre, Esquire, and Lisa Kobialka, Esquire of KING & SPALDING LLP, Redwood Shores, California.
Philip A. Rovner, Esquire of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware.

Attorneys for Plaintiff.

Heidi L. Keefe, Esquire; Mark R. Weinstein, Esquire; Jeffrey Norberg, Esquire; and Melissa H. Keyes, Esquire of COOLEY GODWARD KRONISH LLP, Palo Alto, California.
Stephen L. Caponi, Esquire of BLANK ROME LLP, Wilmington, Delaware.

Attorneys for Defendant.

**MEMORANDUM OPINION**

June 24, 2010
Wilmington, Delaware

Farnan *[signature]* District Judge.

Presently before the Court are Plaintiff Leader Technologies, Inc.'s Objections to The March 12, 2010 Order Of Magistrate Judge Stark (D.I. 309), and Defendant Facebook, Inc.'s Motion For Objection To Magistrate Judge Stark's April 27, 2010 Order (D.I. 378). For the reasons to be discussed, both parties' Objections will be overruled.

## I. Background

This is a patent infringement case brought by Plaintiff Leader Technologies, Inc. ("Leader") against Defendant Facebook, Inc. ("Facebook") alleging infringement of United States Patent No. 7,139,761 (the "'761 patent" or the "patent-in-suit"). The patent-in-suit relates to the "management and storage of electronic information," and specifically relates to "new structures and methods for creating relationships between users, applications, files and folders." '761 patent, col. 1:20-24.

## II. Legal Standard

Pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a), non-dispositive pre-trial rulings made by Magistrate Judges on referred matters should only be set aside if clearly erroneous or contrary to law. A finding is clearly erroneous if the determination "(1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data . . ." Haines v. Liggett Group Inc., 975 F.2d

81, 92 (3d Cir. 1992)(citations omitted). Further, a reviewing district court may not consider evidence and materials not before the magistrate judge. Id.

### III. Plaintiff's Objections To The March 12, 2010 Order (D.I. 309)

On March 12, 2010, Magistrate Judge Stark conducted a hearing with respect to Leader's letter brief asking the Court to compel production of technical documents (D.I. 285). By Order issued that date, Judge Stark found: (1) Leader did not establish the existence of the common interest privilege between itself and the litigation financing companies, and accordingly, Leader was ordered to produce documents withheld under that privilege (D.I. 310, Caire Decl., Ex. 1, Hearing Tr. 71:23-72:6); (2) Leader was entitled to very limited relief on its request to compel production of additional technical documentation, and Facebook was ordered to produce updated Wiki data points (Tr. 72:9-24); and (3) Facebook needed access to Leader's source code, and Leader was ordered to produce that source code (Tr. 74:3-20).

    A.    Parties' Contentions

Leader objects to the Order insofar as it rejected Leader's assertion of the common interest privilege and ordered production of limited technical documentation to Leader. With respect to the production of privileged documents, Leader contends this portion of the Order is clearly erroneous because it was based on the finding that no common legal interest protecting attorney-

2

client or work product privileged information could exist because a deal was not consummated between Leader and the litigation financing companies. (D.I. 309, at 9.) However, according to Leader, there was a common legal interest because the litigation financing companies were interested in financing the litigation. (Id. at 5.) The documents were exchanged only after a common legal interest was created, and therefore, Leader contends that Judge Stark's finding that no common interest privilege existed was clearly erroneous. (Id. at 6-7, 9.)

With respect to the limited production of technical documents, Leader contends that this portion of the Order is contrary to law and clearly erroneous. (Id. at 5.) The Order is allegedly contrary to law because the technical documents describing functional features of the Facebook website are out-of-date, and without relevant technical documentation, Facebook will allegedly be permitted to forgo its discovery obligations and Leader will be unduly prejudiced. (Id. at 7.) Leader argues that the Order is clearly erroneous because it will be difficult for Leader to teach the jury about the relevant feature of Facebook's website without technical documentation, and "[t]here is no better explanation for the infringing technology than Facebook's own technical documents." (Id. at 8.)

Facebook responds that the rulings contained in Judge Stark's March 12, 2010 Order were proper. With respect to the

3

common interest privilege portion of the Order, Facebook contends that Judge Stark's ruling was the product of well-reasoned analysis which discussed the unsettled state of the law on this issue, as well as the various policy implications involved. Leader argues that Facebook's dispute is essentially mere disagreement with an admittedly close decision.

Facebook contends that Judge Stark correctly applied the law, and that Leader has stated no reasonable grounds on which the Order is contrary to law.

    B.    <u>Discussion</u>

The Court concludes that Judge Stark did not commit clear error in finding the common interest privilege inapplicable and ordering production of documents withheld by Leader as privileged. The common interest doctrine is an exception to the general rule that the attorney-client privilege is waived following disclosure of privileged materials to a third party. <u>Union Carbide Corp. v. Dow Chem. Co.</u>, 619 F. Supp. 1036, 1047 (D. Del. 1985). Communications between clients and attorneys "allied in a 'common legal cause'" remain protected because it is reasonable to expect that parties pursuing common legal interests intended resultant disclosures to be "insulated from exposure beyond the confines of the group." <u>In re Regents of the Univ. of Cal.</u>, 101 F.3d 1386, 1389 (Fed. Cir. 1996). In order to give "sufficient force" to a common interest claim of privilege, there

4

should be a demonstration that "the disclosures would not have been made but for the sake of securing, advancing, or supplying legal representation." Id. at 1389 (citing In re Grand Jury Subpoena Duces Tecum, 406 F. Supp. 381, 386 (S.D.N.Y. 1975)). Further, for a communication to be protected, the interests must be "identical, not similar, and be legal, not solely commercial." Id. at 1390; Union Carbide, 619 F. Supp. at 1047.

Judge Stark noted that the state of the law regarding common interest is unsettled and that this case presented a close question. (Tr. at 65:24-66:3.) He then conducted a survey of cases demonstrating the differing views within the Third Circuit on "how common the supposed common interests have to be," and noted the apparent trend favoring Facebook's position. (Tr. at 66:4-68:5; 69:15-18.) Although Leader summarily contends that the Order was clearly erroneous because documents were exchanged after a common legal interest was created, Leader has made no argument, and the Court has no basis on which to conclude, that Judge Stark misapplied the relevant law. Moreover, Judge Stark took into consideration that Leader had the burden of establishing existence of the privilege, and the numerous policy considerations, including the need for litigation financing companies and the truth-seeking function of litigation. (Tr. at 69:19-70:16.) Additionally, Judge Stark looked to ethical guidelines from both Pennsylvania and New Jersey suggesting that

5

privilege may be waived in a situation such as this. (Tr. at 70:17-71:22.) Aside from disagreeing with the outcome, Leader has failed to argue that there are any specific deficiencies or flaws in the ruling. In light of the thorough and well-reasoned analysis conducted by Judge Stark, the Court cannot conclude that the March 12, 2010 Order was clearly erroneous.

In addition, the Court concludes that the March 12, 2010 Order, which largely denied Leader's request to compel production of certain technical documents, was neither clearly erroneous nor contrary to law. Judge Stark found that Leader has been provided with a reasonable degree of technical information, namely access to Facebook's source code, "which [Leader] emphasized from the beginning was the most crucial evidence that they would need to prove infringement." (Tr. at 73:1-6.) Judge Stark further found that technical documents which would enable an expert to understand the source code were produced, but that Leader was not entitled to additional documents for the purpose of "translating computer language to the jury." (Tr. at 73:7-13.) Leader has not presented any case law to support its contention that Judge Stark's ruling is contrary to law or clearly erroneous because it will be difficult to "teach" the jury about the relevant technical features of Facebook's website without these documents. Moreover, the Court is not persuaded that the Order has permitted Facebook to forgo its discovery obligations in contravention of

6

the Federal Rules of Civil Procedure.  As previously noted, Facebook has produced its entire source code.  To the extent Leader complains that Facebook has not been forthcoming in discovery, the Court notes the Facebook has consistently maintained that all requested relevant technical documents have been produced (see D.I. 235, 286), and that in hearings conducted on October 23, 2009 and March 12, 2010, Judge Stark was satisfied with Facebook's compliance with their discovery obligations. (See Tr. at 73:10-20; D.I. 310, Caire Decl., Ex. 3, Oct. 23, 2009 Hearing Tr. at 19:21-20:20.)

Accordingly, Leader's objections to the March 12, 2010 Order are overruled.

**IV. Defendant's Objections To The April 27, 2010 Order (D.I. 378)**

On April 27, 2010, Magistrate Judge Stark granted-in-part and denied-in-part Facebook's motion, submitted by letter, to re-open discovery concerning issues that stem from Leader's production of non-disclosure agreements ("NDAs") between Leader and non-parties.  Facebook argued that the NDAs were produced late, and that Facebook needs to take additional discovery from third parties identified in the NDAs to investigate whether those third parties received demonstrations or offers to purchase the Leader2Leader product.  (D.I. 474, Boyle Decl., Ex. 4, Hearing Tr. at 5:5-6-18.)  The April 27, 2010 Order permitted Facebook to take limited additional discovery of six specific parties

7

concerning whether the alleged invention of the '761 patent was either offered for sale or publicly used in the relevant time period. (Tr. at 21:17-23:2.) However, the Order prohibited Facebook from pursuing discovery from any other third parties identified in the NDAs. (Id.)

### A. Parties' Contentions

Facebook contends that the Order deprives it of the right to conduct discovery on a potentially case-dispositive defense. (D.I. 379, at 3.) Facebook contends that Leader is solely responsible for producing the NDAs in an untimely manner, and further, that the NDAs disclose that many third parties may have received demonstrations of Leader2Leader and that Leader was attempting to commercialize Leader2Leader. (Id. at 3-4.) According to Facebook, Judge Stark's ruling was contrary to law, and improperly focused on maintaining the June 28, 2010 trial date without considering the extreme prejudice Facebook would suffer if it were not permitted to fully explore a potentially case-dispositive defense. (Id. at 8.)

Leader responds that the Order was neither contrary to law nor clearly erroneous. Leader contends that Judge Stark gave counsel for both parties ample opportunity to state their positions, and that maintaining the trial date was only one consideration taken into account. (D.I. 473, at 6-7.) Further, Leader notes that Judge Stark stated that Facebook could return

8

to the Court should it find support from the six entities to re-open discovery, thus mitigating any prejudice suffered by Facebook. (Id. at 7.) More generally, Leader contends that Facebook's 35 U.S.C. §102(b) on-sale and/or public disclosure invalidity defenses are mutually exclusive of its false marking counterclaim, and that Facebook has taken contradictory positions regarding the NDAs in an attempt to manipulate the proceedings and stay the case. (Id. at 2-5.)

    B.    Discussion

The Court concludes that the April 27, 2010 Order was neither contrary to law nor clearly erroneous. In making his ruling, Judge Stark found that "there's certainly reason to believe that there may be discoverable evidence" relevant to Facebook's § 102(b) invalidity defenses from the three entities newly identified by Leader. (Tr. at 21:17-22:11.) Further, in light of the fact that those three entities were only recently disclosed and identified by Leader, Judge Stark found that "it's at least possible that there may be something relevant to be discovered" from the three entities Facebook identified as having potentially received an offer of sale or demonstration. (Tr. at 22:12-23:2.) Further, Judge Stark noted that "it's within the discretion of the Court" to permit limited discovery before determining if additional discovery is needed (Tr. at 8:23-9:4), and that "it does appear to me . . . that at least part of what's

going on is clearly that Facebook believes that this trial should not take place [on] the date of June 28, 2010 (Tr. at 4:6-10).

In light of this record, the Court concludes that Judge Stark properly considered and balanced Facebook's need to discover potentially relevant evidence with the concern that Facebook is attempting to delay the scheduled start of the trial. Facebook's objection to the Order is largely based on its contention that it is being prevented from pursuing a case dispositive defense. The Court is not persuaded that Facebook is unduly prejudiced because the Order makes clear that, depending on what Facebook uncovers in the limited discovery, Facebook will not be precluded from seeking other relief in the future. (See Tr. at 24:17-23 (stating that the Court would not preclude the possibility of bifurcating infringement and invalidity issues).)

Accordingly, Facebook's objection to the April 27, 2010 Order is overruled.

**V.    Conclusion**

For the reasons discussed, the Court will affirm Magistrate Judge Stark's March 12, 2010 Order, and Leader's Objections will be overruled. The Court will affirm Magistrate Judge Stark's April 27, 2010 Order, and Facebook's Objection will be overruled.

An appropriate Order will be entered.