```
1                    IN THE UNITED STATES DISTRICT COURT
                     IN AND FOR THE DISTRICT OF DELAWARE
2
                                       - - -
3    LEADER TECHNOLOGIES, INC., a
     Delaware corporation,                    :    CIVIL ACTION
4                                             :
               Plaintiff,                     :
5                                             :
               v.                             :
6                                             :
     FACEBOOK INC., a                          :
7    Delaware corporation,                    :
                                              :    NO. 08-862 (LPS)
8              Defendant.                      :
                                       - - -
9
                          Wilmington, Delaware
10                 Friday, June 25, 2010 at 9:33 a.m.
                          TELEPHONE CONFERENCE
11
                                       - - -
12
     BEFORE:   HONORABLE LEONARD P. STARK, U.S. MAGISTRATE JUDGE
13
                                       - - -
14   APPEARANCES:

15
               POTTER ANDERSON & CORROON, LLP
16             BY:  PHILIP A. ROVNER, ESQ.

17                  and

18             KING & SPALDING
               BY:  PAUL J. ANDRE, ESQ.
19                  (Redwood Shores, California)

20                      Counsel for Leader Technologies, Inc.

21
               BLANK ROME, LLP
22             BY:  STEVEN L. CAPONI, ESQ.

23                  and

24
                                 Brian P. Gaffigan
25                               Registered Merit Reporter
```

```
 1    APPEARANCES:  (Continued)

 2
                      COOLEY GODWARD KRONISH, LLP
 3                    BY:  HEIDI L. KEEFE, ESQ.
                           (Palo Alto, California)
 4
                           and
 5
                      COOLEY GODWARD KRONISH, LLP
 6                    BY:  MICHAEL G. RHODES, ESQ.
                           (San Francisco, California)
 7
                              Counsel for Facebook, Inc.
 8

 9

10

11                              - oOo -

12                    P R O C E E D I N G S

13          (REPORTER'S NOTE:  The following telephone

14    conference was held in chambers, beginning at 9:33 a.m.)

15          THE COURT:  Good morning, counsel.  This is

16    Judge Stark.  Who is there, please?

17          MR. CAPONI:  Good morning, Your Honor.  For

18    Facebook, you have Steve Caponi from Blank Rome and Heidi

19    Keefe and Mark Rhodes from Cooley Godward.

20          THE COURT:  Okay.

21          MR. ROVNER:  Your Honor, good morning.  This is

22    Phil Rovner for the plaintiffs; and with me on the line is

23    Paul Andre from King & Spalding.

24          THE COURT:  Okay.  Good morning again to

25    everybody.
```

1          For the record, of course, this is our case of

2    Leader Technologies Inc. v Facebook Inc.  It's our Civil

3    Action 08-862-LPS.

4          The purpose of today's call is to talk about one

5    pending discovery dispute, and also I'll have some things to

6    tell you about the pretrial conference and the trial.

7          Before we get into the discovery dispute,

8    having reviewed these letters, I just want to take the

9    opportunity once again to remind everybody that it would be

10    best and it would be expected if we could get the rhetoric

11    here toned down just a little bit.  The case has been marked

12    throughout and I've had occasion to discuss with the parties

13    before the allegations of bad faith and really some hyperbolic

14    rhetoric on both sides, casting aspersions on one another

15    which I think consistently have been unwarranted and certainly

16    have been unhelpful and unpersuasive.  We're all going to be

17    spending quite a lot of time together over the next month or

18    so, and I don't expect to be seeing this type of conduct and

19    rhetoric as we go forward.

20          With that background, I do want to hear briefly

21    from the parties on the pending discovery dispute which is

22    essentially Facebook's request to reopen certain discovery.

23    I have read the letters but I will give each side a brief

24    opportunity to address that and I'll turn to Facebook first,

25    please.

1              MS. KEEFE:  Thank you, Your Honor.  Your Honor,

2     what we've learned throughout the course of the depositions

3     that Your Honor allowed us to take, the very limited

4     discovery Your Honor allowed us, was that Mr. Zacks and

5     Shamrock Technology confirmed what Facebook has suspected

6     all along, which was there were in fact public disclosures

7     of information which could yield invalidating disclosures;

8     these are disclosures without NDAs; and, in fact, that there

9     were offers to sell the underlying technology.  As Your

10    Honor knows, both public disclosure of the technology or an

11    offer to sell the technology could support a Section 102(b)

12    defense to the entire case.

13             In the case of public disclosures, Mr. Zacks

14    confirmed that there were dozens of individuals who received

15    presentations regarding the patented technology who had

16    refused to sign NDAs.  Leader represented that all the

17    disclosures that were ever made were under signed NDAs.

18    Mr. Zacks confirmed there were, in fact, numerous individuals

19    who refused to sign those NDAs, and the demonstrations

20    proceeded anyway.

21             Leader's argument is that they somehow had a

22    confidentiality obligation, but the testimony is clear

23    that the only thing that happened was that Mr. Zacks and

24    Mr. McKibben indicated how confidential they believed the

25    material to be, but absent a binding agreement to keep

1   those materials to be confidential, it is, in fact, a

2   public disclosure no matter how much the parties wish it to

3   be confidential.  These are parties including Steve Roth of

4   Vornado Realty and everyone in his group, the Oliver Wyman

5   and Co., the Wills family of New York, both of which

6   included numerous people who were at the table, all of

7   whom refused to sign NDAs.  We need to be able to conduct

8   discovery at least into them to find out what was given to

9   them because those disclosures would themselves have been

10  public disclosures of whatever was given during those

11  presentations.

12          Similarly, the limited discovery has indicated

13  that there were, in fact, offers to sell the underlying

14  technology.  When Mr. Zacks testified, he testified that

15  Leader considered every single person they gave a present-

16  ation to to be a potential customer.  But, more importantly,

17  they asked during the Shamrock Technologies deposition,

18  Shamrock Technologies witness Mr. Ehlers testified that he

19  went to the meeting thinking that he was going to put on a

20  sales presentation but realized, in fact, that he was the

21  customer and was on the receiving end of a sales pitch for

22  the Smart Camera.  And Mr. Zacks' documents, documents we've

23  never seen before and had never been produced by Leader,

24  many of which are on Leader's letterhead or written by

25  Mr. McKibben himself, indicated the Smart Camera could only

1    be sold with the underlying Leader-to-Leader technology,

2    the software that is at issue in this case, the patented

3    technology, and so an offer to sell Smart Camera would have

4    necessarily included the patented technology and, therefore,

5    was an offer to sell the patented technology as well.

6         We need to be able to find out whether or not

7    any other offers to sell Smart Camera existed or any other

8    offers to sell the Leader-to-Leader technology existed.  We

9    were actually shocked to see in Leader's letter for the

10   first time that Leader is actually admitting that it did,

11   in fact, demonstrate or make presentations about the

12   Leader-to-Leader software more than 500 times.

13        So it's this landscape that we're in right

14   now, Your Honor:  The fact we have found out that despite

15   representations to the Court, there were, in fact,

16   demonstrations or presentations that existed without NDA and

17   that there were, in fact, offers to sell technology which

18   included the underlying technology, and we need to be able

19   to look into those.  Now, how could we have known about any

20   of this before because the NDAs had been late produced?

21   The documents that Zacks produced came after the close of

22   discovery.  All of these are things we need to be able to

23   press into in order to establish our defense under 102.

24             THE COURT:  All right.  Mr. Andre.

25             MR. ANDRE:  Your Honor, the first thing is when

1    she discusses the Shamrock deposition, that was not

2    mentioned anywhere in their letter.  It was not attached as

3    an exhibit.  That was the deposition that lasted 28 minutes

4    and absolutely yielded nothing in terms of relevance, and

5    that is the reason it wasn't added, so I take that with a

6    grain of salt.

7            We never said we gave more than 500 demonstrations

8    either.  We said we have 500 presentations, various versions

9    of it.  In fact, Leader produced all the presentations that

10   mention Leadership software or Leader-to-Leader to Facebook

11   last year -- early last year in most cases.  Presentations

12   are all marked confidential.  They usually had the date and

13   the name of the person being provided the presentation on

14   them and Facebook chose not to take any discovery whatsoever

15   on those presentations because there is nothing to them.

16   They're very general in nature.  They don't disclose any of

17   the patented technology.  It's more of a business-oriented

18   type of presentation.  Nonetheless, they didn't send a

19   single interrogatory, a single document request or do a

20   single deposition of the over 500 presentations that they

21   had available to them.

22           As far as the on-sales go, Leader produced all

23   documents related to offers for sale of the Leader-to-Leader

24   product last year as well and provided witnesses to testify

25   on that topic.  Facebook identified three parties that

1    Leader allegedly offered Leader-to-Leader to sell; and that

2    is Boston Scientific, The Limited, and Wright-Patterson Air

3    Force Base.  However, Facebook chose not to pursue

4    third-party discovery of those parties or any other parties

5    related to the offer to sell.  Even though they had

6    subpoenaed The Limited in the case during the discovery,

7    they withdrew the subpoena though they never made an attempt

8    to get this type of information.

9            Finally, with respect to demonstrations of the

10   Leader-to-Leader product, Leader provided all documents

11   relating to the demonstration of that product last year as

12   well.  Facebook chose not to take any third-party discovery

13   relating to those demonstrations; and that is what we were

14   talking about earlier in this case was is it public

15   demonstrations or not.

16           Now, the recent discovery of the six entities

17   that Facebook took, five of them confirm that Leader

18   insisted on confidentiality.  They all signed the NDAs, and

19   they also confirm that Leader-to-Leader was not ready for

20   sale in 2002.  They weren't selling a product.  They didn't

21   have one done.

22           Facebook hangs its hat pretty much on the

23   testimony of their former counsel, Benjamin Zacks, who is an

24   adverse witness to Leader.  They're in active litigation

25   against each other.  Even as an adverse witness, Mr. Zacks

1    confirmed that all the presentations of the technology were

2    general in nature; and you can see that in Exhibit B of our

3    letter brief.

4              Nothing was presented without understanding

5    that there could be confidential nature of the disclosures;

6    and Leader did not offer to sell any products as far as he

7    was aware -- I mean the Leader-to-Leader product because it

8    wasn't ready to be sold in 2002.  That testimony was

9    unambiguous.  He did testify that some people did not sign

10   NDAs; and we have shown the Court that he was simply wrong

11   about that, the people he identified.  They did, in fact,

12   sign NDAs.

13             And just remind the Court, the NDAs, they

14   were never asked for in discovery, there are no claims ever

15   alleged during discovery that would make the NDAs relevant,

16   and they're only relevant to our defenses.

17             Facebook's position that confidential agreements

18   are evidence of nonconfidential disclosures are just a non

19   sequitur.

20             In this case, Facebook has taken or they have

21   issued over 70 subpoenas to 50 different entities.  27 of

22   those subpoenas are for depositions.  In the meet and confer

23   we had before this call with Your Honor, we asked them to

24   actually give us what kind of discovery do they want and

25   give us the limit of what they want, who they want to take,

1    so that we can actually give an informed decision.  They

2    couldn't tell us.  Their letter says there are potentially

3    hundreds of third-party witnesses they would be interested

4    in taking discovery from.

5              I don't need to remind the Court that the Rule

6    30 limit of 10 depositions was put there for a reason; and

7    the reason being it would be cost effective in this type of

8    discovery dispute.  Facebook has blown well past the 10

9    depositions.  They want to take obviously hundreds of more

10   depositions, and they can absolutely spend Leader to

11   oblivion.  There is no basis for them to take additional

12   discovery.  They had the presentation, they had the sales

13   information, they had the demonstrations.  We don't think

14   that any more discovery is necessary, and we don't believe

15   that a further delay of this trial is necessary either.

16             Thank you.

17             THE COURT:  Okay.  Thank you.

18             Ms. Keefe.

19             MS. KEEFE:  Just a couple of things, Your Honor.

20             The first thing.  I did forget to mention that

21   we also need a privilege log for the materials that Leader

22   has withheld from Mr. Zacks's production.  They've given no

23   reason other than the fact that it would be, you know, a

24   lot of work for them, and the fact that maybe some of the

25   documents weren't relevant; but Mr. Zacks indicated that he

1    thought there was no privilege in these documents and that

2    they were responsive to the subpoena.  So if Leader is

3    withholding them, we need a privilege log showing why

4    they're being withheld and what the basis is for their claim

5    of privilege.

6            Regarding Facebook's knowledge of any of these

7    materials, Your Honor has already heard the argument from

8    us; but, absolutely, we could not have known about these

9    materials.  We would not have known about them absent the

10   NDAs that were late produced indicating to us just how many

11   people received these demonstrations.

12           There is actually a case, Your Honor, System

13   Management -- that I found after we submitted our letter,

14   *System Management Arts v Avesta Technologies*, 87 F.Supp. 2d

15   258, which also talks about the fact that beyond any single

16   individual offer for sale or public demonstration, part of

17   looking at 102(b) is how many public demonstrations or how

18   many demonstrations there were and the totality of the

19   circumstances to see exactly how public the demonstration

20   was.

21           There is another case, *Articulate v Apple*, 53

22   F.Supp. 2d 62, which discusses the need to considered the

23   totality of the circumstances in light of the various

24   policies underlining public use bars and, specifically,

25   cites the number of people to whom an invention or product

1    embodying the invention was disclosed.

2            And so, Your Honor, it's not a matter of any one

3    individual demonstration, although those are also helpful,

4    but also a matter of how many times this demonstration was

5    given that goes to the notion of how public these

6    demonstrations were or how much the jury can imply that in

7    fact there were offers to sell given the sheer volume of

8    presentations that were made.

9            THE COURT:  Okay.  Thank you, counsel.  I'm

10   prepared to rule on this discovery dispute.

11           With respect to Facebook's request to reopen

12   discovery and continue the trial date for perhaps 60 days,

13   that request is denied.  The Court finds that in the

14   totality of circumstances, including the number of discovery

15   disputes that have preceded today and the discovery that

16   has been given on issues relating to Facebook's defenses,

17   including relating to offers to sell and the related defenses,

18   the Court concludes that Facebook has had sufficient

19   discovery to assess the merits of these defenses and to put

20   on these defenses.  The Court is not persuaded that there is

21   any justification here to reopen discovery and to delay

22   trial at this very late date.

23           The one relief that the Court will give to

24   Facebook is the Court is directing and ordering that Leader

25   produce a privilege log, logging the withheld Zacks documents,

1    any that have been withheld on the basis of privilege and to

2    do so within seven days, so that would be next Friday.

3              Leader, as the party asserting privilege over

4    those documents, does have the burden of establishing at

5    least a prima facie basis for the assertion of privilege;

6    and the way to do that, of course, is through a privilege

7    log.

8              So that takes care of the pending discovery

9    dispute.  I do want to, at this time, note a few other

10   matters.

11             First, as I trust that the parties will have

12   seen, there were some rulings that were issued yesterday.

13   First, at D.I. 558, Judge Farnan overruled objections of the

14   parties that were pending to certain earlier discovery

15   rulings.  And then at D.I. 559, the Court granted in part

16   and denied in part Facebook's motion for leave to amend its

17   counterclaims and affirmative defenses.

18             Let me now tell you some things that I think

19   will help focus you as you prepare for trial and for the

20   pretrial conference scheduled for next Thursday, July 1st.

21             The first of those is that the Court has decided

22   in the exercise of its discretion to separate certain issues

23   from the trial that will begin on July 19th pursuant to

24   Federal Rule of Civil Procedure 42(b) which allows the Court

25   to separate issues for trial.  To further convenience,

1   efficiency, economy and to avoid prejudice, the Court has

2   decided that the following issues will be separated and will

3   not be tried at the July 19th trial.  Those issues that are

4   being separated are:

5           First, Leader's claim of willful infringement.

6           Second, Leader's claim for damages and injunctive

7   relief.

8           Third, Facebook's false marking counterclaim,

9   And,

10          Fourth, Facebook's counterclaim and affirmative

11  defense of inequitable conduct.

12          All of those matters will be separated and will

13  be tried at a later date to be determined following the

14  conclusion of the July 19th trial.  So the July 19th trial

15  will be limited to issues of infringement and invalidity of

16  the patents and the remaining defenses, counterclaims of

17  Facebook that I have not ordered separated.

18          As a consequence of the decision to separate out

19  certain issues for separate trials, a number of the pending

20  motions are going to be, and hereby are, denied without

21  prejudice, to be renewed at a later date subsequent to the

22  July 19th trial.  Specifically, those motions that are here

23  by denied without prejudice are:

24          First, Facebook's Motion For Summary Judgment

25  No. 2 of Non-Infringement and No Damages, which is D.I. 385.

1        Second, Facebook's Motion For Summary Judgment

2    No. 4 of No Willful Infringement, which is D.I. 394.

3        Third, Leader's Motion For Summary Judgment of

4    Facebook's False Marking Counterclaim, which is D.I. 395.

5        Then turning to the motion in limines:

6        Facebook's Motion in Limine No. 4, To Preclude

7    Evidence Or Argument Relating to Damages From Internal Use

8    of Accused Systems By Facebook Employees, D.I. 412.

9        Facebook's Motion in Limine No. 8, To Preclude

10   Leader From Referring to Or Introducing Any Evidence

11   Relating to Any Alleged Acts of Hacking Or Unauthorized

12   Access By Facebook or Mark Zuckerberg, which is D.I. 412.

13       Facebook's Motion in Limine No. 9, To Exclude

14   Evidence Or Argument That Mark Zuckerberg Copied Leader's

15   White Papers -- I'm not sure I have the D.I. numbers

16   correct -- okay, which I guess is also D.I. 412.

17       And we'll get this all out in a written order,

18   counsel.

19       So Facebook Motion in Limine No. 9 is denied

20   without prejudice.

21       Facebook's Motion in Limine No. 11, to preclude

22   references to Hurricane Katrina and Terrorism Over At

23   Virginia Tech, D.I. 412.

24       Facebook's Motion in Limine No. 12, To Include

25   Testimony and Evidence of Advice of Counsel As a Defense to

1    Facebook False Marking Counterclaim, also D.I. 412.

2              The following Leader motions are also denied

3    without prejudice:

4              Leader's Motion in Limine No. 3, To Exclude

5    Evidence of Facebook's Settlement Agreement and Expert

6    Testimony Regarding Potential Design-Arounds Or

7    Noninfringing Alternatives, which is D.I. 419.

8              Leader's Motion in Limine No. 7, To Exclude

9    References to a Potential Injunction, which is D.I. 423.

10   And,

11             Also Leader's Daubert Motion to Exclude the

12   Testimony in Its Entirety of Facebook's Experts, James

13   Hughes and Kimberly Felix, D.I. 426, also denied without

14   prejudice.

15             A couple of other matters.  Pending before the

16   Court is D.I. 377, Facebook's Motion For Redaction of

17   Electronic Transcript of Hearing Dated April 9th, 2010.

18   That motion is hereby denied.

19             The Court has reviewed Facebook's proposed

20   redactions and does not find that any of what is proposed

21   to be redacted discloses confidential information under the

22   confidentiality protective order and, in any event, sees no

23   basis to protect or keep from the public the information

24   that Facebook proposes to redact.

25             We will certainly be talking about the proposed

1    pretrial order in much greater detail on Thursday when

2    we're all together, but there is one matter I wanted to

3    point out.  The parties had proposed that they will have

4    a meet-and-confer procedure every night following trial

5    in which they'll exchange certain e-mails and have a

6    teleconference and then present unresolved objections for

7    the Court to address in the morning before each trial day.

8              The Court does not intend to permit that

9    procedure.  I believe that would allow important disputes

10   to linger too long and interfere with the orderly and

11   inefficient trial process which is especially necessary when

12   a jury is involved.

13             Other than true emergencies or something that

14   truly could not be anticipated, the Court's intent is to

15   decide these matters prior to the start of the trial.  So we

16   will work together and the parties will meet and confer as

17   much as is necessary over the next several weeks so that we

18   can be in a position to decide these matters at the pretrial

19   conference on July 1st.

20             I am, and hereby do, schedule a second pretrial

21   conference for Friday, July 16th at 10:00 a.m.  That's the

22   last business day before we begin trial on Monday the 19th.

23   So we'll meet again next Thursday, and then we'll meet as

24   well on the morning of July 16th at 10:00 a.m.; and again

25   the intent is that we will resolve these issues no later

1      than that July 16th conference.

2              As I'd said, I will get a written order out for

3      you that embodies the decisions that I have given you today

4      and then we will look forward to seeing all of you next

5      Thursday morning.

6              Is there anything further that needs to be

7      discussed at this time, Ms. Keefe?

8              MS. KEEFE:  Your Honor, just one question.  You

9      mentioned that Summary Judgment No. 2 was denied without

10     prejudice?  Summary Judgment No. 2 had to do with mini

11     auction, which is a non-infringement issue.  Was that a

12     mistake.

13             THE COURT:  It may have been.  Just bear with me

14     a minute, please.

15             MS. KEEFE:  Sure.

16             (Pause.)

17             THE COURT:  Thank you for raising that, Ms.

18     Keefe.

19             You have thrown a lot of stuff at us, you will

20     recognize.

21             MS. KEEFE:  I do, Your Honor.  Of course.

22             THE COURT:  My recollection is that there were

23     two issues in that motion.  One went to infringement and one

24     went to damages, and my intent is to deny without prejudice

25     the portion of the motion that goes to damages but not the

1   portion that goes to non-infringement.  So I will attempt to

2   word that more carefully in the written order that I get

3   out, but that was the intent.

4             MS. KEEFE:  Thank you, Your Honor.

5             Similarly, with respect to the summary judgment

6   motion, is Your Honor contemplating setting a date for

7   hearing on the remaining motions for summary judgment?

8             THE COURT:  Yes.  Those are on the table for

9   next Thursday at the pretrial conference.

10            MS. KEEFE:  Thank you, Your Honor.  Does that

11  mean we should be prepared to argue them next Thursday at

12  the pretrial conference?

13            THE COURT:  If you wish to be heard, you should

14  be prepared.

15            MS. KEEFE:  Thank you.

16            THE COURT:  I'm not promising you I'll hear you

17  on all of them but you should be prepared to address them,

18  if you wish to do so.

19            MS. KEEFE:  I absolutely understand.  I

20  appreciate that, Your Honor.  Thank you.

21            THE COURT:  Mr. Andre.

22            MR. ANDRE:  Your Honor, just a couple issues.

23            With regards to the summary judgments, obviously,

24  we followed the procedure set by Judge Farnan.  We just put

25  the material issues of disputed facts, and we didn't

1    actually brief out the oppositions thoroughly because that

2    was Judge Farnan's instructions.  I assume that if there is

3    anything that would be taken into consideration, we have

4    further opportunity to brief out the opposition properly?

5              THE COURT:  I'm certainly aware of how we got to

6    where we are, and if I need further briefing on anything, I

7    will let you know that.  And if there is any pending matter

8    that you are requesting leave to further brief, you should

9    be prepared to address that at next Thursday pretrial

10   conference.

11             MR. ANDRE:  And then with respect to the motions

12   that you are denying without prejudice, Your Honor, one that

13   you didn't mention was Facebook's Daubert Motion No. 3,

14   which was to preclude our damages expert.  I assume that

15   since damages are being bifurcated from the trial that that

16   was one that would be denied without prejudice as well?

17             THE COURT:  I think you are right.  I think

18   that was probably an oversight.  And, of course, we'll take

19   another look at that as we prepare the written order for you.

20             MR. ANDRE:  And then the last thing is you have

21   given us seven days to prepare a privilege log document to

22   Mr. Zacks, test and control.  To the extent that we are not

23   able to get those copies from him, if he is, for whatever

24   reason, not cooperative with us in giving us those documents,

25   can we come back to the Court and ask for an extension of

1    that time?

2              THE COURT:  If it turns out to be something

3    beyond your control, yes.

4              MR. ANDRE:  Okay.  We'll try to see if he will

5    send the documents to us so we can do the privilege log.  If

6    he refuses to do so, we can try to -- I don't know if we can

7    fly someone there to Ohio to do it, or ...

8              THE COURT:  Is there anything else, Mr. Andre?

9              MR. ANDRE:  I think that is it, Your Honor.

10             THE COURT:  Okay.  Thank you, counsel.  We will

11   see you next Thursday.  Good-bye.

12             (Telephone conference ends at 10:03 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25